IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| IPC International Corporation, *et al.*, | ) Case No. 13-12050 (MFW) |
| Debtors. | ) (Jointly Administered) |

**OBJECTION OF PROFESSIONAL SECURITY CONSULTANTS TO MOTION OF THE DEBTORS FOR ORDERS (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF ASSETS USED IN THE DEBTORS' STANDING GUARD AND PATROL BUSINESS, (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER SUCH SALE OF ASSETS, (C) AUTHORIZING PAYMENT OF THE BREAK-UP FEE AND EXPENSE PROCEDURES RELATED TO SUCH SALE, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES TO SUCH SALE; AND (E) APPROVING THE FORM AND MANNER OF RELATED NOTICE**

Professional Security Consultants ("PSC"), by and through its undersigned counsel, hereby objects to the Bidding Procedures and Sale Motion filed by IPC International Corporation and The Security Network Holdings Corporation (the "Debtors"). PSC negotiated with the Debtors pre-petition to purchase their assets and intends to bid at the proposed sale.

The Debtors propose to sell virtually all of their assets to Universal Protection Service, LLC ("UPS") for $21,250,000 in cash, the assumption of certain specified obligations under customer contracts, and the assumption of certain liabilities designated by UPS[1] and valued at $2,900,000 (the "Purchase Price"). The Purchase Agreement includes provisions for a Break-Up Fee in the amount of $600,000 and a Expense Reimbursement of up to $250,000 in out-of-pocket costs to be paid to UPS in the event that UPS is not the high bidder. The Debtors further propose that the initial and any subsequent overbids be in the amount of $100,000. As such, any bidder

---

[1] These liabilities are unclear and render the submission of comparable offers difficult.

other than UPS must make its initial offer in the amount of at least. $25,100,000—almost $1,000,000 more than UPS' initial offer of the Purchase Price.

A break-up fee is appropriate if it is necessary to preserve the value of the debtor's estate. *Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999). There are two ways a break-up fee can preserve the value of an estate: (1) by inducing the first bidder to make an initial bid; or (2) by inducing the first bidder to adhere to its bid after the court orders an auction. *Id.* The *O'Brien* Court also recognized that at least one Bankruptcy Court has identified nine factors relevant to the decision of whether to award break-up fees and expenses: (1) is the relationship of the debtor and the stalking horse bidder tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage bidding; (3) is the amount of the fee unreasonable relative to the proposed purchase price; (4) did the stalking horse bidder place the estate property in a sales configuration mode to attract other bidders to the auction; (5) did the request for a break-up fee serve to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders, or attract additional bidders; (6) does the fee requested correlate with a maximization of value to the debtor's estate; (7) are the principal secured creditors and the official creditors committee supportive of the concession; (8) were safeguards beneficial to the debtor's estate available; and (9) was there a substantial adverse impact on unsecured creditors, where such creditors are in opposition to the break-up fee? *Id.* at 536.

A.   **The Break-Up Fee Is Excessive And Will Chill Bidding.**

The Break-Up Fee is excessive and will chill bidding by other interested buyers. Courts have authorized break-up fees which are much lower than that proposed in the Bidding Procedures and Sale Motion. *See, In re Metaldyne Corp.*, 2009 Bankr. Lexis 5097 (Bankr.

2

S.D.N.Y. 2009) [break-up fee to be up to 2% of asset purchase price], *In re Silicon Graphics, Inc.*, 2009 Bankr. LEXIS 5155 (Bankr. S.D.N.Y. 2009) [break-up fee was 2.9% of asset purchase price of $25,500,000], *and see In re Fleetwood Enters.*, 2009 Bankr. LEXIS 4901 (Bankr. C.D. Ca. 2009) [break-up fee was 1.5% of asset purchase price of $28,950,000]. Requiring any party other than UPS to bid almost a million dollars in order to purchase the assets is unreasonable relative to the Purchase Price. The Break-Up Fee appears designed to lock up the sale for UPS. Other bidders will be discouraged from participating in the auction and the ultimate result will be to reduce the funds available for the creditors of the Debtors' estates.

B.  **The Sales Procedures Deny Creditors Sufficient Opportunity For Review And Approval**

This case was filed on August 9, 2013 and the Bidding Procedures and Sale Motion was filed on August 10, 2013 (a Saturday). Objections to the Bidding Procedures and Sale Motion are due by August 20th and the hearing is set for August 22, 2013. PSC is informed and believes that no Official Committee of Unsecured Creditors ("UCC") has yet been appointed, much less retained counsel. The amount of time to meaningfully review and respond to the Bidding Procedures and Sale Motion is inadequate for any UCC and any other creditors. They will not have sufficient time to determine whether the Break-Up Fee or the bidding procedures will serve to maximize the value of the assets to the Debtors' estates, whether there are sufficient safeguards available, and if there is a substantial adverse impact on them such that they wish to oppose the bidding procedures.

Based on the foregoing, PSC urges the Court to reduce the Break-Up Fee to a reasonable percentage of the Purchase Price, if any. Alternatively, PSC requests that the Court set a later

hearing date to allow the creditors sufficient time to review and approve the proposed bidding and sale procedures.

Dated: August 20, 2013  
      Wilmington, Delaware

FOX ROTHSCHILD LLP

_____  
Jeffrey M. Schlerf (No. 3047)  
John H. Strock (No. 4965)  
L. John Bird (No. 5310)  
Citizens Bank Center  
919 North Market Street, Suite 1600  
Wilmington, DE 19801  
Telephone: (302) 654-7444  
Facsimile: (302) 656-8920

-and-

Bernard R. Given, II  
Jeanne C. Wanlass  
LOEB & LOEB LLP  
10100 Santa Monica Blvd., Suite 2200  
Los Angeles, CA 90067  
Telephone: (310) 282-2235  
Facsimile: (310) 734-1686

*Attorneys for Professional Security Consultants*