## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| IPC International Corporation, *et al.*[1] | ) | Case No. 13-12050 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ADDENDUM 1
## TO BIDDING PROCEDURES ORDER

### BIDDING PROCEDURES
(IN CONNECTION WITH THE AUCTION AND SALE OF ASSETS
USED IN THE DEBTORS' STANDING GUARD AND PATROL BUSINESS)

Set forth below is the general process to be employed by the Debtors with respect to the proposed Sale of all or substantially all of the Debtors' assets used in the operation of the Debtors' standing guard and patrol business (as defined below, the "Assets"), pursuant to the purchase agreement (the "Purchase Agreement") between Universal Protection Service, LLC (the "Purchaser") and the Debtors or pursuant to a similar, marked agreement with another Qualified Bidder (as defined below).

These Bidding Procedures have been approved by order of the Bankruptcy Court (the "Bidding Procedures Order") after hearing on Debtors' Motion for Orders: (1)(A) Approving Bidding Procedures for the Sale of Assets Used in the Debtors' Standing Guard and Patrol Business, (B) Scheduling the Auction and Hearing to Consider Such Sale of Assets, (C) Authorizing Payment of the Break-Up Fee and Expense Reimbursement, (D) Approving the Escrow Deposit Agreement, (E) Approving Assumption and Assignment Procedures Related to Such Sale, and (F) Approving the Form of and Manner of Related Notice; and (2)(A) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and (B) Authorizing and Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Such Sale [Docket No. 21] (the "Sale and Bidding Procedures Motion")[2].

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: IPC International Corporation (2698); and The Security Network Holdings Corporation (7985). The address of each of the Debtors is 2111 Waukegan Road, Bannockburn, IL 60015.

[2]  Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Bidding Procedures and Sale Motion.

For copies of the Purchase Agreement, Bidding Procedures Order, Sale and Bidding Procedures Motion, or other documents or information in these cases, please contact counsel to the Debtors at (312) 962-3500 or visit www.kccllc.net/IPC.

PAC 1119891v.3

## BIDDING PROCEDURES

### A.    The Bidding Process

Set forth below is the general process to be employed by the Debtors to conduct an Auction to consider any bids in competition with the Purchase Agreement with respect to the proposed Sale of the Subject Assets:

1.    Any person interested in making an offer to purchase the Subject Assets shall comply with these procedures.

2.    The Debtors shall only consider Qualifying Bids (as defined below).

3.    If the Debtors do not receive a Qualifying Bid other than the Purchase Agreement prior to the Bid Deadline (as defined below), then the Auction will not be held and the offer of UPS to acquire the Subject Assets under the Purchase Agreement shall constitute the highest or otherwise best Qualifying Bid (the "High Bid").

4.    If the Debtors receive a Qualifying Bid other than the Purchase Agreement prior to the Bid Deadline, then the Debtors shall select a Qualifying Bid as the High Bid after the Debtors have conducted the Auction and considered, among other things, the total consideration to be received by their estates as well as other financial and contractual terms relevant to the proposed Sale, including those factors affecting the speed and certainty of consummating the proposed Sale.

5.    Upon failure to consummate the proposed Sale because of a breach on the part of the High Bidder after an order entered at the Sale Hearing, the Debtors shall be permitted to select the next highest or otherwise best bid to be the High Bid and to consummate such transaction without further order of the Bankruptcy Court, as further set forth in section 5.8(c) of the Purchase Agreement.

6.    If the High Bidder fails to consummate the Sale, and such failure is the result of a breach by the High Bidder, such High Bidder's Good Faith Deposit (as defined below) shall be forfeited to the Debtors as set forth in section 2.6 of the Purchase Agreement and the High Bidder shall pay to the Debtors the Liquidated Damages Amount (as defined in the Purchase Agreement), and, except to the extent provided in such bidders' marked agreement (or the Purchase Agreement), the High Bidder's liability to the Debtors shall be limited to the sum of the Good Faith Deposit and the Liquidated Damages Amount.

7.    The Good Faith Deposits of all Qualified Bidders shall be retained by the Debtors and held in escrow in an interest bearing account and all Qualified Bids will remain open, notwithstanding Bankruptcy Court approval of a Sale

3

pursuant to the terms of a High Bid by a Qualified Bidder, until the earlier of (a) the closing of the Sale of the Subject Assets, and (b) the date that is sixty (60) days after the entry of the Sale Order (or such later date specified in the Qualified Bid) (the "Return Date"); provided, however, that any Qualified Bidder shall have thirty (30) days after the date that it is informed by Seller that Seller is prepared to close the Transaction with it to determine whether any Material Adverse Effect (as defined in the Purchase Agreement) shall have occurred after the date of the completion of the Auction, unless and until such 30-day period is waived by such Qualified Bidder. On the Return Date, the Debtors shall return the Good Faith Deposits of all Qualified Bidders, except the High Bidder, with any accrued interest.

