**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>IPC International Corp., *et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 13-12050 (MFW)<br><br>**Re: D.I. 20**<br>**Objections Due: 8/27/13 at 4:00 p.m.**<br>**Hearing Date: 9/3/13 at 2:00 p.m.** |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION
FOR AN ORDER AUTHORIZING AND APPROVING IMPLEMENTATION OF A KEY
EMPLOYEE INCENTIVE PROGRAM PURSUANT TO SECTIONS 105(a),
363(b), 503(b)(1) AND 503(c)(3) OF THE BANKRUPTCY CODE**

Roberta A. DeAngelis, United States Trustee for Region 3 (the "U.S. Trustee"), through her undersigned counsel, hereby objects (the "Objection") to the Debtors' Motion for an Order Authorizing and Approving Implementation of a Key Employee Incentive Program Pursuant to Sections 105(a), 363(b), 503(b)(1) and 503(c)(3) of the Bankruptcy Code (the "Motion" (D.I. 20)), and in support of her Objection respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Motion seeks to pay the Debtors' chief financial officer $145,000 upon the consummation of an asset purchase agreement that was substantially negotiated pre-petition. Because the bonus plan does not sufficiently incentivize the chief financial officer's post-petition efforts, the bonus plan is retentive. Being such, the bonus plan is subject to Section 503(c)(1) of the Bankruptcy Code. Because the Debtors have not shown that the requirements of Section 503(c)(1) have been satisfied, the Court should deny the Motion.

**JURISDICTION**

2. Pursuant to (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this Objection.

3. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4. The U.S. Trustee has standing to be heard on the Motion pursuant to 11 U.S.C. § 307.

**FACTUAL AND PROCEDURAL HISTORY**

5. The Debtors filed voluntary chapter 11 petitions in this Court on August 9, 2013 (the "Petition Date"). No official committee of unsecured creditors has been appointed in these cases.

6. Livingston Partners LLC began marketing the Debtors' assets about late May 2012. *See* Strong Decl., D.I. 3 ¶ 16. On April 24, 2013, the Debtors executed a letter of intent with Universal Protection Services, LLC (the "Stalking Horse"). *See id.* ¶ 21.

7. As of the Petition Date, the Debtors and the Stalking Horse executed an asset purchase agreement that "provides for a going concern sale of the Debtors' business." *See* Strong Decl., D.I. 3, ¶ 22. *See also* D.I. 21 Exh. C.

8. On the Petition Date, the Debtors filed the Motion. The Motion seeks court authority to pay a $145,000 bonus (the "CFO Bonus Plan") to the Debtors' chief financial officer

> upon consummation of a successful sale of all (or substantially all) of the Company's assets to either Universal Protection Service or a bidder with a higher or otherwise better bid, in either case as contemplated in the non-binding indicative letter from Universal Protection Service to the Company dated April 24, 2013 (a "Transaction Event").

Motion, Exh. B at 2.

9. The chief financial officer would not receive the bonus if he were terminated for cause or resigned before the Transaction Event occurred.

10. The Motion also seeks to make monthly payments (the "Non-CFO Bonus Plan," and, together with the CFO Bonus Plan, the "Bonus Plans") to five other individuals "who are employed at the Company at the end of June, July, August, and September 2013, in amounts set forth on Schedule A, on the final pay date of each such month and on account of such employment for such month." Motion Exh. B at 1-2. The Motion does not set forth information about the five beneficiaries' job titles or descriptions, and the U.S. Trustee has requested that information.

11. The participants in the Bonus Plans would also need to sign waivers and releases that would release, among other things, claims against the Debtors under any individual employment, bonus, severance, retention or change-of-control agreement, in order to receive their bonuses. *See* Motion Exh. B at 2-3.

