## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| IPC International Corporation, *et al.*[1] | ) | Case No. 13-12050 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 15, 43** |

**FINAL ORDER (I) AUTHORIZING DEBTORS IN POSSESSION TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (II) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED LENDER PURSUANT TO 11 U.S.C. §§ 361 AND 363, AND (V) MODIFYING THE AUTOMATIC STAY**

Upon the motion of the debtors and debtors in possession (together the, "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), dated August 9, 2013 (the "Motion"), seeking the entry of an interim and final order (this "Final Order"): (i) authorizing the Debtors to obtain credit (the "DIP Facility") pursuant to section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and pursuant to that certain senior secured post-petition loan agreement with The PrivateBank and Trust Company, an Illinois banking corporation ("PrivateBank" or the "DIP Lender"), attached hereto as **Exhibit A** (the "DIP Credit Agreement"), under the terms of this Final Order, the DIP Credit Agreement, and any related documents required to be delivered by or in connection with the DIP Credit Agreement (collectively with the DIP Credit Agreement, the "DIP Credit Documents") and to perform such other and further acts as may be required in connection with the DIP Credit Documents; (ii) granting security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  IPC International Corporation (2698); and The Security Network Holdings Corporation (7985).  The address of each of the Debtors is 2111 Waukegan Road, Bannockburn, IL 60015.

364(c)(3) of the Bankruptcy Code, and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the DIP Lender to secure all obligations of the Debtors under and with respect to the DIP Facility; (iii) authorizing Debtors' use of the Cash Collateral (as hereinafter defined) solely on the terms and conditions set forth in this Final Order and in the DIP Credit Agreement; (iv) granting adequate protection to PrivateBank in its capacity as the Prepetition Secured Lender (as hereinafter defined); and (v) modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors, the DIP Lender, and the Prepetition Secured Lender to implement the terms of this Final Order; and an interim hearing having been held by the Court on August 13, 2013, pursuant to Rule 4001 (the "Interim Hearing"), and a final hearing having been held by the Court on September 3, 2013 (the "Final Hearing"), and the Court having considered the Motion and all pleadings related thereto, including the record made by the Debtors at the Interim Hearing and the Final Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.      On August 9, 2013 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their businesses and are managing their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The Debtors have provided notice of the Final Hearing by facsimile, electronic

2

mail, or overnight mail to:

(i) the Office of the United States Trustee (the "U.S. Trustee"); (ii) the twenty (20) largest unsecured creditors of the Debtors; (iii) counsel to the DIP Lender; (iv) counsel to the Prepetition Secured Lender; (v) all known parties with liens of record on assets of the Debtors as of the Petition Date; (vi) all financial institutions at which the Debtors maintain deposit accounts; (vii) the landlords for all non-residential real properties occupied by the Debtors as of the Petition Date; (viii) the Internal Revenue Service; and (ix) all other parties requesting notice pursuant to Bankruptcy Rule 2002. The Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rule 4001 in all respects.

D.      Without prejudice to the rights of any other party, but subject to the limitations thereon set forth in paragraph 29 below, the Debtors admit, stipulate and agree that:

(1)      Pursuant to that certain Credit Agreement dated as of August 31, 2009 (as amended, supplemented or otherwise modified prior to the date hereof, the "Prepetition Credit Agreement"), by and among, on the one hand, The Security Network Holdings Corp., IPC International Corporation, Uniformity, Inc., IPC International Realty Company, LLC, and IPC Technologies Inc., as the borrowers, and, on the other hand, The PrivateBank and Trust Company as administrative agent, syndication agent and documentation agent for the lenders, and as the sole lender (the "Prepetition Secured Lender"), the Prepetition Secured Lender made certain loans and other financial accommodations to or for the benefit of the Debtors. In connection with the Prepetition Credit Agreement, the Debtors entered into certain collateral and ancillary documentation with the Prepetition Secured Lender (such collateral and ancillary documentation collectively with the Prepetition Credit Agreement, the "Prepetition Credit Documents"). All obligations of the Debtors arising under the Prepetition Credit Documents, including all loans, advances, debts, liabilities, principal, interest, fees, swap exposure, charges, expenses, indemnities, and obligations for the

3

performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Secured Lender by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to as the "Prepetition Obligations."

(2)    As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition Secured Lender pursuant to the Prepetition Credit Documents, without defense, counterclaim or offset of any kind, in the following aggregate amounts in respect of loans and other financial accommodations made by the Prepetition Secured Lender pursuant to and in accordance with the terms of the Prepetition Credit Documents, not including fees and interest: (a) Revolving Loan: $7,055,749.80 (the "Prepetition Revolving Debt"); (b) ESOP Term Loan: $7,017,836.54; (c) Mortgage Term Loan: $4,373,333.28; and (d) Outstanding Letters of Credit: $2,381,865.00 (ESOP Term Loan, Mortgage Term Loan, and Outstanding Letters of Credit, collectively, the "Prepetition Term Debt").

(3)    In addition, as of the Petition Date, the Debtors were further truly and justly indebted to the Prepetition Secured Lender pursuant to the Prepetition Credit Documents, without defense or setoff of any kind, in the aggregate amounts of (i) all other accrued or hereafter accruing bank fees and unpaid interest on the Prepetition Revolving Debt and the Prepetition Term Debt, (ii) all unpaid fees and expenses (including the fees and expenses of attorneys and financial advisors for the Prepetition Secured Lender) now or hereafter due under the Prepetition Credit Documents, and (iii) any other obligations of the Debtors under the Prepetition Credit Documents.