**B.    Participation Requirements**

1.    Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the sale process, each person (a "Potential Bidder") shall deliver to the Debtors, and Debtors shall promptly deliver to the Lender:

   a.    an executed confidentiality agreement in form and substance satisfactory to the Debtors; provided, that in the event that any Potential Bidder has executed a confidentiality agreement that had not expired prior to the Petition Date, any such confidentiality agreement shall be deemed to remain in full force and effect for a period of twelve (12) months after the Petition Date; and

   b.    current audited and unaudited financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Subject Assets, current audited financial statements or other financial information of the equity holder(s) of the Potential Bidder, or such other form of financial disclosure acceptable to the Debtors and the Lender, demonstrating such Potential Bidder's ability to close the proposed transaction and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed and assigned.

2.    A "Qualifying Bidder" is (a) UPS and, if applicable, (b) a Potential Bidder that delivers the documents described in subparagraphs 1(a) and 1(b) above and that the Debtors and the Lender determine is reasonably likely (based on the availability of financing, experience and other considerations) to submit a *bona fide* offer and to be able to consummate the proposed Sale if selected as the High Bidder. Two or more Potential Bidders may be deemed a Qualifying Bidder if such Potential Bidders, considered in the aggregate, otherwise meet the foregoing criteria.

3.    The Debtors and the Lender shall determine whether a Potential Bidder is a Qualifying Bidder and shall provide written notice of their determination to such Potential Bidder and to each then existing Qualifying Bidder. Any such

PAC 1119891v.3

determination shall be subject to the Court's review upon motion by the Debtors or such Potential Bidders.

**C.    Due Diligence**

Subject to the Debtors' receipt of an executed confidentiality agreement in form and substance satisfactory to them, the Debtors shall afford each Potential Bidder that is a Qualifying Bidder due diligence access to the Subject Assets. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below).

In connection with such due diligence, Potential Bidders shall have the same access to IPC's customers as Universal had been given. The parameters of such access to customers shall be established and administered by IPC in its discretion in order to preserve and protect IPC's valuable customer relationships. No potential bidder may have any contact with any of IPC's customers except (i) as permitted and arranged by IPC and (ii) in the presence of IPC. The Court shall retain jurisdiction to resolve any disputes regarding the access of Potential Bidders to the Debtors' customers.

**D.    Bid Deadline and Requirements**

1.    A "Qualifying Bid" is (a) the offer of UPS to acquire the Subject Assets pursuant to the Purchase Agreement and, if applicable, (b) another Qualifying Bidder's offer to acquire the Subject Assets if such offer was received prior to the Bid Deadline and if such offer included each of the following (collectively, a "Bid Package"):

a.    An executed copy of an asset purchase agreement (including schedules and exhibits, the "Qualifying Bidder Purchase Agreement"): (A) containing substantially the same or better terms as those set forth in the Purchase Agreement (B) marked to reflect changes to the Purchase Agreement (C) irrevocable until the earlier of 110 days after the Petition Date or two business days after a proposed Sale is consummated (D) for the purchase of substantially all of the Subject Assets, "as is, where is," in exchange for a cash purchase price that exceeds the Purchase Price (as such term is defined in the Purchase Agreement) by at least $950,000 (representing the sum of the maximum amount of the Expense Reimbursement, the Break-Up Fee, and a $100,000 initial bid increment, the "Minimum Cash Amount") and the assumption or otherwise equivalent value of at least the Assumed Liabilities (as such term is defined in the Purchase Agreement). Executed copies of two or more asset purchase agreements may be deemed a Qualifying Bidder Purchase Agreement if, considered in the aggregate, such asset purchase agreements otherwise meet the foregoing criteria.

b.    A provision requiring payment of the Break-Up Fee and Expense Reimbursement directly to UPS upon the consummation of the sale contemplated by such bid.

c.    Financial and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code in a form requested by the Debtors to allow the Debtors to serve such information within one (1) business day after such receipt on counterparties to any executory contracts and unexpired leases being assumed and assigned in connection with the proposed transaction that have requested, in writing, such information.