**ARGUMENT**

**1. Applicable Law**

   12. Section 503(c) restricts debtors from making retention or severance payments to insiders unless the applicable requirements of Section 503(c) have been satisfied. *See*, *e.g.*, *In re Foothills Texas, Inc.*, 408 B.R. 573, 577 (Bankr. D. Del. 2009). Congress added Section 503(c) to the Bankruptcy Code in 2005 to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process." *In re Global Home Products, LLC,* 369 B.R. 778, 784 (Bankr. D. Del. 2007). *See also In re Residential Capital, LLC*, 478 B.R. 154, 169 (Bankr. S.D.N.Y. 2012). Under Section 503(c), insider retention plans and severance plans are "severely restricted." *In re Global Home Products, LLC,* 369 B.R. at 785.

   13. Courts should examine bonus plans in light of the practice Congress sought to eradicate and determine if proposed metrics are "designed to motivate insiders to rise to a challenge or merely report to work." *In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012). An incentive plan "should incentivize employees for their post-petition efforts, not compensate them for the work they did before the bankruptcy filing." *In re Residential Capital, LLC*, 478 B.R. at 161.

   14. The proponent of a bonus plan has the burden of showing that the plan is not a retention plan governed by Section 503(c)(1). *See In re Hawker Beechcraft, Inc.*, 479 B.R. at 313 (citing *In re Mesa Air Group, Inc.*, 10-10018 (MG) 2010 WL 3810899 at *3 (Bankr. S.D.N.Y. 2010)). To show that a bonus plan falls under Section 503(c)(3), a debtor must establish by a preponderance of the evidence that the bonus plan is incentivizing, not retentive. *See In re Residential Capital, LLC*, 478 B.R. at 170. For a bonus plan to be incentivizing, it

should be tied to significant goals that are difficult to achieve.  *See, e.g., In re Dana Corp.*, 358 B.R. 567, 583 (Bankr. S.D.N.Y. 2006) (court approved long-term incentive plan where benchmarks were "difficult targets to reach and [were] clearly not 'lay-ups'"); *In re Hawker Beechcraft, Inc.*, 479 B.R. at 313-15 (court rejected proposed bonus plan where lowest levels of proposed metrics were "well within reach," including sales-price metric that was "hardly challenging"); *In re Residential Capital, LLC*, 478 B.R. at 171-72 (court rejected proposed bonus plan where participants had to remain employed by debtors to receive payment, and additional challenging performance metrics were lacking).  The Debtors must show that the CFO Bonus Plan is a performance-based "pay for value" plan, not a "pay to stay" plan.  *See In re Residential Capital, LLC*, 478 B.R. at 170 (citing *In re Global Home Products, LLC*, 369 B.R. at 783).

    15. The label a debtor gives to a bonus plan to avoid the application of Section 503(c)(1) "must be viewed with skepticism; the circumstances under which the proposal is made and the structure of the compensation package control."  *In re Residential Capital, LLC*, 478 B.R. at 170.

    16. Section 503(c)(1) provides that no retention payment shall be made to an insider unless the court finds, based on evidence in the record, that (i) the payment is essential to retain the insider because he or she has a bona fide job offer from another business at the same or greater rate of compensation; (ii) the insider's services are essential to the debtor's survival; and (iii) the amount of the payment complies with the caps established in Section 503(c)(1)(C).  *See In re Global Home Products, LLC*, 369 B.R. at 785.

**2. CFO Bonus Plan**

17.    The Motion concedes that the Debtors' chief financial officer is an insider. *See* Mot. ¶ 9.  Because the beneficiary is an insider, the CFO Bonus Plan is subject to the prohibitions of Section 503(c)(1).

18.    Under the CFO Bonus Plan, Mr. Strong would receive $145,000 if the asset purchase agreement with the Stalking Horse were consummated.  This metric is not incentivizing because it is tied to an asset purchase agreement that was substantially negotiated and executed prepetition; it does not adequately incentivize Mr. Strong's post-petition efforts.