(4)    Pursuant to the Prepetition Credit Documents, the Prepetition Obligations are secured by valid, duly perfected first-priority (subject to certain permitted liens permitted by the Prepetition Credit Documents) security interests in and continuing liens on substantially all of the assets and property of the Debtors, including, but not limited to, all

4

personal and fixture property of every kind and nature, including without limitation, all goods (including inventory, equipment, and any accessions thereto), instruments, documents, accounts receivable, chattel paper (including electronic chattel paper), the Debtors' lockbox and cash concentration account, letter of credit rights, commercial tort claims, securities and all other investment property, insurance claims and proceeds, intellectual property, and all general intangibles, and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing, in each case wherever located, whether then owned or existing or thereafter acquired or arising. All collateral granted or pledged by the Debtors to the Prepetition Secured Lender pursuant to the Prepetition Credit Documents shall collectively be referred to herein as the "Prepetition Collateral."

(5)     Substantially all of the Debtors' cash, including, without limitation, all cash and other amounts on deposit or maintained in the Debtors' lockbox and cash concentration account by the Debtors and any amounts generated by collection of the Debtors' accounts receivable, the sale of the Debtors' inventory, or any other disposition of the Prepetition Collateral constitutes proceeds of the Prepetition Collateral and therefore constitutes cash collateral of the Prepetition Secured Lender within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

(6)     All Prepetition Credit Documents executed and delivered by the Debtors to the Prepetition Secured Lender are valid and enforceable by the Prepetition Secured Lender against the Debtors. The Prepetition Secured Lender duly perfected its liens upon and security interests in the Prepetition Collateral in accordance with applicable law. The liens and security interests of the Prepetition Secured Lender in the Prepetition Collateral, as security for the Prepetition Obligations, constitute valid, binding, enforceable and perfected first-priority (subject to certain permitted liens permitted by the Prepetition Credit Documents) liens and security interests and are not subject to avoidance, disallowance,

PAC 1118339v.4

subordination or re-characterization pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to the DIP Liens, and the Carve-Out (as each term is hereinafter defined) in accordance with this Order).

(7)    The Prepetition Obligations constitute legal, valid and binding obligations of the Debtors, no offsets, defenses or counterclaims to the Prepetition Obligations exist, and no portion of the Prepetition Obligations is subject to avoidance, disallowance, reduction, subordination or re-characterization pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Secured Lender with respect to the Prepetition Credit Documents or otherwise, whether arising at law or at equity, including, without limitation, any re-characterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code. The Debtors irrevocably waive any right to (i) challenge or contest the liens or security interests of the Prepetition Secured Lender in the Prepetition Collateral, (ii) challenge or contest the validity of the Prepetition Obligations, or (iii) assert any claims or causes of action against the Prepetition Secured Lender or any of its affiliates, agents, attorneys, financial advisors, officers, managers, directors or employees under the Bankruptcy Code or applicable non-bankruptcy law.

E.    The Debtors have an immediate and critical need to obtain post-petition financing under the DIP Facility in order to operate their businesses as debtors in possession and comply with their obligations as debtors in possession.

F.    The Debtors also have an immediate and critical need to use Cash Collateral pursuant to the terms of this Final Order to, among other things, finance the ordinary costs of their operations, maintain business relationships with vendors, suppliers and customers, make payroll, and satisfy other working capital and operational needs. The Debtors' access to

6

sufficient working capital and liquidity through the use of Cash Collateral pursuant to this Final Order is vital to the preservation and maintenance of the going concern value of the Debtors' estates. Consequently, without the continued use of Cash Collateral by the Debtors, to the extent authorized pursuant to this Final Order, the Debtors and their estates would suffer immediate and irreparable harm.

G.      The Debtors are unable to obtain (i) adequate unsecured credit allowable either under (a) sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured either by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code or (y) a junior lien on encumbered assets of their estates under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Lender on terms more favorable than the terms of the DIP Facility. The only funding available to the Debtors is the DIP Facility.

H.      The DIP Lender has agreed to provide the Debtors with certain financing commitments but solely on the terms and conditions set forth in this Final Order and the DIP Credit Documents. After considering all of their alternatives, the Debtors concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lender pursuant to the terms of this Final Order and the DIP Credit Documents represents the best post-petition financing presently available to the Debtors.

I.      The Prepetition Secured Lender consents to: (i) the imposition of certain liens under section 364(d)(1) of the Bankruptcy Code in favor of the DIP Lender, but solely on the terms and conditions set forth in this Final Order and in the DIP Credit Documents, which liens will prime the Primed Liens (as defined in paragraph 14, *infra*), and (ii) the Debtors' use of the Prepetition Collateral (including the Cash Collateral), provided that the Court authorizes the Debtors, pursuant to sections 361, 363 and 364 of the Bankruptcy Code, to grant to the Prepetition Secured Lender, as