d.    A good faith cash deposit (the "Good Faith Deposit") in the amount equal to 5% of the value of such bid payable to such party as the Debtors may determine in the form of a bank or certified check (or other form acceptable to the Debtors in their sole discretion), which Good Faith Deposit shall be held in escrow (by the Escrow Agent, as such term is defined in the Purchase Agreement) pending its use in accordance with these Bidding Procedures or the Return Date.

e.    A written statement that the bid is conditioned solely upon an order of the Bankruptcy Court approving the proposed transaction becoming final and not subject to appeal, and that such bid specifically is not conditioned upon: (A) obtaining financing or other financing contingencies; or (B) the outcome of unperformed due diligence by the bidder or any other contingencies.

f.    In the event that UPS' bid is not the successful bid at the Auction, the bid of UPS or any other bidder that is the first runner-up to the successful bidder shall remain binding upon UPS or such other bidder under the terms of the Purchase Agreement or the purchase agreement submitted by such other bidder as a back-up bid until the date that is 110 days following the Petition Date; provided, that UPS or such other runner-up bidder shall have thirty (30) days after the date that it is informed by Seller that Seller is prepared to close the Sale with it to determine whether any "Material Adverse Effect" (as defined in the Purchase Agreement) shall have occurred after the date of the completion of the Auction, unless and until such 30-day period is waived by UPS or such other bidder.

2.    In order to be considered, Bid Packages must be received on or before 4:00 p.m., prevailing central time, on September 27, 2013 (the "Bid Deadline") and, except as may be instructed otherwise with respect to the Good Faith Deposit, should be delivered to: (a) Livingstone Partners LLC, 443 N. Clark St., Suite 200, Chicago, IL 60654, Attn: Joseph Greenwood; and (b) Proskauer Rose LLP, 70 W. Madison St., Suite 3800, Chicago, IL 60602, Attn: Brandon W. Levitan.

3.    The Debtors, promptly upon receipt of each Bid Package, shall distribute a copy of such Bid Package by electronic mail to counsel for UPS, counsel to PrivateBank & Trust Company (the "Lender"), and counsel to any committee appointed under Section 1102 of the Bankruptcy Code.

4.      After the Bid Deadline, the Debtors and the Lender shall determine which Qualifying Bid represents the then highest or otherwise best value to the Debtors (the "Initial Bid"). At least 24 hours prior to the Auction, the Debtors shall distribute copies of the Initial Bid to each Qualifying Bidder.

**E.    Auction**

If the Debtors receive a Qualifying Bid other than that of UPS, than the Debtors will conduct the Auction. The Auction, if necessary, shall take place at the offices of Proskauer Rose, LLP, 70 W. Madison St., Chicago, IL 60602 on October 2, 2013, commencing at 10:00 a.m. prevailing central time. Subject to the "Reservation of Rights" set forth below, the Auction shall be governed by the following procedures:

1.      Only a Qualifying Bidder who has submitted a Qualifying Bid (including UPS), and all creditors of the Debtors, shall be eligible to attend and participate at the Auction.

2.      Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale.

3.      The Auction shall begin with the Initial Bid (which, as a Qualifying Bid, will provide for at least the Minimum Cash Amount) and proceed in minimum additional increments of $100,000.

4.      Each bid at the Auction must meet each of the criteria of a Qualifying Bid, other than the requirement that it be received prior to the Bid Deadline.

5.      The amount of the Expense Reimbursement and Break-Up Fee may be added to and deemed a part of any bid of UPS.

6.      All bids shall be placed on the record, which shall either be transcribed or videotaped, and each bidder shall be informed of the terms of the previous bid.

7.      The Auction shall continue until there is only one offer that the Debtors and the Lender determine is the High Bid. In determining which Qualifying Bid to select as the High Bid, the Debtors and the Lender may consider, among other things: (a) the amount of the purchase price; (b) the form of consideration being offered; (c) the likelihood of the Qualifying Bidder's ability to close a transaction and the timing thereof; and (d) the net benefit to the Debtors' estates and their creditors. The Debtors shall present the High Bid to the Bankruptcy Court for approval at the Sale Hearing.

8.      The Debtors, after consultation with the Lender and in their reasonable discretion, may adopt rules for the Auction at or prior to the Auction that, in their reasonable discretion, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bidding Procedures Order; provided, however, that the Debtors may not, without the consent of

7

UPS and the Lender, modify: (a) the dates set for the Bid Deadline, the Auction, or the Sale Hearing; (b) the definition of "Minimum Cash Amount"; (c) the process for identifying the Initial Bid in Section D(4) of these bidding procedures; or (c) Sections E(1), E(5), or the last sentence of Section E(7) of these bidding procedures.