19.    A similar metric was rejected in *In re Residential Capital, LLC*, 478 B.R. 154 (Bankr. S.D.N.Y. 2012).  In that case, before the petition date, the debtors had entered into two Section 363 asset purchase agreements for the sale of the debtors' principal assets.  *See id.* at 157.  The debtors had marketed their assets pre-petition, had decided to enter into the two asset purchase agreements pre-petition, and had executed the asset purchase agreements pre-petition. *See id.* at 159.  About two months after the petition date—and three months before the scheduled auction of the debtors' assets—the debtors sought approval of a bonus plan for 17 insiders.  *See id.* at 157, 164.  Sixty-three percent of the total bonuses would have vested upon the closing of the asset sales without an auction.  *See id.* at 157 n.2.  The U.S. Trustee objected to the proposed bonus plan.  The debtors argued that the bonus plan participants assumed "responsibilities above their normal duties" in working to achieve the "monumental tasks" of holding the auctions and closing the asset sales, and that these added responsibilities subjected the participants to "extraordinary stress, pressure, and uncertainty as to the security of their jobs." *Id.* at 163, 167.  The debtors submitted evidence that the bonus plan participants' responsibilities and job demands had increased because of the asset sales.  *See id.* at 168.

20. The *Residential Capital* court rejected the proposed bonus plan because it rewarded the plan participants for work that had been mostly done pre-petition and because 63% of the bonus awards were linked solely to the closing of the asset sales. *See id.* at 164, 171. "The distinction between pre-petition and post-petition activities of key employees is important because an employee 'incentive' plan should incentivize employees for their post-petition efforts, not compensate them for the work they did before the bankruptcy filing." *See id.* at 161. The court also wrote that Section 503(c) "requires more than increased responsibilities to justify increased pay for insiders." *Id.* at 168. The Court ruled that the debtors had "failed to carry their burden to show that vesting 63% of the KEIP Awards based solely upon the Closings is not primarily retentive in nature." *Id.* at 171.

21. Here, 100% of the award under the CFO Bonus Plan is based solely upon the consummation of an asset purchase agreement that the Debtors appear to have substantially negotiated and executed pre-petition. The bonus is not linked to any other metric, challenging or otherwise. The CFO Bonus Plan should be incentivizing the participant for his post-petition efforts, not compensating him for work he did pre-petition. The CFO Bonus Plan is retentive and as such is subject to Section 503(c)(1). Because the Debtors have not shown that the requirements of Section 503(c)(1) have been satisfied, the Motion should be denied.

**3. Non-CFO Bonus Plan**

22. The U.S. Trustee respectfully submits that the Non-CFO Bonus Plan is a retention plan. It would pay employees month-end bonuses simply for being employed by the Debtors, with no achievement criteria. To the extent a Non-CFO Bonus Plan participant is an insider of the Debtors, the Non-CFO Bonus Plan falls under Section 503(c)(1).

23.     The U.S. Trustee has requested but not yet received information from the Debtors about the job descriptions and titles of the Non-CFO Bonus Plan participants.  Pending receipt of the requested information, the U.S. Trustee reserves her right to object on the basis that those participants are insiders whose bonus payments are subject to Section 503(c)(1).

**4. Section 503(c)(3)**

24.     If the Court reviews the Bonus Plans under Section 503(c)(3), then the U.S. Trustee submits that the facts and circumstances of the case do not justify payment under the Bonus Plans in their current form.  The Debtors have not demonstrated that the facts and circumstances justify paying Mr. Strong or the other individuals bonuses for work they did prepetition.  The Bonus Plans should not be approved under Section 503(c)(3).

## CONCLUSION

25.     Because the CFO Bonus Plan effectively seeks to retain rather than incentivize an insider post-petition, it is subject to Section 503(c)(1) of the Bankruptcy Code.  The Debtors have not shown that the requirements of Section 503(c)(1) have been satisfied.  Nor have the Debtors shown that bonuses for prepetition work are justified by the facts and circumstances of the case under Section 503(c)(3).  The Motion should be denied.

26.     The U.S. Trustee reserves any and all rights, remedies and obligations to, among other things, complement, supplement, augment, alter or modify this Objection, file an appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee requests that this Court issue an order denying the Motion and grant such other relief as the Court deems fair and just.

Dated: <u>August 27, 2013</u>
      Wilmington, Delaware

Respectfully submitted,

**ROBERTA A. DEANGELIS**
**UNITED STATES TRUSTEE**

By: <u>*/s/Benjamin Hackman*</u>
Benjamin A. Hackman, Esq.
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (fax)