adequate protection for the Adequate Protection Obligations (as hereinafter defined), but subject to the Carve-Out (a) replacement security interests in and liens and mortgages upon (collectively, the "Adequate Protection Liens") all of the DIP Collateral (as hereinafter defined), and (b) a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code (the "Adequate Protection Priority Claim"), which Adequate Protection Priority Claim shall be subordinate in priority only to the Carve-Out, and the superpriority claim under section 364(c)(1) of the Bankruptcy Code in favor of the DIP Lender. The Adequate Protection Liens and the Adequate Protection Priority Claim shall secure the payment of the Prepetition Obligations in an amount equal to any diminution in the value of the Prepetition Secured Lender's interests in the Prepetition Collateral, including the Cash Collateral from and after the Petition Date (the aggregate amount of such diminution, the "Adequate Protection Obligations") including, without limitation, any diminution resulting from: (i) the Debtors' use of the Prepetition Collateral, (ii) the imposition of the DIP Liens, which will prime the Primed Liens (as defined in paragraph 14, *infra*), and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code; provided, however, that notwithstanding the foregoing, the diminution claim secured by the Adequate Protection Liens and the Adequate Protection Priority Claim shall not include the diminution in the Prepetition Collateral arising from, and to the extent of, the deemed repayments of the Prepetition Obligations under paragraph 6 of this Final Order. The Adequate Protection Liens shall be junior to the Carve-Out, the DIP Liens, and the Permitted Liens (as hereinafter defined) with respect to the collateral encumbered by any Permitted Liens to the extent such Permitted Liens are senior to the liens securing the Prepetition Obligations. As additional adequate protection, the Prepetition Secured Lender shall be entitled to (a) the payment of all fees (including reasonable professional fees and expenses owing under the Prepetition Credit Agreement as of the Petition Date), as and when set forth in the Budget, and (b) the current payment of all such post-petition fees and expenses.

J.    The consent of the Prepetition Secured Lender to the priming of its liens by

8

the DIP Liens is limited to the DIP Facility presently before the Court, with PrivateBank as the DIP Lender, and shall not extend to any other post-petition financing or to any modified version of such DIP Facility. Furthermore, the consent of the Prepetition Secured Lender to the priming of its liens by the DIP Liens does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Lender that its interests in the Prepetition Collateral are adequately protected pursuant to this Final Order or otherwise. The Prepetition Secured Lender does not consent to the Debtors' use of the Prepetition Collateral, including the Debtors' use of the Cash Collateral, except on the terms of this Final Order.

K.    The security interests and liens granted pursuant to this Final Order to the DIP Lender are appropriate under section 364(d) of the Bankruptcy Code because, among other things: (i) such security interests and liens do not impair the interests of any holder of a valid, perfected and non-avoidable prepetition security interest in or lien upon the property of the Debtors' estates, or (ii) the holders of such valid, perfected, prepetition security interests and liens have consented to the security interests and priming liens granted pursuant to this Final Order to the DIP Lender.

L.    Good cause has been shown for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001. In particular, the authorization granted herein for Debtors to continue using Cash Collateral and to obtain DIP financing, including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the Debtors and their estates. Entry of this Final Order is in the best interest of the Debtors, their estates, and their creditors. The terms of the DIP Credit Documents and the terms of the Debtors' continued use of Cash Collateral pursuant to this Final Order are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M.    The Debtors, the DIP Lender, and the Prepetition Secured Lender have negotiated the terms and conditions of the DIP Credit Documents and this Final Order

9

(including the Debtors' use of Cash Collateral pursuant hereto) in good faith and at arm's-length, and any credit extended and loans made to the Debtors pursuant to this Final Order and the DIP Credit Documents shall be, and hereby are, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

N.    Based on the foregoing, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is approved on the terms and conditions set forth in this Final Order. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on the merits. This Final Order shall become effective and binding upon all parties in interest immediately upon its entry. To the extent the terms of the DIP Credit Documents or the interim order entered on August 13, 2013 [Doc. No. 43] (the "Interim Order") differ in any respect from the terms of this Final Order, this Final Order shall control.

2.    The Debtors are hereby authorized to use the Cash Collateral and to incur DIP Obligations (as hereinafter defined) solely in accordance with the Budget (as hereinafter defined) and the other terms and conditions set forth in the DIP Credit Agreement and in this Final Order.

3.    The Debtors are hereby authorized and directed to pay on demand all fees, expenses and other amounts payable under the terms of the DIP Credit Agreement and all out-of-pocket costs and expenses of the DIP Lender in accordance with the terms of the DIP Credit Agreement (including, without limitation, the reasonable fees and disbursements of legal counsel and financial advisors retained by the DIP Lender (including the professional fees incurred by the DIP Lender in connection with the preparation or enforcement of the DIP Credit Agreement and the other DIP Credit Documents)). No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court. In addition, the Debtors are authorized to indemnify the DIP Lender against any post-petition liability arising in connection with the DIP

10

Credit Documents to the extent set forth in the DIP Credit Documents. All unpaid fees, expenses and indemnity rights of the DIP Lender shall constitute DIP Obligations (as hereinafter defined) and shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations. The Debtors will have no obligation to indemnify the DIP Lender for any act or commission constituting gross negligence or willful misconduct.