**F.**    **Sale Hearing**

The Sale Hearing shall take place on October 9, 2013 at a time to be established by this Court. With the consent of the High Bidder, the Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing. At the Sale Hearing, the Debtors shall present the High Bid to the Bankruptcy Court for approval.

**G.     Reservation of Rights**

In addition to their rights set forth in Section E(8) of these bidding procedures, the Debtors may, with the consent of UPS and in consultation with the Lender, modify these Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the proposed Sale of their assets if in their reasonable judgment such modifications would be in the best interest of the Debtors' estates and promote an open and fair sale process, so long as such modifications and/or additional terms are consistent with the provisions of the Purchase Agreement.

9

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| IPC International Corporation, *et al.*[1] | ) | Case No. 13-12050 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ADDENDUM 2
## TO BIDDING PROCEDURES ORDER

### ASSUMPTION AND ASSIGNMENT PROCEDURES
(IN CONNECTION WITH THE SALE OF ASSETS
USED IN THE DEBTORS' STANDING GUARD AND PATROL BUSINESS)

These Assumption and Assignment Procedures have been approved by order of the Bankruptcy Court (the "Bidding Procedures Order") after hearing on Debtors' Motion for Orders: (1)(A) Approving Bidding Procedures for the Sale of Assets Used in the Debtors' Standing Guard and Patrol Business, (B) Scheduling the Auction and Hearing to Consider Such Sale of Assets, (C) Authorizing Payment of the Break-Up Fee and Expense Reimbursement, (D) Approving the Deposit Escrow Agreement, (E) Approving Assumption and Assignment Procedures Related to Such Sale, and (F) Approving the Form of and Manner of Related Notice; and (2)(A) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and (B) Authorizing and Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Such Sale [Docket No. 21] (the "Sale and Bidding Procedures Motion")[2].

**For copies of the Purchase Agreement, Bidding Procedures Order, Sale and Bidding Procedures Motion, or other documents or information in these cases, please contact counsel to the Debtors at (312) 962-3500 or visit www.kccllc.net/IPC.**

Pursuant to the Sale and Bidding Procedures Motion and section 365 of the Bankruptcy Code, the Debtors have requested: (1) authority to assume and assign certain executory contracts and unexpired leases (the "Assumed Contracts") to any High Bidder; and (2) that, upon such assumption and assignment, the Debtors shall be relieved of any liability under such Assumed Contracts arising after the closing of the Sale.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  IPC International Corporation (2698); and The Security Network Holdings Corporation (7985).  The address of each of the Debtors is 2111 Waukegan Road, Bannockburn, IL 60015.

[2]    Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Bidding Procedures and Sale Motion.

## ASSUMPTION AND ASSIGNMENT PROCEDURES

1.  Within three business days after approval of these Assumption and Assignment Procedures, the Debtors shall file a schedule of cure obligations (the "Contract and Cure Schedule") listing the executory contracts and unexpired leases proposed to be assigned (the "Assumed Contracts") and the amount, if any, that the Debtors propose to pay to cure such Assumed Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts").

2.  Upon filing the Contract and Cure Schedule, a copy of the Contract and Cure Schedule, the Bidding Procedures and Sale Motion (including all exhibits thereto), the Notice of Auction and Sale Hearing, the Bidding Procedures Order, the Bidding Procedures, and the Assumption and Assignment Procedures (collectively, a "Cure Package"), will be served on each of the counterparties to the Assumed Contracts listed on the Contract and Cure Schedule.

3.  Any objections ("Assignment Objections") to the assumption and assignment of any Assumed Contract, including, but not limited to, objections relating to adequate assurance of future performance or to the proposed Cure Amount set forth in the Contract and Cure Schedule, must be filed with the Bankruptcy Court and served upon the Notice Parties no later than: (a)(i) one (1) week prior to the Sale Hearing with respect to proposed Cure Amounts, and (ii) one (1) Business Day prior to the Sale Hearing with respect to adequate assurance of future performance; and (b) in the case of Additional Contracts (as defined below), the later of (i) the dates set forth in the prior subsection (a), or (ii) fifteen (15) days after receipt of a Cure Package (as applicable, the "Stalking Horse Assignment Objection Deadline"). Notwithstanding the foregoing, in the event that UPS is not the High Bidder at the Auction, the Debtors will send notice of the High Bidder's proposed adequate assurance information, including Cure Amounts, to the counterparties to the Assumed Contracts and Additional Contracts (as defined below) by email or fax, if available, and if not available, by FedEx within six (6) hours of the adjournment of the Auction. Contract counterparties to the (a) Assumed Contracts shall have until one (1) Business Day prior to the Sale Hearing, to file Assignment Objections, and (b) to the Additional Contracts (as defined below), fifteen (15) days after receipt of a Cure Package (as applicable to file Assignment Objections, (the "Non-Stalking Horse Assignment Objection Deadline").