5.    The DIP Credit Documents constitute valid and binding obligations of the Debtors and are enforceable against the Debtors in accordance with the terms thereof. No obligation, payment, transfer or grant of security under the DIP Credit Documents or this Final Order shall be stayed, restrained, voided, voidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.    Upon entry of the Interim Order, the Debtors (a) remitted to the Prepetition Secured Lender for application to and repayment of the Prepetition Revolving Debt, all Cash Collateral in their possession or control and arising from, or constituting proceeds of, the Prepetition Collateral, including, but not limited to, all funds contained in all of their deposit accounts on the Petition Date, and (b) reborrowed a like amount as a DIP Obligation under the DIP Facility. The automatic stay provisions of section 362 of the Bankruptcy Code were modified to the extent necessary to permit the foregoing remission and application of Cash Collateral and proceeds of Prepetition Collateral by the Debtors and the Prepetition Secured Lender. Pursuant to this Final Order, the foregoing remission and application of Cash Collateral and proceeds of Prepetition Collateral by the Debtors and the Prepetition Secured Lender is hereby approved on a final basis. Any and all payments and proceeds remitted, or deemed remitted, to the Prepetition Secured Lender pursuant to this paragraph shall be received by the Prepetition Secured Lender free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on sections 506(c) or 552(b) of the Bankruptcy Code, whether

11

directly or indirectly, all of which are hereby waived by the Debtor. For purposes of this Final Order, "proceeds" of any collateral shall mean proceeds (as defined in the Illinois Uniform Commercial Code) of such collateral as well as: (x) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to or for the account of the Debtors from time to time with respect to such collateral; and (y) all other payments, dividends, interest or other distributions on or in respect of any such Prepetition Collateral.

7.    All draws made on the DIP Facility (or deemed made pursuant to paragraph 6 hereof), all interest thereon, all contingent reimbursement obligations of the Debtors with respect to the undrawn amounts under the DIP Facility, and all fees, costs, expenses, indemnification obligations and other liabilities owing by the Debtors to the DIP Lender or any other parties under the DIP Credit Documents and this Final Order shall hereinafter be referred to as the "DIP Obligations." The DIP Obligations shall: (a) be evidenced by the books and records of the DIP Lender; (b) bear interest and be subject to fees payable at the rates and in the amounts set forth in the DIP Credit Agreement; (c) be secured in the manner set forth in paragraphs 13 and 14 below; (d) be payable in accordance with the terms of the DIP Credit Documents; and (e) comply with and otherwise be governed by the terms of this Final Order and the terms of the DIP Credit Documents.

8.    Subject to the terms and conditions set forth in this Final Order and in the DIP Credit Documents (including the Budget), the Debtors may use the Cash Collateral to: (a) pay interest, fees and expenses associated with the DIP Facility, as provided in the DIP Credit Documents, (b) make any adequate protection payments required under this Final Order, and (c) fund its general corporate and working capital requirements (including, without limitation, certain administrative expenses in the Chapter 11 Cases), in each case in accordance with the Budget and the terms of this Final Order.

9.    Attached hereto as Exhibit B is a budget (the "Budget") for the period

12

commencing on the Petition Date and ending on November 1, 2013. The Budget reflects on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week of the Budget. Subject to the variances permitted under section 14.1(d) of the DIP Credit Agreement, the Debtors shall not make any payments or other disbursements other than as set forth in the Budget, without the prior written consent of the DIP Lender and the Prepetition Secured Lender. Failure by the Debtors to comply with the Budget variance provisions set forth in this paragraph 9 and in section 14.1(d) of the DIP Credit Agreement shall constitute an Event of Default under the DIP Credit Agreement and this Final Order. The Budget shall not be modified without the prior written consent of the DIP Lender and the Prepetition Secured Lender. The Debtors shall comply with all reporting requirements set forth in the DIP Credit Documents and shall provide the DIP Lender with such additional financial reports as the DIP Lender may reasonably request from time to time.

10.    On the earliest to occur of: (a) January 31, 2014; (b) the occurrence of the effective date under any plan of reorganization or liquidation for the Debtors; (c) the occurrence of an Event of Default and the acceleration by the DIP Lender of the DIP Obligations; and (d) the closing of a sale or any other disposition by the Debtors of all or substantially all of the Debtors' assets, the Debtors shall be required to repay the DIP Lender in full and in cash all outstanding DIP Obligations.

11.    The Debtors' authority to use Cash Collateral in accordance with this Final Order and the Budget shall terminate on the earliest to occur (the "Cash Collateral Termination Event") of: (a) January 31, 2014, unless prior to such date the Debtors' use of Cash Collateral has been extended with the consent of the Prepetition Secured Lender; (b) the occurrence of the effective date under any plan of reorganization or liquidation for the Debtors; (c) the completion of the sale or any other disposition by the Debtors of all or any material portion of the Debtors' assets; and (d) the occurrence and continuation of an Event of Default under this Final Order or the DIP Credit

13

Agreement and a determination by the Prepetition Secured Lender, by written notice delivered by hand-delivery, overnight mail, facsimile, or email to counsel for the Debtors, to terminate the Debtors' use of Cash Collateral pursuant to the terms of this Final Order.