4.  Any counterparty to an Assumed Contract failing to file an Assignment Objection by the Assignment Objection Deadline shall be forever barred from: (a) objecting to the Cure Amount set forth on the Contract and Cure Schedule with respect to its Assumed Contract; (b) seeking from the Debtors, the High Bidder, or any assignee under the Sale any amounts (in addition to the proposed Cure Amount) arising under its Assumed Contract prior to the closing of the Sale; and (c) objecting to the assumption and assignment of its Assumed Contract in connection with the Sale.

2

5.  In the event that the Debtors and any objecting counterparty to an Assumed Contract are unable to resolve consensually an Assignment Objection prior to the date that is 3 days before the Sale Hearing, the Debtors shall provide notice to the Court of such dispute and request that the Bankruptcy Court hear and determine such Assignment Objection at the Sale Hearing.

6.  Except as may otherwise be agreed to by all parties to an Assumed Contract, the cure of any defaults under Assumed Contracts necessary to permit assumption and assignment thereof in accordance with section 365 of the Bankruptcy Code shall be by: (a) payment of the undisputed Cure Amount; and/ or (b) establishment of a reserve with respect to any disputed Cure Amount. The party responsible for paying Cure Amounts shall be as set forth in the Purchase Agreement or, if applicable, in an agreement between the High Bidder and the Debtors.

7.  The Purchase Agreement provides, and the agreement from another bidder may also provide, for the High Bidder to add Assumed Contracts to or remove Assumed Contracts from the Contract and Cure Schedule at any time up until ten (10) days after the closing of the Sale. As the Debtors are advised by the High Bidder that they desire to assume and assign an executory contract or unexpired lease, the Debtors shall file an amended or supplemental Contract and Cure Schedule adding such contracts or leases thereto (any such added contract, an "Additional Contract") or removing Assumed Contracts therefrom, and shall provide notice of such removal of such Assumed Contracts or assumption and assignment of Additional Contracts to each affected counterparty to such contracts and leases.

PAC 1119891v.3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| IPC International Corporation, *et al.*[8] | ) | Case No. 13-12050 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ADDENDUM 3
## TO BIDDING PROCEDURES ORDER [DOCKET No. ___]

### NOTICE OF BID DEADLINE, AUCTION, SALE MOTION AND SALE HEARING
### (IN CONNECTION WITH THE SALE OF ASSETS
### USED IN THE DEBTORS' STANDING GUARD AND PATROL BUSINESS)

**PLEASE TAKE NOTICE** that on August 10, 2013, the above-captioned debtors and debtors in possession (the "Debtors") filed a motion (the "Sale and Bidding Procedures Motion") seeking approval of, among other things: (1) auction and bidding procedures (the "Bidding Procedures") in connection with the sale of substantially all of their assets used in the operation of their standing guard and patrol business (the "Assets"); (2) procedures to determine cure amounts and deadlines for objections to the assumption and assignment of certain contracts and leases by the Debtors; and (3) related relief with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). By order dated _____ ___, 2013 [Docket No. ___] (the "Bidding Procedures Order"), the Bankruptcy Court: (a) granted, in part, the Sale and Bidding Procedures Motion; (b) approved the Bidding Procedures, which procedures are attached as **Addendum 1** to the Bidding Procedures Order; and (c) approved procedures relating to the assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Procedures"), which procedures are attached as **Addendum 2** to the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that all interested parties are invited to submit a Qualified Bid and to make offers to purchase the Assets in accordance with the terms of the Bidding Procedures and the Bidding Procedures Order, copies of which may be included herewith. The deadline to submit bids (the "Bid Deadline") is **September 27, 2013 at 4:00 p.m. (central time)**.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order, the Debtors intend to conduct an auction (the "Auction") for the sale of the Assets on **October 2, 2013 at 10:00 a.m. (central time)** at the offices of Proskauer Rose LLP, 70 W. Madison St.,

---

[8]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  IPC International Corporation (2698); and The Security Network Holdings Corporation (7985).  The address of each of the Debtors is 2111 Waukegan Road, Bannockburn, IL 60015.