12.    The occurrence of any of the events set forth in clauses (a) through (n) below shall constitute an immediate Event of Default under this Final Order and the DIP Credit Agreement: (a) failure by the Debtors to make any payment due and owing to the DIP Lender or the Prepetition Secured Lender; (b) subject to any applicable grace or cure periods set forth in the DIP Credit Documents, failure by the Debtors to comply with any provision of this Final Order or the DIP Credit Agreement including, without limitation, the Budget variance provisions set forth in section 14.1(d) of the DIP Credit Agreement and paragraph 9 hereof, and any other affirmative or negative covenants set forth in this Final Order or the DIP Credit Documents, or any other "Event of Default" shall have occurred and be continuing under and as defined in the DIP Credit Documents; (c) except for actions required by this Final Order or the DIP Credit Documents, unless the Court orders otherwise, the Debtors shall take any material action in the Chapter 11 Cases that is adverse to the Prepetition Secured Lender or its interests in the Prepetition Collateral; (d) failure by the Debtors to obtain an order of this Court, in form and substance acceptable to the DIP Lender and the Prepetition Secured Lender, approving the sale or other disposition of all or substantially all of the Debtors' assets by October 31, 2013; (e) failure by the Debtors to consummate the sale or other disposition of all or substantially all of the Debtors' assets on or before November 15, 2013; (f) any of the Chapter 11 Cases are dismissed or converted to a chapter 7 case, or a chapter 11 trustee, a responsible officer, or an examiner with enlarged powers relating to the operation of the Debtors' business is appointed in any of the Chapter 11 Cases; (g) this Court enters an order granting relief from the automatic stay to the holder or holders of any security interest to permit an exercise of remedies with respect to any of the Debtors' assets with a combined fair market value in excess of $100,000 (unless the Prepetition Secured Lender and the DIP Lender have

14

consented to such relief or such relief consists solely of insurance proceeds payable to such creditor); (h) an order is entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Final Order without the consent of the Prepetition Secured Lender and the DIP Lender; (i) the Debtors create, incur or suffer to exist any post-petition liens or security interests other than: (i) those granted pursuant to this Final Order, and (ii) any other junior liens or security interests that the Debtors are permitted to create, incur or suffer to exist under the Prepetition Credit Agreement or under the DIP Credit Documents; (j) the filing by the Debtors of any motion, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Obligations or asserting any claim or cause of action against and/or with respect to the Prepetition Obligations, the liens securing the Prepetition Obligations, or the Prepetition Secured Lender or any of its affiliates, agents, attorneys, financial advisors, officers, managers, directors or employees (or if the Debtors support any such motion, application or adversary proceeding commenced by any third party); (k) this Court enters an order terminating the Debtors' exclusive period to file a plan of reorganization; (l) the Debtors file, or support the filing by a third party of, any plan of reorganization or liquidation that is not acceptable to the DIP Lender and the Prepetition Secured Lender; (m) any misrepresentation of a material fact made after the Petition Date by the Debtors or any of their agents to the Prepetition Secured Lender about (i) the financial condition of the Debtors, (ii) the nature, extent, location or quality of any Prepetition Collateral, or (iii) the disposition or use of any Prepetition Collateral, including the Cash Collateral; or (n) without the consent of the Prepetition Secured Lender and the DIP Lender, the Debtors file, or support the filing of, a motion seeking the authority for the Debtors to abandon any of the Prepetition Collateral pursuant to section 554 of the Bankruptcy Code or otherwise.  All notices of default must be promptly served on the Debtors, the office of the United States Trustee, and any official committees appointed in these Chapter 11 Cases.

      13.    As security for the full and timely payment of the DIP Obligations, the DIP

Lender is hereby granted, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable and fully perfected security interests in and liens and mortgages (collectively, the "DIP Liens") upon all prepetition and post-petition real and personal property of the Debtors (including, without limitation, all right, title and interest in all now-owned and hereafter-acquired accounts, chattel paper, deposit accounts, cash collateral, cash, money, cash equivalents, rights with respect to letters of credit, documents, equipment, motor vehicles, fixtures, general intangibles, instruments, inventory, investment property, commercial tort claims, intellectual property, intercompany advances, leasehold interests and fee simple interests in real property and licenses and easements with respect to real property, and all products, accessions and proceeds with respect to any of the foregoing), whether now existing or hereafter acquired or arising and of any nature whatsoever, including, without limitation, (a) all Prepetition Collateral, and (b) all assets of the Debtors that do not constitute Prepetition Collateral, ((a) and (b) together, the "DIP Collateral"[2]). For the avoidance of doubt, Avoidance Actions are specifically excluded from the DIP Collateral.

14.     The DIP Liens shall be subject and subordinate to the Carve-Out and shall: (a) pursuant to section 364(c)(2) of the Bankruptcy Code, constitute first-priority security interests in and liens upon all DIP Collateral that is not otherwise subject to any valid, perfected, enforceable and non-avoidable lien in existence as of the Petition Date; (b) pursuant to section 364(d)(1) of the Bankruptcy Code, be senior to and prime (i) those liens on the Prepetition Collateral in favor of the Prepetition Secured Lender with respect to the Prepetition Obligations, (ii) any and all valid, perfected, enforceable and non-avoidable liens on the Prepetition Collateral that are junior in priority to the liens of the Prepetition Secured Lender, and (iii) the Adequate Protection Liens ((i),

---

2          For the avoidance of doubt, and notwithstanding anything to the contrary in this Final Order, the DIP Credit Documents and/or the Prepetition Credit Documents, the DIP Collateral and the Prepetition Collateral shall include any proceeds of leased property but do not include the Debtors' interests in any non-residential real property leaseholds and/or subleaseholds, to the extent prohibited by such leases.