Suite 3800 Chicago, IL, or at such other place and time as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled a hearing on **October 9, 2013 at 2:00 p.m. (eastern)** (the "Sale Hearing"), at which the Debtors intend to seek the Bankruptcy Court's approval of the sale of the Assets to the bidder(s) submitting the highest, best or otherwise financially superior offer at the Auction (collectively, the "High Bidder"). The Sale Hearing will be held before the Honorable Mary F. Walrath, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market St., 5th Floor, Courtroom No. 4, Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE** that All Qualified Bids must be submitted no later than 4:00 p.m. (central) on September 27, 2013 (the "Bid Deadline") by delivery to Proskauer Rose LLP, 70 West Madison Street, Chicago, Illinois 60602, (Attn. Brandon W. Levitan) , with copies to: (1) Joseph Greenwood, Livingstone Partners, LLC, 443 North Clark St., Suite 200 Chicago, IL 60654; (2) Alan Feld, Sheppard Mullin, Richter & Hampton LLP, counsel to UPS, 333 South Hope St., 43rd Floor Los Angeles, CA 90071; (3) John P. Sieger, Katten Muchin Rosenman LLP, counsel to The PrivateBank and Trust Company, 525 W. Monroe Street Chicago IL 60661-3693; and (4) counsel to any official committee appointed in these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE** that objections to the relief requested in the Sale and Bidding Procedures Motion, not granted in the Bidding Procedures Order, including approval of the sale of Debtors' Assets free and clear of all liens, claims, encumbrances, interests and liabilities (including, without limitation, successor liability), other than permitted encumbrances and expressly assumed liabilities, must: (a) be filed no later than October 4, 2013 (the "Objection Deadline"); (b) be made in writing and state the basis of such objection with specificity; (c) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules; and (d) be served upon the Debtors and Notice Parties (as defined in the Bidding Procedures Order) such as to be received on or before 4:00 p.m., central time, on the Objection Deadline; provided that any objections of counterparties to Assumed Contracts with respect to cure amounts or adequate assurance of future performance shall be filed with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that attached as Exhibit A hereto is a copy of the proposed sale order submitted to the Bankruptcy Court for approval which shall, without limitation, (i) authorize and direct the sale of Assets to the highest or otherwise best bidder (the "Purchaser") free and clear of all encumbrances, claims, liabilities and interests of any kind whatever and every type and description, including without limitation any obligations to Debtors' vendors, trade creditors, employees, former employees, taxing authorities, other government agencies, secured creditors, other lien creditors, (ii) contain a finding of good faith under Bankruptcy Code section 363(m), (iii) authorize the assumption by the Debtors and assignment to Purchaser of all Assumed Contracts included in the Assets, (iv) order that Purchaser is absolved of and immune from any and all successor liability, including, without limitation, successor liability for any and all Taxes, including, without limitation, payroll taxes, income taxes, and sales taxes, and any and all employee obligations, including, without limitation, wages, vacation pay, severance, ESOP liability, 401(k) liability (except as set forth in

Section 8.3 of the Purchase Agreement), COBRA liability (except as set forth in Section 8.2(b) of the Purchase Agreement), health care liability, any pending class action lawsuits (including, without limitation, the actions styled as *Chavez v. IPC International Corporation, et al.* and *Stano v. IPC International Corporation, et al.*, both pending in the U.S. District Court for the Central District of California), (v) enjoin all persons from asserting against the Purchaser any claim, liability or encumbrance against the Debtors, including, without limitation, all Claims, Liabilities and Encumbrances referenced in the Sale Order, (vi) a waiver of the stays provided under Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, and (vii) provide that any person who does not timely object to the relief requested in the Sale Motion shall be deemed to consent to the relief requested in the Sale Motion or set forth in the Sale Order; and which form of Sale Order shall be entered by the Bankruptcy Court with such changes to the foregoing as are reasonably acceptable to Purchaser, the Debtors and the Debtors' senior secured lender.

      **PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the complete terms and conditions of the Purchase Agreement, Sale and Bidding Procedures Motion, the Bidding Procedures, and the Bidding Procedures Order, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety. Copies of these pleadings may be obtained: (1) by written request to counsel to the Debtors, Proskauer Rose LLP, 70 West Madison Street, Chicago, Illinois 60602, (Attn. Brandon W. Levitan); and (2) on the website of the Debtors' claims agent at www.kccllc.net/IPC.

Dated: _____ __, 2013

6