(ii) and (iii) above, collectively, the "Primed Liens"); and (c) pursuant to section 364(c)(3) of the Bankruptcy Code, be immediately junior in priority to any and all valid, properly perfected, enforceable and non-avoidable liens other than the Primed Liens on assets of the Debtors in existence as of the Petition Date, but only to the extent such liens are senior in priority to the Primed Liens (collectively, the "Permitted Liens").

15.    The DIP Liens and the Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtors, the DIP Lender or the Prepetition Secured Lender, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, fixture filings, filings with the U.S. Patent and Trademark Office, or other documents. All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except the Primed Liens, the Permitted Liens, the Carve-Out, and other permitted liens and encumbrances as provided in the DIP Credit Documents. If the DIP Lender hereafter requests that the Debtors execute and deliver to the DIP Lender any financing statements, security agreements, collateral assignments, mortgages, fixture filings, or other instruments and documents considered by the DIP Lender to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtors are hereby authorized and directed to execute and deliver such financing statements, security agreements, mortgages, fixture filings, collateral assignments, instruments, and documents, and the DIP Lender is hereby authorized to file or record such documents in its discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Final Order.

16.    In addition to the priming liens and security interests granted to the DIP Lender pursuant to this Final Order, pursuant to section 364(c)(1) of the Bankruptcy Code, all DIP Obligations shall constitute allowed superpriority administrative expense claims (the "Superpriority Claims") with priority, subject and subordinate to the Carve-Out, over any and all

administrative expenses, diminution claims (including all Adequate Protection Obligations), and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726, or any other provisions of the Bankruptcy Code, which Superpriority Claims shall, subject to the Carve-Out, be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof.

17.    Upon the occurrence and during the continuation of a Cash Collateral Termination Event, to the extent unencumbered funds are not available to pay administrative expenses in full, the DIP Liens, the Superpriority Claims, and the Primed Liens shall be subject to the payment of the Carve-Out. For purposes of this Final Order, the "Carve-Out" shall mean, collectively: (a) all statutory fees payable by the Debtors pursuant to 28 U.S.C. 1930(a)(6) in such amounts as determined in consultation with the United States Trustee or by final order of the Court and (b) the sum of (i) any unpaid professional fees and expenses specified in the Budget that were incurred but not paid as of the date of such Cash Collateral Termination Event (provided that such unpaid professional fees and expenses together with all previously-paid professional fees and expenses shall not exceed the aggregate amount of professional fees and expenses set forth in the Budget for the period prior to such Cash Collateral Termination Event) of the professionals retained by the Debtors, and any official committee of unsecured creditors (if one is appointed in the Chapter 11 Cases) that are subsequently allowed by order of this Court, in each case only to the extent not subsequently paid and after application of any retainers, and (ii) any fees and expenses incurred after such Cash Collateral Termination Event by the professionals retained by the Debtors (collectively, the "Professionals") in an aggregate amount not to exceed $100,000. Notwithstanding any other provision of this Final Order or the DIP Credit Documents, all liens, claims and interests of the DIP Lender and the Prepetition Secured Lender shall be subject and subordinate to the Carve-Out. Fees payable to the Office of the United States Trustee are not

18

subject to the Carve-Out Cap.

18.    No portion of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with asserting any claims or causes of action against the Prepetition Secured Lender or the DIP Lender, or any of their respective affiliates, agents, attorneys, financial advisors, officers, managers, directors or employees, including, without limitation, any action challenging or raising any defenses to the Prepetition Obligations or the DIP Obligations, the liens of the Prepetition Secured Lender or the DIP Lender, or the validity or enforceability of the DIP Credit Documents or the Prepetition Credit Documents; provided, however, that no more than $25,000 of the proceeds of the DIP Collateral may be used by the official committee of unsecured creditors (if one is appointed in the Chapter 11 Cases) to investigate the prepetition liens and claims of the Prepetition Secured Lender.

19.    As adequate protection for the payment of the Adequate Protection Obligations and subject to the Carve-Out, the Prepetition Secured Lender shall be granted the Adequate Protection Liens (as defined in paragraph I above) and the Adequate Protection Priority Claim (as defined in paragraph I above). The Adequate Protection Liens shall be junior in priority to the Carve-Out, the DIP Liens, and the Permitted Liens with respect to the collateral encumbered by any such Permitted Liens to the extent such Permitted Liens were senior to the liens of the Prepetition Secured Lender securing the Prepetition Obligations as of the Petition Date, and senior to any other liens. The Adequate Protection Priority Claim shall be junior in priority to the Carve-Out, and the Superpriority Claims and senior to all other administrative claims. As additional adequate protection, (a) the Prepetition Secured Lenders shall be entitled to the current payment of all post-petition fees and expenses, including the reasonable post-petition fees and expenses of legal counsel and other professionals retained by the Prepetition Secured Lender, as and when due and

19

payable under the Prepetition Credit Agreement; and (b) except for the DIP Facility and the DIP Liens granted to the DIP Lender pursuant to this Final Order or as otherwise provided in the DIP Credit Documents, the Debtors shall be prohibited from incurring additional indebtedness having priority claims or liens equal to or senior in priority to the Prepetition Obligations or the liens securing such obligations, and (c) the Prepetition Secured Lender shall be entitled to receive all reporting due to the DIP Lender under the DIP Credit Agreement.  Without the prior written consent of the DIP Lender and the Prepetition Secured Lender, no portion of the DIP Collateral or the Prepetition Collateral (including any Cash Collateral) shall, except as expressly permitted under the terms of the Budget, be used by the Debtors to satisfy chapter 11 administrative expenses.

20.    Nothing herein shall preclude the Prepetition Secured Lender from (a) seeking additional adequate protection from the Debtors at any time, (b) seeking to terminate the Debtors' use of Cash Collateral, or (c) seeking the payment of all interest accruing under the Prepetition Credit Agreement from and after the Petition Date.  Furthermore, nothing herein shall be construed as an acknowledgment or stipulation by the Prepetition Secured Lender that its interests in the Prepetition Collateral are adequately protected.

21.    In consideration for (a) the Prepetition Secured Lender's consent to the Debtors' use of Cash Collateral in accordance with the Budget, and (b) the Carve-Out, the Debtors irrevocably waive and shall not assert any surcharge claim against the DIP Lender or the Prepetition Secured Lender, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Lender or the Prepetition Secured Lender upon, the DIP Collateral or the Prepetition Collateral.  In no event shall the DIP Lender or the Prepetition Secured Lender be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral.

22.    In consideration for the loans and other financial accommodations provided

PAC 1118339v.4

by the DIP Lender and the Prepetition Secured Lender pursuant to this Final Order, the Debtors irrevocably waive the right to (a) seek the authority to use the Cash Collateral without the consent of the Prepetition Secured Lender, (b) propose or support any plan of reorganization or liquidation that is not reasonably acceptable to the DIP Lender and the Prepetition Secured Lender, or (c) pursue the sale of any of the Prepetition Collateral pursuant to sections 363 or 365 of the Bankruptcy Code on terms that are not acceptable to the DIP Lender and the Prepetition Secured Lender. The Debtors expressly acknowledge the Prepetition Secured Lender's right to credit bid the Prepetition Obligations, and the DIP Lender's right to credit bid the DIP Obligations, in any sale of all or part of the Prepetition Collateral, whether pursuant to sections 363 or 365 of the Bankruptcy Code or any plan of reorganization or liquidation that may be proposed in the Chapter 11 Cases.

23.    None of the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Priority Claims or the Carve-Out shall be (a) subject or subordinated to, or made *pari passu* with, any lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, or (b) subject or subordinated to, or made *pari passu* with, any other lien or security interest, whether under sections 363 or 364 of the Bankruptcy Code or otherwise. The Adequate Protection Liens granted pursuant to this Final Order shall constitute valid, enforceable and duly perfected security interests and liens upon entry of this Final Order, and the Prepetition Secured Lender shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens. Failure by the Debtors to execute any documentation relating to the Adequate Protection Liens shall in no way affect the validity, enforceability, perfection or priority of such Adequate Protection Liens.

24.    The Prepetition Secured Lender shall be entitled to all of the rights and benefits arising under section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall

21

have no application to the Prepetition Collateral.

25.    The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Lender, the Prepetition Secured Lender, the Debtors, and their respective successors and assigns. The provisions of this Final Order and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any plan of reorganization in these Chapter 11 Cases; (ii) converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; or (iii) dismissing the Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens and security interests granted pursuant to this Final Order shall maintain their priority as provided by this Final Order until all of the DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full and discharged in accordance with the terms of the DIP Credit Agreement and this Final Order.

26.    If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (a) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt by the DIP Lender or the Prepetition Secured Lender, as applicable, of written notice of the effective date of such reversal, modification, vacatur or stay, or (b) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Credit Documents with respect to any DIP Obligations or Adequate Protection Obligations. Notwithstanding any such reversal, modification, vacatur or stay, any use of Cash Collateral or the incurrence of DIP Obligations or Adequate Protection Obligations by the Debtors prior to the actual receipt by the DIP Lender of written notice of the effective date of such reversal, modification, vacatur or stay, shall be governed in all respects by the provisions of this Final Order, and the DIP Lender and the Prepetition Secured Lender shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Final Order and the DIP Credit Documents with respect to all uses of Cash Collateral and the incurrence of the DIP

PAC 1118339v.4

Obligations and Adequate Protection Obligations by the Debtors.

27.    Unless the Court orders otherwise, the automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Lender or the Prepetition Secured Lender to exercise, upon the occurrence and during the continuation of any Event of Default (under the DIP Credit Documents or this Order), all rights and remedies provided in the DIP Credit Documents and to take any or all of the following actions without further order of or application to this Court: (a) terminate the Debtors' use of Cash Collateral upon written notice delivered by hand-delivery, overnight mail, facsimile, or email to counsel for the Debtors; (b) immediately declare all DIP Obligations to be due and payable; (c) immediately terminate the lending commitments under the DIP Credit Agreement; and (d) take any other actions or exercise any other rights or remedies permitted under this Final Order, the DIP Credit Documents or applicable law to effect the repayment of the DIP Obligations; provided, however, that the DIP Lender or the Prepetition Secured Lender, as applicable, shall provide five (5) business days' written notice (by hand-delivery, overnight mail, facsimile or email) to counsel to the Debtors, counsel to the official committee of unsecured creditors (if one is appointed in the Chapter 11 Cases), and counsel to the U.S. Trustee prior to exercising any lien enforcement rights or remedies with respect to the DIP Collateral or the Prepetition Collateral.  The rights and remedies of the DIP Lender and the Prepetition Secured Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender and the Prepetition Secured Lender may have under the DIP Credit Documents, the Prepetition Credit Documents or otherwise.  Upon entry of this Final Order, neither the Debtors nor any other party shall have the right to contest the enforcement of the remedies set forth in this Final Order and the DIP Credit Documents on any basis other than an assertion that no Event of Default has occurred, and, except with respect to such an assertion, neither the Debtors nor any other party shall have the right to enjoin any such enforcement under section 105 of the Bankruptcy Code or otherwise, or to seek any injunctive relief inconsistent with the provisions

23

of this Final Order or the DIP Credit Documents.

28.    The Debtors are hereby authorized, without further order of this Court: (a) to enter into agreements with the DIP Lender providing for any non-material modifications to any DIP Credit Document or the Budget, or for any other modifications to any DIP Credit Document necessary to conform such DIP Credit Document to this Final Order; and (b) to enter into any material modifications or amendments to any DIP Credit Document; provided, however, that the Debtors shall promptly provide notice of any material modification or amendment of such DIP Credit Document to counsel to the official committee of unsecured creditors (if one is appointed in the Chapter 11 Cases) and counsel to the U.S. Trustee, each of which shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment.  If the official committee of unsecured creditors or the U.S. Trustee timely objects to any material modification or amendment to the applicable DIP Credit Document, such modification or amendment shall only be permitted pursuant to an order of this Court.

29.    The stipulations and admissions contained in this Final Order, including, without limitation, in recital paragraphs D(l) through D(7) of this Final Order, shall (a) be binding on the Debtors under all circumstances and (b) be binding upon all other parties in interest unless, and solely to the extent that, (i) no later than the earlier of (A) October 28, 2013 and (B) sixty (60) days after the date of appointment of an official committee of unsecured creditors (if one is appointed in the Chapter 11 Cases), a party in interest with requisite standing has timely filed an adversary proceeding or contested matter in this Court (subject to the limitations set forth in paragraph 18 hereof) challenging the amount, validity or enforceability of the Prepetition Obligations, or the perfection or priority of the Prepetition Secured Lender's liens on and security interests in the Prepetition Collateral, or otherwise asserting any Avoidance Actions or any other claims or causes of action on behalf of the Debtors' estates against the Prepetition Secured Lender or any of its affiliates, agents, attorneys, financial advisors, officers, managers, directors or employees under the Bankruptcy Code or

24

non-bankruptcy law, and (ii) the Court enters a final order in favor of the plaintiff in any such timely filed adversary proceeding or contested matter.  If no such adversary proceeding or contested matter is timely filed in respect of the Prepetition Obligations, (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, re-characterization, defense or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case, (y) the liens on the Prepetition Collateral securing the Prepetition Obligations shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding and perfected first-priority liens not subject to defense, counterclaim, re-characterization, subordination or avoidance, and (z) the Prepetition Obligations and the liens on the Prepetition Collateral granted to secure the Prepetition Obligations shall not be subject to any other or further challenge by any party-in-interest, and all such parties-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or trustee appointed or elected for any of the Debtors' estates).  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained herein shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on all parties-in-interest, except as to any such findings and admissions that were successfully challenged in such adversary proceeding or contested matter.  Notwithstanding the foregoing, if, before the end of the investigation period, these cases convert to Chapter 7 or a Chapter 11 trustee is appointed, such investigation period shall be extended to 75 days after conversion or appointment.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order, any trustee appointed or elected in these cases shall, until the expiration of the periods provided in paragraph 29 for asserting lender claims and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to the investigation period (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of

25

such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations, stipulations and waivers of the Debtors in this Final Order.

30.    In providing the DIP Facility and permitting the use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Final Order, the DIP Credit Documents or the Prepetition Credit Documents, as applicable, neither the DIP Lender nor the Prepetition Secured Lender shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Secured Lender any liability for any claims arising from the prepetition or post-petition activities of the Debtors or any of their affiliates.

31.    Notwithstanding anything to the contrary in the DIP Credit Agreement, or any other DIP Credit Document, the bankruptcy court shall retain jurisdiction over all matters arising from or relating to the interpretation or implementation of this Final Order.

32.    For the avoidance of doubt, in the event that it is determined by the Court that the Prepetition Secured Lender did not maintain valid, perfected and enforceable liens on the Prepetition Collateral, the Court reserves the right to reallocate any payments made to Prepetition Secured Lender and modify any liens and claims granted pursuant to this Final Order, including the grant of adequate protection to the Prepetition Secured Lender.

33.    Notwithstanding anything to the contrary in this Final Order, the DIP Credit Documents and/or the Prepetition Credit Documents, with respect to any of the Debtors' leasehold interests, any of the rights of the DIP Lender and/or the Prepetition Secured Lender to enter upon any landlord's premises shall be limited to such rights (i) as may be ordered by the

Court upon motion and notice of not less than three (3) business days to the applicable landlord, (ii) to which the applicable landlord agrees in writing with the DIP Lender and/or the Prepetition Secured Lender, or (iii) which the DIP Lender and/or Prepetition Secured Lender may have under applicable non-bankruptcy law.

Dated: September 4, 2013

_____
Mary F. Walrath
United States Bankruptcy Judge

27