15.3    Breaches of Other Obligations.

The failure of any Loan Party to perform, keep or observe (after any applicable notice and cure period) any of the covenants, conditions, promises, agreements or obligations of such Loan Party under any agreement (other than a Loan Document) with any Person if such failure might have a Material Adverse Effect on such Loan Party.

15.4    Breach of Representations and Warranties.

The making or furnishing by any Loan Party to Lender of any representation, warranty, certificate, schedule, report or other written communication within or in connection with this Agreement or the other Loan Documents, which is untrue or misleading in any material respect as of the date made.

15.5    Loss of Collateral.

The loss, theft, damage or destruction of any of the Collateral in an amount in excess of $100,000 in the aggregate for all such events during any Fiscal Year as determined by Lender in its sole discretion determined in good faith, or (except as permitted hereby) sale, lease or furnishing under a contract of service of, any of the Collateral.

15.6    Levy, Seizure or Attachment.

The making or any attempt by any Person to make any levy, seizure or attachment upon any of the Collateral.

15.7    Bankruptcy Defaults.

The occurrence of any of the following in any Chapter 11 Case:

(a)    Except for actions required by either Order or any Loan Document, any Borrower shall take any material action in the Chapter 11 Cases that is adverse to the Lender or its interests in the prepetition Collateral;

(b)    failure by the Borrowers to file with the Bankruptcy Court the Bid Procedures Motion by August 12, 2013;

(c)    failure by the Borrowers to obtain an order of the Bankruptcy Court, in form and substance satisfactory to the Lender, approving the Bid Procedures Motion by September 15, 2013;

(d)    failure by the Borrowers to obtain an order of the Bankruptcy Court, in form and substance reasonably acceptable to the Lender, approving the sale or other disposition of all or substantially all of the Loan Parties' assets by October 31, 2013;

(e)    failure by the Borrowers to consummate the sale or other disposition of all or substantially all of the Debtors' assets on or before November 15, 2013;

(f)    any of the Chapter 11 Cases are dismissed or converted to a chapter 7 case, or a chapter 11 trustee, a responsible officer, or an examiner with enlarged powers (beyond those set forth in sections 1106(a) and (b) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code relating to the operation of the Borrowers' business is appointed in any of the Chapter 11 Cases;

(g)     the Bankruptcy Court enters an order granting relief from the automatic stay to the holder or holders of any security interest to permit an exercise of remedies with respect to any of the Debtors' assets with a combined fair market value in excess of $100,000 (unless the Lender has consented to such relief or such relief consists solely of insurance proceeds payable to such creditor);

(h)     an order is entered reversing, amending, supplementing, staying, vacating or otherwise modifying the Orders without the consent of the Lender;

(i)     the Borrowers create, incur or suffer to exist any post-petition liens or security interests other than: (i) those granted or authorized pursuant to the Orders, and (ii) any other liens or security interests that the Borrowers are permitted to create, incur or suffer to exist under the Existing Credit Agreement or under the Loan Documents;

(j)     the filing by the Borrowers of any motion, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Existing Obligations or asserting any claim or cause of action against and/or with respect to the Existing Obligations, the liens securing the Existing Obligations, or the Lender or any of its affiliates, agents, attorneys, financial advisors, officers, managers, directors or employees (or if the Borrowers support any such motion, application or adversary proceeding commenced by any third party);

(k)     the Bankruptcy Court enters an order terminating the Borrowers' exclusive period to file a plan of reorganization;

(l)     the Borrowers file, or support the filing by a third party of, any plan of reorganization or liquidation that is not acceptable to the Lender (other than a plan that contains a provision for the payment in full in cash of (A) all Obligations (other than inchoate Obligations, other Obligations that by their terms survive termination of this Agreement and Obligations in respect of outstanding Letters of Credit that have been Cash Collateralized) under the Loan Documents and (B) all Existing Obligations (other than inchoate Obligations, other Obligations that by their terms survive termination of the Existing Credit Agreement and Obligations in respect of outstanding Letters of Credit that have been Cash Collateralized) under the Existing Credit Agreement on or before the effective date of such plan upon entry thereof);

(m)     any misrepresentation of a material fact (it being agreed the projections, forecasts or budgets, including, without limitation, the DIP Budget, do not constitute facts) made after the Petition Date by the Borrowers to the Lender about (i) the financial condition of the Borrowers, (ii) the nature, extent or location of any Collateral, or (iii) the disposition or use of any Collateral, including cash Collateral; or

(n)     without the consent of the Lender, the Borrowers file, or support the filing of, a motion seeking the authority for the Borrowers to abandon any of the Collateral pursuant to section 554 of the Bankruptcy Code or otherwise.

15.8    Criminal Proceedings.

The institution in any court of a criminal proceeding against any Loan Party which would have a Material Adverse Effect on such Loan Party.

61086372_4

15.9    Change of Control.

The failure of SNHC to own and have voting control of at least one hundred percent (100%) of the issued and outstanding voting equity interest of any Borrower.

SECTION 16    REMEDIES UPON AN EVENT OF DEFAULT.

16.1    Acceleration

Upon the occurrence and during the continuance of an Event of Default described in Section 15.7 hereof, subject to the Orders, all of the Obligations shall immediately and automatically become due and payable, without notice of any kind. Upon the occurrence of any other Event of Default, subject to the Orders, the Obligations may, at the option of Lender, in whole or in part at Lender's sole discretion, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

16.2    Other Remedies.

Upon the occurrence and during the continuance of an Event of Default, Lender may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code and any other applicable law in addition to, and not in lieu of, any rights and remedies expressly granted in this Agreement or in any of the other Loan Documents and all of Lender's rights and remedies shall be cumulative and non-exclusive to the extent permitted by law. In particular, but not by way of limitation of the foregoing, Lender may, without notice, demand or legal process of any kind, take possession of any or all of the Collateral (in addition to Collateral of which it already has possession), wherever it may be found, and, subject to compliance with the terms of any lease and any landlord access agreement, for that purpose may pursue the same wherever it may be found, and, subject to compliance with the terms of any applicable lease and any landlord access agreement, may enter onto any of Borrowers' premises where any of the Collateral may be, and search for, take possession of, remove, keep and store any of the Collateral until the same shall be sold or otherwise disposed of, and Lender shall have the right to store the same at any of Borrowers' premises without cost to Lender. At Lender's request, each Borrower shall, at Borrowers' expense, assemble the Collateral and make it available to Lender at one or more places to be designated by Lender and reasonably convenient to Lender and Borrowers. Borrowers recognize that if any Borrower fails to perform, observe or discharge any of its Obligations under this Agreement or the other Loan Documents, no remedy at law will provide adequate relief to Lender, and agrees that Lender shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving actual damages. Any notification of intended disposition of any of the Collateral required by law will be deemed to be a reasonable authenticated notification of disposition if given at least ten (10) days prior to such disposition and such notice shall (i) describe Lender and Borrowers, (ii) describe the Collateral that is the subject of the intended disposition, (iii) state the method of the intended disposition, (iv) state that Borrowers are entitled to an accounting of the Obligations and state the charge, if any, for an accounting and (v) state the time and place of any public disposition or the time after which any private sale is to be made. Lender may disclaim any warranties that might arise in connection with the sale, lease or other disposition of the Collateral and has no obligation to provide any warranties at such time. Any Proceeds of any disposition by Lender of any of the Collateral may be applied by Lender, subject to the Carve-Out, except as otherwise limited by this Agreement, to the payment of expenses in connection with the Collateral, including, without limitation, legal expenses and reasonable attorneys' fees, and any balance of such Proceeds and all other payments received by Lender during the continuance of an Event of Default may be applied by Lender toward the payment of such of the Obligations, and in such order of application, as Lender may from time to time elect.

SECTION 17    CONDITIONS PRECEDENT.

17.1    <u>Conditions to Initial Loans.</u>

The obligation of Lender to fund the Loans and to issue or cause to be issued the initial Letter of Credit, is subject to the satisfaction or waiver of the following conditions precedent (and the date on which all such conditions precedent have been satisfied and the initial Loans are advanced by Lender is called the **"Closing Date"**):

(a)    Lender shall have received each of the agreements, reports, approvals, consents, certificates and other documents set forth on the closing document list attached hereto as <u>Schedule 17.1</u> (the **"Closing Document List"**) in each case in form and substance satisfactory to Lender;

(b)    Lender shall have received payment in full of all fees and expenses payable to it by Borrowers or any other Person pursuant to this Agreement or the Interim Order, on or before disbursement of the initial Loans hereunder; and

(c)    The Interim Order shall have been entered by the Bankruptcy Court.

17.2    <u>Conditions to All Loans.</u>

Lender shall not be obligated to fund any Loans or arrange for the issuance of any Letters of Credit, unless the following conditions are satisfied:

(a)    No Event of Default shall exist at the time of or result from such funding, issuance or grant;

(b)    The representations and warranties of each Loan Party in this Agreement and the other Loan Documents shall be true and correct as of the date, and after giving effect to such funding or issuance (except for representations and warranties that expressly relate to an earlier date which must be true and correct as of such earlier date); and

(c)    No event shall have occurred or circumstances exist that has or could reasonably be expected to have a Material Adverse Effect.

Each request (or deemed request) by Borrowers for funding of a Loan or issuance of a Letter of Credit shall constitute a representation by Borrowers that the foregoing conditions in this <u>Section 17.2</u> are satisfied on the date of such request and on the date of such funding, issuance or grant.

SECTION 18    MISCELLANEOUS.

18.1    <u>Assignments; Participations.</u>

18.1.1    <u>Assignments.</u>    (a) Lender may at any time assign to one or more entities that (i) is an accredited investor as such term is used in Regulation D made under the Securities Act of 1933, as amended <u>and</u> (ii) except following the occurrence and during the continuation of an Event of Default, is not a direct competitor of any Loan Party (any such Person meeting such criteria, an **"Assignee"**) all or any portion of its Loans and Revolving Loan Commitment, without consent of Borrowers.

(b)    From and after the date on which the conditions described above have been met, (i) such Assignee shall be deemed automatically to have become a party hereto and, to the extent that rights and

-37-

obligations hereunder have been assigned to such Assignee pursuant to an assignment agreement between Lender and the Assignee, shall have the rights and obligations of Lender hereunder and (ii) Lender, to the extent that rights and obligations hereunder have been assigned by it pursuant to such Assignment Agreement, shall be released from its rights (other than its indemnification rights) and obligations hereunder.  Upon the request of the Assignee (and, as applicable, Lender) pursuant to an effective assignment agreement, Borrowers shall execute and deliver to the Assignee (and, as applicable, Lender) a note in the principal amount of the Assignee's pro rata share of the Revolving Commitment (and, as applicable, a note in the principal amount of the pro rata share of the Revolving Commitment retained by Lender plus the principal amount of the Term Loan retained by Lender).  Each such note shall be dated the effective date of such assignment.  Upon receipt by Lender of such note, Lender shall return to Borrower any prior note held by it.

(c)    Lender may at any time pledge or assign a security interest in all or any portion of its rights under this Agreement to secure obligations of Lender, including any pledge or assignment to secure obligations to a Federal Reserve Bank, and this Section shall not apply to any such pledge or assignment of a security interest; provided that no such pledge or assignment of a security interest shall release Lender from any of its obligations hereunder or under any other Loan Document or substitute any such pledgee or assignee for Lender as a party hereto.

18.1.2    Participations.  Lender may at any time sell to one or more Persons participating interests in its Loans, Revolving Loan Commitment or other interests hereunder (any such Person, a "**Participant**").  In the event of a sale by Lender of a participating interest to a Participant, (a) Lender's obligations hereunder shall remain unchanged for all purposes, (b) Borrowers shall continue to deal solely and directly with Lender in connection with Lender's rights and obligations hereunder and (c) all amounts payable by Borrowers shall be determined as if Lender had not sold such participation and shall be paid directly to Lender.  Borrowers agree that if amounts outstanding under this Agreement are due and payable (as a result of acceleration or otherwise), each Participant shall be deemed to have the right of set-off in respect of its participating interest in amounts owing under this Agreement and with respect to any Letter of Credit to the same extent as if the amount of its participating interest were owing directly to it as Lender under this Agreement; provided that such right of set-off shall be subject to the obligation of each Participant to share with Lender, and Lender agrees to share with each Participant, on a pro rata basis.  Borrowers also agree that each Participant shall be entitled to the benefits of Section 4.2 or 4.4 as if it were Lender (provided that on the date of the participation no Participant shall be entitled to any greater compensation pursuant to Section 4.2 or 4.4 than would have been paid to Lender on such date if no participation had been sold.

18.2    Customer Identification - USA Patriot Act Notice.

Lender (for itself and not on behalf of any other party) hereby notifies the Loan Parties that, pursuant to the requirements of the USA Patriot Act, Title III of Pub. L. 107-56, signed into law October 26, 2001 (the "USA Patriot Act"), it is required to obtain, verify and record information that identifies the Loan Parties, which information includes the name and address of the Loan Parties and other information that will allow Lender, as applicable, to identify the Loan Parties in accordance with the Act.

18.3    Indemnification by Borrowers;

IN CONSIDERATION OF THE EXECUTION AND DELIVERY OF THIS AGREEMENT BY LENDER AND THE AGREEMENT TO EXTEND THE COMMITMENT PROVIDED HEREUNDER, EACH BORROWER (TO THE EXTENT PROVIDED OR AUTHORIZED IN THE ORDERS) HEREBY AGREES TO INDEMNIFY, EXONERATE AND HOLD LENDER AND

-38-

EACH OF THE OFFICERS, DIRECTORS, EMPLOYEES, AFFILIATES AND AGENTS OF LENDER (EACH A "LENDER PARTY") FREE AND HARMLESS FROM AND AGAINST ANY AND ALL ACTIONS, CAUSES OF ACTION, SUITS, LOSSES, LIABILITIES, DAMAGES AND EXPENSES, INCLUDING ATTORNEY COSTS (COLLECTIVELY, THE "INDEMNIFIED LIABILITIES"), INCURRED BY LENDER PARTIES OR ANY OF THEM AS A RESULT OF, OR ARISING OUT OF, OR RELATING TO (A) [RESERVED], (B) THE USE, HANDLING, RELEASE, EMISSION, DISCHARGE, TRANSPORTATION, STORAGE, TREATMENT OR DISPOSAL OF ANY HAZARDOUS MATERIAL AT ANY PROPERTY OWNED OR LEASED BY ANY LOAN PARTY, (C) ANY VIOLATION OF ANY ENVIRONMENTAL LAWS WITH RESPECT TO CONDITIONS AT ANY PROPERTY OWNED OR LEASED BY ANY LOAN PARTY OR THE OPERATIONS CONDUCTED THEREON, (D) THE INVESTIGATION, CLEANUP OR REMEDIATION OF OFFSITE LOCATIONS AT WHICH ANY LOAN PARTY OR THEIR RESPECTIVE PREDECESSORS ARE ALLEGED TO HAVE DIRECTLY OR INDIRECTLY DISPOSED OF HAZARDOUS MATERIALS OR (E) THE EXECUTION, DELIVERY, PERFORMANCE OR ENFORCEMENT OF THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT BY ANY OF LENDER PARTIES, EXCEPT FOR ANY SUCH INDEMNIFIED LIABILITIES ARISING ON ACCOUNT OF THE APPLICABLE LENDER PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL, NONAPPEALABLE JUDGMENT BY A COURT OF COMPETENT JURISDICTION.  IF AND TO THE EXTENT THAT THE FOREGOING UNDERTAKING MAY BE UNENFORCEABLE FOR ANY REASON, EACH BORROWER HEREBY AGREES TO MAKE THE MAXIMUM CONTRIBUTION TO THE PAYMENT AND SATISFACTION OF EACH OF THE INDEMNIFIED LIABILITIES WHICH IS PERMISSIBLE UNDER APPLICABLE LAW.  ALL OBLIGATIONS PROVIDED FOR IN THIS <u>SECTION 18.3</u> SHALL SURVIVE REPAYMENT OF THE LOANS, CANCELLATION OF THE NOTES, EXPIRATION OR TERMINATION OF THE LETTERS OF CREDIT, ANY FORECLOSURE UNDER, OR ANY MODIFICATION, RELEASE OR DISCHARGE OF, ANY OR ALL OF THE COLLATERAL DOCUMENTS AND TERMINATION OF THIS AGREEMENT.

    18.4    <u>Notice.</u>

All written notices and other written communications with respect to this Agreement shall be sent by ordinary, certified or overnight mail, by telecopy or delivered in person, and in the case of Lender shall be sent to it at 120 South LaSalle Street, Suite 200, Chicago, Illinois 60603, attention: Rick Pierce, facsimile number: (312) 564-6888, and in the case of Borrowers shall be sent to Borrowers at their principal place of business set forth on <u>Schedule 11.2</u> hereto or as otherwise directed by Borrower Representative in writing.  All notices shall be deemed received upon actual receipt thereof or refusal of delivery.

    18.5    <u>Modification and Benefit of Agreement.</u>

This Agreement and the other Loan Documents may not be modified, altered or amended except by an agreement in writing signed by Borrower or such other Person who is a party to such other Loan Document and Lender.

    18.6    <u>Headings of Subdivisions.</u>

The headings of subdivisions in this Agreement are for convenience of reference only, and shall not govern the interpretation of any of the provisions of this Agreement.

61086372_4

18.7    Power of Attorney.

Each Borrower acknowledges and agrees that its appointment of Lender as its attorney and agent-in-fact for the purposes specified in this Agreement is an appointment coupled with an interest and shall be irrevocable until all of the Obligations (other than contingent indemnity and reimbursement Obligations for which no claim has been made, other Obligations that by their terms survive termination of this Agreement and obligations in respect of outstanding Letters of Credit that have been Cash Collateralized) are satisfied and paid in full and this Agreement is terminated.

18.8    Confidentiality.

Lender hereby agrees to use commercially reasonable efforts to assure that any and all information relating to any Borrower which is (i) furnished by any Borrower to Lender (or to any Affiliate of Lender); and (ii) non-public, confidential or proprietary in nature, shall be kept confidential by Lender or such Affiliate in accordance with applicable law; provided, however, that such information and other credit information relating to any Borrower may be distributed by Lender or such Affiliate to Lender's or such Affiliate's directors, managers, officers, employees, attorneys, Affiliates, assignees, participants, auditors, agents and regulators, and upon the order of a court or other governmental agency having jurisdiction over Lender or such Affiliate, to any other party.  In addition, such information and other credit information may be distributed by Lender to potential participants or assignees of any portion of the Obligations, provided, that such potential participant or assignee agrees in writing to follow the confidentiality requirements set forth herein.  Each Borrower and Lender further agree that this provision shall survive the termination of this Agreement.   Notwithstanding the foregoing, Borrowers hereby consent to Lender publishing a tombstone or similar advertising material relating to the financing transaction contemplated by this Agreement.

18.9    Counterparts.

This Agreement, any of the other Loan Documents, and any amendments, waivers, consents or supplements may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which, when so executed and delivered, shall be deemed an original, but all of which counterparts together shall constitute but one agreement.

18.10    Electronic Submissions.

Upon not less than thirty (30) days' prior written notice (the "**Approved Electronic Form Notice**"), Lender may permit or require that any of the documents, certificates, forms, deliveries or other communications, authorized, required or contemplated by this Agreement or the other Loan Documents, be submitted to Lender in Approved Electronic Form (as hereafter defined), subject to any reasonable terms, conditions and requirements in the applicable Approved Electronic Forms Notice.  For purposes hereof, "**Electronic Form**" means e-mail, e-mail attachments, data submitted on web-based forms or any other communication method that delivers machine readable data or information to Lender, and "**Approved Electronic Form**" means an Electronic Form that has been approved in writing by Lender (which approval has not been revoked or modified by Lender) and sent to Borrower in an Approved Electronic Form Notice.  Except as otherwise specifically provided in the applicable Approved Electronic Form Notice, any submissions made in an applicable Approved Electronic Form shall have the same force and effect that the same submissions would have had if they had been submitted in any other applicable form authorized, required or contemplated by this Agreement or the other Loan Documents.

18.11    Waiver of Jury Trial; Other Waivers.

(a)    **EACH BORROWER AND LENDER EACH HEREBY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING WHICH PERTAINS DIRECTLY OR INDIRECTLY TO THIS AGREEMENT, ANY OF THE OTHER LOAN DOCUMENTS, THE OBLIGATIONS, THE COLLATERAL, ANY ALLEGED TORTIOUS CONDUCT BY ANY BORROWER OR LENDER OR WHICH, IN ANY WAY, DIRECTLY OR INDIRECTLY, ARISES OUT OF OR RELATES TO THE RELATIONSHIP BETWEEN BORROWER AND LENDER. IN NO EVENT SHALL LENDER BE LIABLE FOR LOST PROFITS OR OTHER SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES.**

(b)    Each Borrower hereby waives, to the maximum extent permitted by law, demand, presentment, protest and notice of nonpayment, and further waives the benefit of all valuation, appraisal and exemption laws.

(c)    Each Borrower hereby waives, to the maximum extent permitted by law, the benefit of any law that would otherwise restrict or limit Lender or any Affiliate of Lender in the exercise of its right, which is hereby acknowledged and agreed to, to set-off against the Obligations, without notice at any time hereafter, any indebtedness, matured or unmatured, owing by Lender or such Affiliate of Lender to any Borrower, including, without limitation any Deposit Account at Lender or such Affiliate.

(d)    **EACH BORROWER HEREBY WAIVES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ALL RIGHTS TO NOTICE AND HEARING OF ANY KIND PRIOR TO THE EXERCISE BY LENDER OF ITS RIGHTS TO REPOSSESS THE COLLATERAL OF BORROWER WITHOUT JUDICIAL PROCESS OR TO REPLEVY, ATTACH OR LEVY UPON SUCH COLLATERAL, PROVIDED THAT IN THE EVENT THAT LENDER SEEKS TO ENFORCE ITS RIGHTS HEREUNDER BY JUDICIAL PROCESS OR SELF HELP, LENDER SHALL PROVIDE BORROWERS WITH SUCH NOTICES AS ARE REQUIRED BY LAW.**

Lender's failure, at any time or times hereafter, to require strict performance by any Borrower of any provision of this Agreement or any of the other Loan Documents shall not waive, affect or diminish any right of Lender thereafter to demand strict compliance and performance therewith. Any suspension or waiver by Lender of an Event of Default under this Agreement or any default under any of the other Loan Documents shall not suspend, waive or affect any other Event of Default under this Agreement or any other default under any of the other Loan Documents, whether the same is prior or subsequent thereto and whether of the same or of a different kind or character. No delay on the part of Lender in the exercise of any right or remedy under this Agreement or any other loan Document shall preclude other or further exercise thereof or the exercise of any right or remedy. None of the undertakings, agreements, warranties, covenants and representations of any Borrower contained in this Agreement or any of the other Loan Documents and no Event of Default under this Agreement or default under any of the other Loan Documents shall be deemed to have been suspended or waived by Lender unless such suspension or waiver is in writing, signed by a duly authorized officer of Lender and directed to Borrowers specifying such suspension or waiver.

18.12    Choice of Governing Laws; Construction; Forum Selection.

This Agreement and the other Loan Documents are submitted by Borrowers to Lender for Lender's acceptance or rejection at Lender's principal place of business as an offer by Borrowers to borrow monies from Lender now and from time to time hereafter, and shall not be binding upon Lender or become effective until accepted by Lender, in writing, at said place of business. If so accepted by

-41-

Lender, this Agreement and the other Loan Documents shall be deemed to have been made at said place of business. **EXCEPT TO THE EXTENT SUPERCEDED BY THE BANKRUPTCY CODE, THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED AND CONTROLLED BY THE INTERNAL LAWS OF THE STATE OF ILLINOIS AS TO INTERPRETATION, ENFORCEMENT, VALIDITY, CONSTRUCTION, EFFECT, AND IN ALL OTHER RESPECTS, INCLUDING, WITHOUT LIMITATION, THE LEGALITY OF THE INTEREST RATE AND OTHER CHARGES, BUT EXCLUDING PERFECTION OF THE SECURITY INTERESTS IN COLLATERAL LOCATED OUTSIDE OF THE STATE OF ILLINOIS, WHICH SHALL BE GOVERNED AND CONTROLLED BY THE LAWS OF THE RELEVANT JURISDICTION IN WHICH SUCH COLLATERAL IS LOCATED.** If any provision of this Agreement shall be held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or remaining provisions of this Agreement.

To induce Lender to accept this Agreement, Borrowers irrevocably agree that, subject to Lender's sole and absolute election, **ALL ACTIONS OR PROCEEDINGS IN ANY WAY, MANNER OR RESPECT, ARISING OUT OF OR FROM OR RELATED TO THIS AGREEMENT, THE OTHER LOAN DOCUMENTS OR THE COLLATERAL SHALL BE LITIGATED IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE OR, IF SUCH COURT NO LONGER HAS JURSIDICTION, COURTS HAVING SITUS WITHIN THE CITY OF CHICAGO, STATE OF ILLINOIS. BORROWERS HEREBY WAIVE PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREE THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON BORROWERS BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO BORROWERS AT THE ADDRESS SET FORTH FOR NOTICE IN THIS AGREEMENT AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED. BORROWERS HEREBY WAIVE ANY RIGHT THEY MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT AGAINST ANY BORROWER BY LENDER IN ACCORDANCE WITH THIS SECTION.**

### SECTION 19    NONLIABILITY OF LENDER

The relationship between Borrowers on the one hand and Lender on the other hand shall be solely that of borrower and lender. Lender has no fiduciary relationship with or duty to any Loan Party arising out of or in connection with this Agreement or any of the other Loan Documents, and the relationship between the Loan Parties, on the one hand, and Lender, on the other hand, in connection herewith or therewith is solely that of debtor and creditor. Lender undertakes no responsibility to any Loan Party to review or inform any Loan Party of any matter in connection with any phase of any Loan Party's business or operations. Borrowers agree, on behalf of themselves and each other Loan Party, that Lender shall have no liability to any Loan Party (whether sounding in tort, contract or otherwise) for losses suffered by any Loan Party in connection with, arising out of, or in any way related to the transactions contemplated and the relationship established by the Loan Documents, or any act, omission or event occurring in connection therewith, unless it is determined in a final non-appealable judgment by a court of competent jurisdiction that such losses resulted from the gross negligence or willful misconduct of the party from which recovery is sought. **NO LENDER PARTY SHALL BE LIABLE FOR ANY DAMAGES ARISING FROM THE USE BY OTHERS OF ANY INFORMATION OR OTHER MATERIALS OBTAINED THROUGH INTRALINKS OR OTHER SIMILAR INFORMATION TRANSMISSION SYSTEMS IN CONNECTION WITH THIS AGREEMENT, NOR SHALL ANY LENDER PARTY HAVE ANY LIABILITY WITH RESPECT TO, AND BORROWERS ON BEHALF OF THEMSELVES AND EACH OTHER LOAN PARTY, HEREBY WAIVE, RELEASE AND AGREE NOT TO SUE FOR ANY SPECIAL, PUNITIVE, EXEMPLARY,**

-42-

**INDIRECT OR CONSEQUENTIAL DAMAGES RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR ARISING OUT OF THEIR ACTIVITIES IN CONNECTION HEREWITH OR THEREWITH (WHETHER BEFORE OR AFTER THE CLOSING DATE).** Borrowers acknowledge that they have been advised by counsel in the negotiation, execution and delivery of this Agreement and the other Loan Documents to which it is a party. No joint venture is created hereby or by the other Loan Documents or otherwise exists by virtue of the transactions contemplated hereby among the Loan Parties and Lender.

SECTION 20    BORROWER REPRESENTATIVE

(a)    Each Borrower hereby irrevocably appoints and constitutes the Borrower Representative as its agent to request and receive the proceeds of advances in respect of the Loans (and to otherwise act on behalf of such Borrower pursuant to this Agreement and the other Loan Documents) from Lender in the name or on behalf of each such Borrower. Lender may disburse such proceeds to the bank account of Borrower Representative (or any one or more of the Borrowers) without notice to any other Borrower or any other Person.

(b)    Each Borrower hereby irrevocably appoints and constitutes the Borrower Representative as its agent to (i) receive statements of account and all other notices from Lender with respect to the Obligations or otherwise under or in connection with this Agreement and the other Loan Documents, (ii) execute and deliver Notices of Borrowing, Compliance Certificates and all other notices, certificates and documents to be executed and/or delivered by any Borrower under this Agreement or the other Loan Documents; and (iii) otherwise act on behalf of such Borrower pursuant to this Agreement and the other Loan Documents.

(c)    The authorizations contained in this <u>Section 20</u> are coupled with an interest and shall be irrevocable, and Lender may rely on any notice, request, information supplied by the Borrower Representative, every document executed by the Borrower Representative, every agreement made by the Borrower Representative or other action taken by the Borrower Representative in respect of any Borrower as if the same were supplied, made or taken by such Borrower. Without limiting the generality of the foregoing, the failure of one or more Borrowers to join in the execution of any writing in connection herewith shall not relieve any Borrower from obligations in respect of such writing.

(d)    No purported termination of the appointment of Borrower Representative as agent shall be effective without the prior written consent of Lender.

SECTION 21    JOINT AND SEVERAL LIABILITY

(a)    Notwithstanding anything to the contrary contained herein, all Obligations of each Borrower hereunder shall be joint and several obligations of Borrowers.

(b)    Notwithstanding any provisions of this Agreement to the contrary, it is intended that the joint and several nature of the Obligations of Borrowers and the liens and security interests granted by Borrowers to secure the Obligations, not constitute a **"Fraudulent Conveyance"** (as defined below). Consequently, Lender and Borrowers agree that if the Obligations of a Borrower, or any liens or security interests granted by such Borrower securing the Obligations would, but for the application of this sentence, constitute a Fraudulent Conveyance, the Obligations of such Borrower and the liens and security interests securing such Obligations shall be valid and enforceable only to the maximum extent that would not cause such Obligations or such lien or security interest to constitute a Fraudulent Conveyance, and the Obligations of such Borrower and this Agreement shall automatically be deemed to have been amended accordingly. For purposes hereof, **"Fraudulent Conveyance"** means a fraudulent

-43-

conveyance under Section 548 of the Bankruptcy Code or a fraudulent conveyance or fraudulent transfer under the applicable provisions of any fraudulent conveyance or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time.

(c)    Each Borrower assumes responsibility for keeping itself informed of the financial condition of the each other Borrower, and any and all endorsers and/or guarantors of any instrument or document evidencing all or any part of such other Borrower's Obligations and of all other circumstances bearing upon the risk of nonpayment by such other Borrowers of their Obligations and each Borrower agrees that Lender shall not have any duty to advise such Borrower of information known to Lender regarding such condition or any such circumstances or to undertake any investigation not a part of its regular business routine. If Lender, in its sole discretion, undertakes at any time or from time to time to provide any such information to a Borrower, Lender shall not be under any obligation to update any such information or to provide any such information to such Borrower on any subsequent occasion.

(d)    Lender is hereby authorized, without notice or demand and without affecting the liability of a Borrower hereunder, to, at any time and from time to time, (i) renew, extend, accelerate or otherwise change the time for payment of, or other terms relating to another Borrower's Obligations or otherwise modify, amend or change the terms of any promissory note or other agreement, document or instrument now or hereafter executed by a Borrower and delivered to Lender; (ii) accept partial payments on a Borrower's Obligations; (iii) take and hold security or collateral for the payment of another Borrower's Obligations hereunder or for the payment of any guaranties of another Borrower's Obligations or other liabilities of another Borrower and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale thereof as Lender, in its sole discretion, may determine; and (v) settle, release, compromise, collect or otherwise liquidate a Borrower's Obligations and any security or collateral therefor in any manner, without affecting or impairing the obligations of the other Borrowers. Lender shall have the exclusive right to determine the time and manner of application of any payments or credits, whether received from a Borrower or any other source, and such determination shall be binding on such Borrower. All such payments and credits may be applied, reversed and reapplied, in whole or in part, to any of a Borrower's Obligations as Lender shall determine in its sole discretion without affecting the validity or enforceability of the Obligations of the other Borrowers.

(e)    Each Borrower hereby agrees that, except as hereinafter provided, its obligations hereunder shall be unconditional, irrespective of (i) the absence of any attempt to collect a Borrower's Obligations from any Borrower or any guarantor or other action to enforce the same; (ii) the waiver or consent by Lender with respect to any provision of any instrument evidencing Borrowers' Obligations, or any part thereof, or any other agreement heretofore, now or hereafter executed by a Borrower and delivered to Lender; (iii) failure by Lender to take any steps to perfect and maintain its security interest in, or to preserve its rights to, any security or collateral for Borrowers' Obligations; or (iv) any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor (other than the payment in full of the Obligations, other than contingent indemnification and reimbursement Obligations for which no claim has been made, Obligations that by their terms survive termination of this Agreement and Obligations in respect of outstanding Letters of Credit that are Cash Collateralized).

61086372_4

(f)    Until such time as all Obligations (other than contingent indemnification and reimbursement Obligations for which no claim has been made, Obligations that by their terms survive termination of this Agreement and Obligations in respect of outstanding Letters of Credit that are Cash Collateralized) have been paid in full and this Agreement is terminated, no payment made by or for the account of a Borrower including, without limitations, (i) a payment made by such Borrower on behalf of another Borrower's Obligations or (ii) a payment made by any other Person under any guaranty, shall entitle such Borrower, by subrogation or otherwise, to any payment from such other Borrower or Person or from or out of such other Borrower's or Person's property and such Borrower shall not exercise any right or remedy against such other Borrower or Person or any property of such other Borrower or Person by reason of any performance of such Borrower of its joint and several obligations hereunder.

61086372_4

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first written above.

THE SECURITY NETWORK HOLDINGS CORP.

THE PRIVATEBANK AND TRUST COMPANY

By _____
Title _President_

By _____
Title _____

IPC INTERNATIONAL CORPORATION

By _____
Title _President_

Signature Page to Post Petition Loan and Security Agreement

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first written above.

THE SECURITY NETWORK HOLDINGS CORP.

By _____

Title _____


THE PRIVATEBANK AND TRUST COMPANY

By _____

Title _Managing Director_


IPC INTERNATIONAL CORPORATION

By _____

Title _____


Signature Page to Post Petition Loan and Security Agreement

EXHIBIT I

## Security Network Holdings
DIP Budget Summary
Weekly Cash Flow Forecast - For Weeks Ended 8/8/13 through 11/1/13
(000s)

8/9/2013 1:02 PM

**DIP Order Budget**

| Period Ending | Cash Flow 8/9/13 | Cash Flow 8/16/13 | Cash Flow 8/23/13 | Cash Flow 8/30/13 | Cash Flow 9/6/13 | Cash Flow 9/13/13 | Cash Flow 9/20/13 | Cash Flow 9/27/13 | Cash Flow 10/4/13 | Cash Flow 10/11/13 | Cash Flow 10/18/13 | Cash Flow 10/25/13 | Cash Flow 11/1/13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Revolver | 6,687.8 | 8,011.6 | 8,921.2 | 7,793.9 | 7,332.4 | 7,822.9 | 8,963.3 | 7,762.7 | 7,768.3 | 7,745.3 | 9,014.3 | 7,300.6 | 8,424.2 | 6,687.8 |
| Cash Inflow | 1,026.1 | 1,999.7 | 3,615.3 | 3,177.0 | 1,921.6 | 1,569.7 | 3,479.3 | 2,811.9 | 2,460.4 | 1,405.9 | 3,303.5 | 2,987.6 | 3,163.3 | 32,051.1 |
| Total Cash Receipts | 1,026.1 | 1,999.7 | 3,615.3 | 3,177.0 | 1,921.6 | 1,569.7 | 3,479.3 | 2,811.9 | 2,460.4 | 1,405.9 | 3,303.5 | 2,987.6 | 3,163.3 | 32,051.1 |
| Cash Outflow (1) | 1,847.2 | 304.5 | 791.3 | 2,530.0 | 2,123.6 | 2,730.1 | 1,925.5 | 2,775.2 | 2,240.0 | 2,674.9 | 1,589.9 | 3,821.1 | 2,175.6 | 27,528.8 |
| Total Operating Cash Outflow | 1,847.2 | 304.5 | 791.3 | 2,530.0 | 2,123.6 | 2,730.1 | 1,925.5 | 2,775.2 | 2,240.0 | 2,674.9 | 1,589.9 | 3,821.1 | 2,175.6 | 27,528.8 |
| Net Cash From Operations | (821.1) | 1,695.1 | 2,824.0 | 647.0 | (202.0) | (1,130.4) | 1,553.8 | 36.6 | 220.4 | (1,269.0) | 1,713.7 | (833.5) | 987.8 | 5,422.3 |
| **Non-Operating Cash Expenditures (1)** | | | | | | | | | | | | | | |
| Adequate Protection/ Pre-petition Taxes (2) | 246.0 | 2,574.2 | 1,846.8 | 185.4 | 96.2 | | 63.2 | 32.2 | | | | | 95.7 | 4,840.3 |
| Restructuring Expenses | 250.0 | 30.0 | 50.0 | | | | 375.0 | | | | 355.0 | | | 1,060.0 |
| Deferred Professional Fees | | | | | | | (75.0) | | | | (65.0) | | | (140.0) |
| Pre-Petition Interest | 6.7 | | | | 17.9 | | | | | | | | | 24.6 |
| Post-Petition Interest | | | | | 49.3 | | | | 82.4 | | | | 67.5 | 199.3 |
| Pre-Petition Vehicle Leases | | | | | 33.3 | | | | | | | | | 33.3 |
| Post-Petition Vehicle Leases | | | | | 91.7 | | | | 125.0 | | | | 125.0 | 341.7 |
| Non-operating expenses subtotal | 502.7 | 2,604.7 | 1,896.8 | 185.4 | 288.5 | | 363.2 | 32.2 | 207.4 | | 290.0 | | 288.2 | 6,469.2 |
| Change in Revolver | (1,323.9) | (909.5) | 1,127.2 | 461.6 | (490.5) | (1,130.4) | 1,190.6 | 4.4 | 13.0 | (1,269.0) | 1,713.7 | (1,123.6) | 699.5 | (1,036.9) |
| Ending Revolver | 8,011.6 | 8,921.2 | 7,793.9 | 7,332.4 | 7,822.9 | 8,963.3 | 7,762.7 | 7,768.3 | 7,745.3 | 9,014.3 | 7,300.6 | 8,424.2 | 7,724.6 | 7,724.6 |
| **Sales** | | | | | | | | | | | | | | |
| IPC | 2,695.4 | 2,388.7 | 2,388.7 | 2,388.7 | 2,695.4 | 2,388.7 | 2,388.7 | 2,388.7 | 2,895.4 | 2,388.7 | 2,388.7 | 2,388.7 | 2,388.7 | 31,973.3 |
| Uniformity | 28.5 | 28.5 | 28.5 | 28.5 | 28.5 | 28.5 | 28.5 | 28.5 | 28.5 | 28.5 | 28.5 | 28.5 | 28.5 | 370.0 |
| Total Net Sales | 2,723.9 | 2,417.2 | 2,417.2 | 2,417.2 | 2,723.9 | 2,417.2 | 2,417.2 | 2,417.2 | 2,723.9 | 2,417.2 | 2,417.2 | 2,417.2 | 2,417.2 | 32,343.3 |

### Footnotes:
1) Total Disbursements can be broken into the following categories:

| | Cash Flow 8/9/13 | Cash Flow 8/16/13 | Cash Flow 8/23/13 | Cash Flow 8/30/13 | Cash Flow 9/6/13 | Cash Flow 9/13/13 | Cash Flow 9/20/13 | Cash Flow 9/27/13 | Cash Flow 10/4/13 | Cash Flow 10/11/13 | Cash Flow 10/18/13 | Cash Flow 10/25/13 | Cash Flow 11/1/13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Payroll | 1,258.0 | 2,489.7 | 1,347.9 | 2,491.2 | 1,347.0 | 2,452.8 | 1,341.0 | 2,452.8 | 1,389.1 | 2,458.4 | 1,343.3 | 2,503.4 | 1,337.8 | 24,192.3 |
| Insurance | 79.1 | 220.2 | 622.1 | 40.6 | 455.8 | 153.8 | 101.8 | 40.6 | 455.8 | 92.9 | 40.6 | 770.5 | 455.8 | 3,529.7 |
| Rent | 108.0 | | | | 106.0 | | | | 105.0 | | | | | 314.9 |
| Other Payables | 881.9 | 219.3 | 518.1 | 183.6 | 410.4 | 123.6 | 845.9 | 314.0 | 388.4 | 123.6 | 205.9 | 837.3 | 575.9 | 5,627.9 |
| Interest | | | | | 67.3 | | | | 82.4 | | | | 67.5 | 243.2 |
| Principal | 28.0 | | | | 26.7 | | | | 26.7 | | | | 26.7 | 80.0 |
| Total Disbursements | 2,349.9 | 2,909.2 | 2,488.1 | 2,715.4 | 2,412.1 | 2,730.1 | 2,288.7 | 2,807.4 | 2,447.4 | 2,674.9 | 1,589.9 | 4,111.1 | 2,463.3 | 33,988.0 |

2) Pre-petition Payroll / Taxes include the following (post-petition represents split-payments):

| | Pre-Petition | Post-Petition | Total |
|---|---|---|---|
| Payroll | 4,204.2 | 3,943.2 | 8,147.4 |
| Unemployment Taxes | 320.7 | 130.0 | 450.7 |
| Sales Taxes | 415.3 | 274.4 | 689.7 |
| Total | 4,940.3 | 4,347.6 | 9,287.9 |

DIP Budget

## EXHIBIT A – COMPLIANCE CERTIFICATE

Attached to and made a part of that certain Post Petition Loan and Security Agreement, as it may be amended in accordance with its terms from time to time, including all exhibits attached thereto (the "**Agreement**") dated as of August 13, 2013 between THE SECURITY NETWORK HOLDINGS CORP., IPC INTERNATIONAL CORPORATION ("**Borrowers**") and THE PRIVATEBANK AND TRUST COMPANY ("**Lender**").

This Certificate is submitted pursuant to Section 9.4 of the Agreement.

The undersigned hereby certifies to Lender that as of the date of this Certificate:

1.      The undersigned is the _____ of Borrowers.

2.      There exists no event or circumstance which is or which with the passage of time, the giving of notice, or both would constitute an Event of Default, as that term is defined in the Agreement, or, if such an event of circumstance exists, a writing attached hereto specifies the nature thereof, the period of existence thereof and the action that Borrowers have taken or propose to take with respect thereto.

3.      No material adverse change in the condition, financial or otherwise, business, property, or results of operations of Borrowers has occurred since [**date of last Compliance Certificate/last financial statements delivered prior to closing**], or, if such a change has occurred, a writing attached hereto specifies the nature thereof and the action that Borrowers have taken or propose to take with respect thereto.

4.      Borrowers are in compliance with the representations, warranties and covenants in the Agreement, or, if Borrowers are not in compliance with any representations, warranties or covenants in the Agreement, a writing attached hereto specifies the nature thereof and the action that Borrowers have taken or propose to take with respect thereto.

5.      The financial statements of Borrowers being concurrently delivered herewith have been prepared in accordance with generally accepted accounting principles consistently applied over the periods applicable thereto, subject in the case of unaudited financial statements to the absence of footnotes and customary year-end adjustments.

THE SECURITY NETWORK HOLDINGS CORP.

By _____
Its _____

IPC      INTERNATIONAL      CORPORATION

By _____
Its _____

Exhibit A – Page 1

61086372_4

## <u>INITIAL NOTICE OF BORROWING AND DISBURSEMENT OF FUNDS LETTER</u>

August 13, 2013

The PrivateBank and Trust Company
120 South LaSalle Street
Suite 200
Chicago, IL 60603
Attn.: Robert Corsentino

Gentlemen:

Reference is made to the Post Petition Loan and Security Agreement dated as August 13, 2013 (as amended, restated, supplemented or otherwise modified from time to time, the "**Loan Agreement**") between The Security Network Holdings Corp., IPC International Corporation (collectively, the "**Borrowers**"), and The PrivateBank and Trust Company ("**Lender**"). All capitalized terms used but not defined herein shall have the respective meanings ascribed thereto in the Loan Agreement.

Pursuant to Section 2.5(a) of the Loan Agreement, Borrower Representative hereby notifies Lender that on August 9, 2013 (the "**Borrowing Date**"), Borrowers request Revolving Loans in an aggregate principal amount of $ 6,913,224.35 (the "**Requested Revolving Advance**"), which amount, when taken together with the outstanding principal balance of the Revolving Loans on the date hereof, will not exceed the Revolving Loan Commitment.

Immediately after giving effect to the Requested Revolving Advance, the aggregate principal amount of Revolving Loans outstanding will be $ 6,913,224.35.

Borrower Representative hereby certifies to Lender that as of the Borrowing Date, Revolving Loan Availability is $ 272,910.65 computed as set forth on <u>Exhibit A</u> attached hereto.

61086252_2

Borrower Representative acknowledges that this Notice of Borrowing and acceptance by Borrowers of the proceeds of the Requested Revolving Advance contemplated hereby constitute a representation and warranty that the conditions contained in Sections 17.1(a) (other than as a result of subjective or discretionary determination by Lender), 17.1(b), 17.1(c) and 17.2 of the Loan Agreement have been satisfied or waived by Lender.

Borrower Representative authorizes and directs Lender to apply the proceeds of the Requested Revolving Advance in accordance with the sources and uses/funds flow specified on Exhibit B attached hereto.  Upon such application of proceeds, the Loans described above shall be deemed disbursed to Borrowers and interest shall commence to accrue at the respective rate specified in the Loan Agreement.

*[Signature Page Follows]*

61086252_2

2

Very truly yours,

**IPC INTERNATIONAL
CORPORATION**, an Illinois corporation,
as Borrower Representative

By: _Howard L Kaplan_
Name: _Howard L. Kaplan_
Title: _Chairman of Board and President_

**EXHIBIT A**

**BORROWING BASE CALCULATION**

[To be attached by Borrowers]

# The PrivateBank

120 S. LaSalle St.
Chicago, IL 60603

Exhibit A

Company Name: IPC INTERNATIONAL CORP
Loan #: IPC
Date: August 9, 2013
Report #: 673

**COLLATERAL REPORT**

PERIOD COVERED

| | IPC | UNIFORMITY | PREBILLED MONTHLY | PREBILLED WEEKLY | Prepaid Insurance | Real Estate | ESOP | TOTAL |
|---|---|---|---|---|---|---|---|---|
| **ACCOUNTS RECEIVABLE** | | | | | | | | |
| BEGINNING ACCOUNTS RECEIVABLE | $13,397,796.06 | | 894,642.67 | 325,000.00 | | 983.67 | | 12,993,695.51 |
| **ADDITIONS (+)** | | | | | | | | |
| Net Sales | $ | $ | $ | $ | $ | $ | $ | 625,000.00 |
| Miscellaneous Adjustments | $ | $ | $ | 325,000.00 | $ | $ | $ | |
| **TOTAL ADDITIONS (+)** | $ | $ | $ | $ | $ | $ | $ | 625,000.00 |
| SUB TOTAL | 13,397,796.07 | | 894,642.67 | 325,000.00 | | 983.67 | | |
| **DEDUCTIONS (-)** | | | | | | | | |
| Collections | $ | $ | $ | 325,000.00 | $ | $ | $ | 325,000.00 |
| Wire Transfers (FE) | 290,574.91 | | 894,642.67 | 6,946,000.00 | 300,299.77 | | | 15,242,135.51 |
| Less Boxes | $ | $ | $ | $ | $ | $ | $ | |
| Discounts Revod | $ | $ | $ | $ | $ | $ | $ | 290,651.01 |
| Credit Memos | $ | $ | $ | $ | $ | $ | $ | |
| Miscellaneous Adjustments | $ | $ | $ | $ | $ | $ | $ | |
| TOTAL DEDUCTIONS (-) | $ | $ | $ | $ | $ | $ | $ | |
| **ACCOUNTS RECEIVABLE THIS REPORT** | 290,391.01 | | | | | | | |
| LESS: Ineligibles (-) | 13/70 2010 | | | | | | | |
| Over 60 days from past due upto 90 days from inv | 13,964,289.06 | | 894,642.67 | 640,000.00 | 306,299.77 | | | 255,791.01 |
| Credits in Prior | 302,633.54 | | | | | | | 14,945,147.50 |
| Cross Aging at 50% | $ | $ | $ | $ | $ | $ | $ | 302,633.54 |
| Affiliates | 275,931.77 | | | | | | | |
| Contra Accounts | $ | $ | $ | $ | $ | $ | $ | 275,931.77 |
| Foreign | 121,714.14 | | | | | | | 179,054.06 |
| Concentration limit >10% | $ | $ | $ | $ | $ | $ | $ | |
| **TOTAL INELIGIBLES (-)** | 817,062.67 | | | | | | | 179,054.06 |
| TOTAL ELIGIBLE RECEIVABLES | $ | $ | $ | $ | $ | $ | $ | 817,679.07 |
| ADVANCE RATE | 85% | | | | | | | |
| A/R AVAILABILITY | 12,600,695.38 | | 564,842.67 | 544,000.00 | 306,299.77 | | | 14,127,407.51 |
| A/R CREDIT LIMIT | 12,600,695.38 | | 715,714.14 | 544,000.00 | 306,299.77 | | | 12,909,394.43 |
| **A/R BORROWING BASE VALUE** | $ 10,135,080.58 | $ | 715,714.14 | 552,500.00 | 306,299.77 | $ | $ | 12,909,594.49 |
| **INVENTORY** | IPC | UNIFORMITY | PREBILLED MONTHLY | PREBILLED WEEKLY | Prepaid Insurance | Real Estate | ESOP | TOTAL |
| TOTAL ELIGIBLE INVENTORY | $ | $ | $ | $ | $ | $ | $ | |
| INVENTORY CREDIT LIMIT | $ | $ | $ | $ | $ | $ | $ | |
| **INVENTORY BORROWING BASE VALUE** | 2,000,000.00 | | | | | | | 2,000,000.00 |
| **OTHER COLLATERAL** | IPC | UNIFORMITY | PREBILLED MONTHLY | PREBILLED WEEKLY | Prepaid Insurance | Real Estate | ESOP | TOTAL |
| REAL ESTATE ADVANCED | $ | $ | $ | $ | $ | $ | $ | |
| MACHINERY & EQUIPMENT ADVANCED | $ | $ | $ | $ | $ | $ | $ | |
| LETTERS OF CREDIT ADVANCED | $ | $ | $ | $ | $ | 4,373,333.28 | 6,017,836.54 | 10,391,169.82 |
| OTHER COLLATERAL ADVANCED | $ | $ | $ | $ | $ | $ | $ | |
| TOTAL COLLATERAL AVAILABILITY | 10,435,080.58 | | 715,714.14 | 552,500.00 | | 4,373,333.28 | 6,017,836.54 | |
| MAXIMUM LOAN LIMIT | 12,000,000.00 | | 715,714.14 | 552,500.00 | | 4,373,333.28 | 6,017,836.54 | 22,909,594.43 |
| **GROSS AVAILABILITY** | 10,135,080.58 | $ | 715,714.14 | 552,500.00 | 306,299.77 | 4,373,333.28 | 6,017,836.54 | 22,391,169.82 |
| **BORROWING BASE RESERVE** | IPC | UNIFORMITY | PREBILLED MONTHLY | PREBILLED WEEKLY | Prepaid Insurance | Real Estate | ESOP | TOTAL |
| LESS (-) | | | | | | | | |
| Letter of Credit Reserve | 2,381,565.00 | | | | | | | 2,381,565.00 |
| Other Reserve | 2,412,000.00 | | | | | | | 2,412,000.00 |
| **NET AVAILABILITY** | $ 5,621,215.58 | $ | 715,714.14 | 552,500.00 | 306,299.77 | 4,373,333.28 | 6,017,836.54 | 17,577,304.82 |
| **LOAN OUTSTANDING** | IPC | UNIFORMITY | PREBILLED MONTHLY | PREBILLED WEEKLY | Prepaid Insurance | IGI | ESOP | TOTAL |
| Ending Loan Balance of Previous Report | 9,558,294.92 | | | | | 4,373,333.28 | 6,017,836.54 | 17,279,464.74 |
| LESS | | | | | | | | |
| Collections of Accounts Receivable | $ | $ | $ | $ | $ | $ | $ | |
| Wire Transfers | $ | $ | $ | $ | $ | $ | $ | |
| Less Boxes | $ | $ | $ | $ | $ | $ | $ | |
| OTHER ADJUSTMENTS (+/-) | 50.00 | | | | | | | |
| TOTAL COLLECTIONS | $ | $ | $ | $ | $ | $ | $ | |
| NET LOAN OUTSTANDING | $ | $ | $ | $ | $ | $ | $ | |
| ADVANCE REQUESTED | 4,828,294.92 | | | | | | | |
| ENDING LOAN BALANCE | 913,929.91 | | | | 4,373,333.28 | 6,017,836.54 | | 17,279,464.74 |
| BORROWING BASE AVAILABLE | 6,913,324.95 | | | | | | | 44,920.43 |
| | (1,292,010.79) | | 715,714.14 | 552,500.00 | 306,299.77 | 4,373,333.28 | 6,017,836.54 | 17,384,394.17 |
| | | | | | | | | 272,910.65 |

For the purpose of inducing The PrivateBank and Trust Company to advance the loans requested above pursuant to a Loan and Security Agreement dated August 31,2009, and any and all amendments thereto (the "Loan Agreement"), we hereby certify that (i) the foregoing is true and correct in all particulars and that the above described collateral for such loans meets the requirements set forth in the Loan Agreement, (ii) we are not in Default (as defined in the Loan Agreement) or would result from the Loans requested, (iii) the representations and warranties of the undersigned under the Loan Agreement are true and correct in all material respects and (iv) no event has occurred or circumstance exist that have or could reasonably be expected to have a Material Adverse Effect (as defined in the Loan Agreement).

**EXHIBIT B**

**SOURCES AND USES OF CASH**

Sources:        Revolving Loan $ 6,913,224.35

Uses:        Repayment of Existing Revolving Loans from Lender $6,913,224.35

**EXHIBIT C – COMMERCIAL TORT CLAIMS**

None

61086372_4

## REVOLVING NOTE

August 13, 2013                                                                    $12,000,000
                                                                                   Chicago, Illinois

THE SECURITY NETWORK HOLDINGS CORP., an Illinois corporation ("SNHC") and IPC INTERNATIONAL CORPORATION, an Illinois corporation ("IPC" and together with SNHC, collectively, the "Borrowers"), for value received, hereby unconditionally promise to pay, on a joint and several basis, to The PrivateBank and Trust Company ("Lender"), the principal sum of TWELVE MILLION AND NO/100 DOLLARS ($12,000,000), or such lesser amount as may be advanced by Lender as Revolving Loans from time to time under the Loan Agreement described below, together with all accrued and unpaid interest thereon. Terms are used herein as defined in the Post Petition Loan and Security Agreement dated as of August 13, 2013, among the Borrowers and Lender (as such agreement has been and may further be amended, restated, supplemented, modified, renewed or extended from time to time, the "Loan Agreement").

Principal of and interest on this Revolving Note (this "Note") from time to time outstanding shall be due and payable as provided in the Loan Agreement. This Note is issued pursuant to and evidences Revolving Loans under the Loan Agreement, to which reference is made for a statement of the rights, duties and obligations of Lender and the rights, duties and obligations of the Borrowers. The Loan Agreement contains provisions for acceleration of the maturity of this Note upon the happening of certain stated events, and for the borrowing, prepayment and reborrowing of amounts upon specified terms and conditions.

The holder of this Note is hereby authorized by the Borrowers to record on a schedule annexed to this Note (or on a supplemental schedule) the amounts owing with respect to Revolving Loans and Letter of Credit Obligations, and the payment thereof. Failure to make any notation, however, shall not affect the rights of the holder of this Note or any obligations of the Borrowers hereunder or under any other Loan Documents.

Each Borrower and all endorsers, sureties and guarantors of this Note hereby severally waive, to the maximum extent permitted by law, demand, presentment for payment, protest, notice of protest, notice of intention to accelerate the maturity of this Note, diligence in collecting, the bringing of any suit against any party, and any notice of or defense on account of any extensions, renewals, partial payments, or changes in any manner of or in this Note or in any of its terms, provisions and covenants, or any releases or substitutions of any security, or any delay, indulgence or other act of any trustee or any holder hereof, whether before or after maturity. The Borrowers jointly and severally agree to pay, and to save the holder of this Note harmless against, any liability for the payment of all costs and expenses (including without limitation reasonable attorneys' fees) if this Note is collected by or through an attorney-at-law, all as and to the extent provided in the Loan Agreement.

This Note shall be governed by the laws of the State of Illinois, without giving effect to any conflict of law principles.

*[Signature Page Follows]*

IN WITNESS WHEREOF, this Revolving Note is executed as of the date first set forth above.

THE SECURITY NETWORK HOLDINGS CORP.

By: _Howard L. Kaplan_
Name: Howard L. Kaplan
Title: President

IPC INTERNATIONAL CORPORATION

By: _Howard L. Kaplan_
Name: Howard L. Kaplan
Title: President

Revolving Note

### Schedule 1 – Permitted Liens

| Jurisdiction | File # | Borrower | Secured Party | Collateral | Filing Date |
|---|---|---|---|---|---|
| Illinois | 013257183 | IPC International Inc. 3000 Lakeside Dr. Suite 309-8 Bannockburn, IL 60015 | Court Square Leasing Corp. 14 Great Valley Parkway Suite 100 Malvern, PA 19355 | Equipment Lease | 5/15/2008 |
| Illinois | 013351112 | IPC International Inc. 3000 Lakeside Dr. Suite 309-8 Bannockburn, IL 60015 | CIT Communications Finance Corp. 1 CIT Drive Livingston, NJ 07039 | Equipment Lease | 6/13/2008 |
| Illinois | 014864288 | IPC International Corp. 2111 Waukegan Rd. Bannockburn, IL 60015 | CIT Technology Financing Services, Inc. Suite 100 Jacksonville, FL 32256 | Equipment Lease | 12/21/2009 |
| Illinois | 017236342 | IPC International Inc. 3000 Lakeside Dr. Suite 309-8 Bannockburn, IL 60015 | Xerox Financing Services, Inc. 45 Glover Ave Norwalk, CT 06856 | Equipment Lease | 4/26/2012 |

**SCHEDULE 11.2 - LOCATIONS**

| Location | Address and Contact Information |
|---|---|
| Headquarters | 2111 Waukegan Rd.<br>Bannockburn, IL 60015 |
| West Coast Operations | 909 N. Sepulveda<br>Suite 370<br>El Segundo, CA 90245 |
| Storage Facilities | 151 S. Pfingsten Rd.<br>Unit R<br>Deerfield, IL 60015 |
| The Private Bank –<br><br>• Operating Account #2207705<br>• Deposit Sweep Account #2267048<br>• Accounts Payable Account #7702271<br>• Payroll Account for Field Employees #7702289<br>• Payroll Account for Corporate Employees #2207713<br>• Money Market Account #3165207 | 120 South LaSalle Street<br>Chicago, IL 60603<br>Phone – 312-564-6969 |
| US Bank - Payroll Account for California Employees #154980218189 | PO Box 1800<br>Saint Paul, MN<br>55101-0800<br>Phone – (800) 673-3555 |
| Adrian Mall | 1357 South Main Street<br>Adrian, MI 49221<br>Phone – (517) 263-0685<br>Fax – (517) 265-2278 |
| Ala Moana Center | 1450 Ala Moana Blvd.<br>Honolulu, HI 96814<br>Phone – (808) 946-2811<br>Fax – (808) 955-2193 |
| Alamo Quarry Market | 255 East Basse Road<br>Suite 400<br>San Antonio, TX 78209<br>Phone – (210) 825-8885<br>Fax – (210) 824-9559 |
| Alexandria Mall | 3437 Masonic Drive<br>Alexandria, LA 71301 |

| Location | Address and Contact Information |
|---|---|
| | Phone – (318) 448-0227<br>Fax – (318) 442-9849 |
| Almeda Mall | 555 Almeda Mall<br>Houston, TX 77075<br>Phone – (713) 993-0123<br>Fax – (713) 993-0103 |
| Arboretum of South Barrington | 100 W. Higgins Road<br>South Barrington, IL 60010<br>Phone – (847) 426-6200<br>Fax – (847) 426-6266 |
| Ashtabula Towne Square | 3315 N. Ridge East<br>Unit 700<br>Ashtabula, OH 44004<br>Phone – (440) 998-2020<br>Fax – (440) 992-4875 |
| Aventura Commons | 21265 Biscayne Blvd<br>Miami, FL 33180<br>Phone – (305) 854-2800<br>Fax – (305) 859-8300 |
| Aventura Mall | 19501 Biscayne Blvd.<br>Suite 400<br>Aventura, FL 33180<br>Phone – (305) 933-5548<br>Fax – (305) 935-4185 |
| Avenue Viera, The | 2261 Towne Center Avenue<br>Suite 113<br>Viera, FL 32940<br>Phone – (321) 634-5390<br>Fax – (321) 634-5391 |
| Aviation Mall | 578 Aviation Road<br>Queensbury, NY 12804<br>Phone – (518) 793-8818<br>Fax – (518) 793-9295 |
| Bay Plaza Shopping Center | 1430 E. Plaza Blvd<br>National City, CA 91950<br>Phone – (619) 770-5505 |
| Beachwood Place | 26300 Cedar Road |

| Location | Address and Contact Information |
|---|---|
| | Beachwood, OH 44122<br>Phone – (216) 464-3698<br>Fax – (216) 464-7939 |
| Bel Air Mall | 3299 Bel Air Mall<br>Mobile, AL 36606<br>Phone – (251) 478-1893<br>Fax – (251) 476-5722 |
| Berkshire Mall | 655 Cheshire Road<br>Lanesborough, MA 01237<br>Phone – (413) 445-4400<br>Fax – (413) 442-3854 |
| Best on the Boulevard | 3810-3910 S. Maryland Parkway<br>Las Vegas, NV 89119<br>Phone – (480) 507-2700<br>Fax – (480) 507-2712 |
| Beverly Center | 8500 Beverly Blvd.<br>Suite 150A<br>Los Angeles, CA 90048<br>Phone – (310) 854-0071<br>Fax – (310) 854-6376 |
| Biltmore Square Mall | 800 Brevard Road<br>Asheville, NC 28806<br>Phone – (828) 667-2310<br>Fax – (828) 665-1857 |
| Birchwood Mall | 4350 24th Avenue<br>Box 4350<br>Fort Gratiot, MI 48059<br>Phone – (810) 385-7900<br>Fax – (810) 385-9184 |
| Boyer Company, The (Boyer Phase II & Office Towers) | UT |
| Branson Landing | 100 Branson Landing Blvd<br>Branson, MO 65616<br>Phone – (417) 239-3002<br>Fax – (417) 239-3006 |
| Bridgepark Plaza | Ladera Ranch, CA 92675 |
| Bridgewater Commons | 400 Commons Way |

| Location | Address and Contact Information |
|---|---|
|  | Bridgewater, NJ 08807-2808<br>Phone – (908) 218-1166<br>Fax – (908) 218-1722 |
| Buena Park Downtown | 8308 on the Mall<br>Buena Park, CA 90620<br>Phone – (714) 503-5000<br>Fax – (714) 761-0748 |
| Burbank Empire Center | 345 E Colorado Blvd.<br>Pasadena, CA 91101<br>Phone – (310) 541-2242 |
| Burr Ridge Village Center | 701 Village Center Drive<br>Burr Ridge, IL 60527<br>Phone – (630) 654-2782<br>Fax – (630) 325-5408 |
| Calhoun Square | 3001 Hennepin Avenue<br>Minneapolis, MN 55408<br>Phone – (612) 824-1240<br>Fax – (612) 824-4930 |
| Camarillo Village Square | CA 93030<br>Camarillo, CA |
| Carmel Country Plaza | 12750 Carmel Country Plaza<br>San Diego, CA 92130<br>Phone – (858) 350-2600<br>Fax – (858) 350-2620 |
| Carmel Mountain Plaza | 11602-12174 Carmel Mountain Road<br>San Diego, CA 92128<br>Phone – (858) 350-2600<br>Fax – (858) 350-2620 |
| Central Mall Ft. Smith | 5111 Rogers Ave.<br>Ft. Smith, AR 72903<br>Phone – (479) 452-1866<br>Fax – (479) 452-3751 |
| Central Mall Lawton | 200 SW C Avenue<br>Lawton, OK 73501<br>Phone – (580) 355-7792<br>Fax – (580) 248-4081 |

61086372_4

| Location | Address and Contact Information |
|---|---|
| Central Mall Port Arthur | 3100 Highway 365<br>Port Arthur, TX 77642<br>Phone – (409) 727-5592<br>Fax – (409) 727-5781 |
| Central Mall Texarkana | 2400 Richmond Road<br>Box 8<br>Texarkana, TX 75503<br>Phone – (903) 838-4669<br>Fax – (903) 838-0619 |
| Centre at Glen Burnie | 6711 Ritchie Highway<br>Glen Burnie, MD 21061<br>Phone – (410) 766-6529<br>Fax – (410) 766-0823 |
| Century III Mall | 3075 Clairton Road<br>West Mifflin, PA 15123<br>Phone – (412) 653-1222<br>Fax – (412) 655-0202 |
| Century Square | 100 48 Hawthorne Blvd<br>Inglewood, CA 90304 |
| Cerritos Towne Center | 12731 Towne Center Drive<br>Cerritos, CA 90703<br>Phone – (562) 938-1722<br>Fax – (562) 938-1744 |
| Champlain Centre | 60 Smithfield Blvd<br>Plattsburgh, NY 12901<br>Phone – (518) 561-8660<br>Fax – (518) 561-8682 |
| Cherry Creek Shopping Center | 3000 East First Avenue<br>Denver, CO 80206<br>Phone – (303) 388-2522<br>Fax – (303) 388-8203 |
| Chino Spectrum Marketplace | 3808 Grand Avenue<br>Suite B<br>Chino, CA 91710<br>Phone – (909) 902-5555<br>Fax – (909) 902-5559 |

| Location | Address and Contact Information |
|---|---|
| Chino Spectrum Towne Center | 3808 Grand Ave.<br>Suite B<br>Chino, CA 91710<br>Phone – (909) 902-5555<br>Fax – (909) 902-5559 |
| Christiana Mall | 715 Christiana Mall<br>Newark, DE 19702<br>Phone – (302) 731-9816<br>Fax – (302) 731-9950 |
| Christown Spectrum Mall | 1703 W. Bethany Home Road<br>Management Office<br>Phoenix, AZ 85015<br>Phone – (602) 249-0670<br>Fax – (602) 246-8690 |
| Citadel Crossing | Colorado Springs, CO 80909 |
| Citadel Guest Services, The | 750 Citadel Drive East<br>Suite 3114<br>Colorado Springs, CO 80909<br>Phone – (719) 591-2900<br>Fax – (719) 597-4839 |
| Citadel, The | 750 Citadel Drive East<br>Suite 3114<br>Colorado Springs, CO 80909<br>Phone – (719) 591-2900<br>Fax – (719) 597-4839 |
| City Creek Center | 50 E. South Temple<br>Suite 70<br>Salt Lake City, UT 84111<br>Phone – (801) 238-5320<br>Fax – (801) 238-5321 |
| City Creek Reserve | 15 East South Temple<br>Suite 800<br>Salt Lake City, UT 84150 |
| City of West Palm Beach City Hall | 401 Clematis St<br>West Palm Beach, FL 33401 |
| City of West Palm Beach City Hall | 200 2nd Street |

61086372_4

| Location | Address and Contact Information |
|---|---|
|  | West Palm Beach, FL 33401 |
| City of West Palm Beach City Parking | 500 Banyan Boulevard<br>West Palm Beach, FL 33401 |
| City of West Palm Beach Library | 411 Clematis Street<br>West Palm Beach, FL 33401 |
| CityNorth | 5315 E. High Street<br>Suite 123<br>Phoenix, AZ 85054<br>Phone – (480) 319-8700<br>Fax – (480) 513-3240 |
| CityPlace Office Tower | 525 Okeechobee Blvd<br>West Palm Beach, FL 33401 |
| CityScape | 1 East Washington Street<br>Phoenix, AZ 85004<br>Phone – (602) 772-3900<br>Fax – (602) 772-3933 |
| Clearview Mall | 101 Clearview Circle<br>Butler, PA 16001<br>Phone – (724) 285-5721<br>Fax – (724) 285-9935 |
| Clifton Park Center Mall | 22 Clifton Country Road<br>Clifton Park, NY 12065<br>Phone – (518) 371-7010<br>Fax – (518) 371-0208 |
| CMI Center | 10400 Little Patuxent Pkwy<br>Suite 1000<br>Columbia, MD 21044<br>Phone – (410) 992-3605<br>Fax – (410) 730-6363 |
| College Square Mall | 1 College Square Mall<br>Cedar Falls, IA 50613<br>Phone – (319) 277-3636<br>Fax – (319) 277-7184 |
| Colonie Center | 131 Colonie Center<br>Albany, NY 12205<br>Phone – (518) 459-9020 |

| Location | Address and Contact Information |
|---|---|
|  | Fax – (518) 459-2147 |
| Colony Square Mall | 3575 Maple Avenue<br>Zanesville, OH 43701<br>Phone – (740) 454-3255<br>Fax – (740) 454-8801 |
| Columbia Mall | 2800 S Columbia Mall<br>Grand Forks, ND 58201<br>Phone – (701) 746-8383<br>Fax – (701) 772-3537 |
| Columbia Mall - MO | 2300 Bernadette Dr<br>Columbia, MO 65203<br>Phone – (573) 445-8458<br>Fax – (573) 445-3219 |
| Conestoga Mall | 3404 W. 13th Street<br>Grand Island, NE 68803<br>Phone – (308) 382-4210<br>Fax – (308) 382-5851 |
| Corte Madera Town Center | 100 Corte Madera Town Center<br>Corte Madera, CA 94925<br>Phone – (415) 924-2961<br>Fax – (415) 924-7062 |
| Country Club Center | 19950 West Country Club Dr<br>Aventura, FL 33180<br>Phone – (305) 682-1354 |
| Country Club Plaza | 18454 NW 67th Avenue<br>Hialeah, FL 33015<br>Phone – (305) 505-0264 |
| Courtyard by Marriott@ Aventura | 2825 NE 191 Street<br>Aventura, FL 33180<br>Phone – (305) 937-0805<br>Fax – (305) 937-0806 |
| Coventry Mall | Route 724 & 100<br>Pottstown, PA 19465<br>Phone – (610) 327-0700<br>Fax – (610) 327-8392 |
| Crestwood Mall | 109 Crestwood Plaza |

| Location | Address and Contact Information |
|---|---|
| | St. Louis, MO 63126<br>Phone – (314) 962-2395<br>Fax – (314) 962-2384 |
| Crossgates Mall | 1 Crossgate Mall Road<br>Albany, NY 12203<br>Phone – (518) 869-3522<br>Fax – (518) 869-9683 |
| Crossroads Center | 2060 Crossroads Blvd.<br>Suite 124<br>Waterloo, IA 50702<br>Phone – (319) 234-1788<br>Fax – (319) 234-5102 |
| Crossroads Center-VA | 5800-5880 Leesburg Pike<br>Falls Church, VA 22041 |
| Crossroads, The | 6650 South Westnedge Avenue<br>Portage, MI 49024<br>Phone – (269) 327-3500<br>Fax – (269) 327-5119 |
| Currie Park | 401 Clematis Street<br>West Palm Beach, FL 33401 |
| Dadeland Station | 8312 South Dixie Highway<br>Miami, FL 33143<br>Phone – (305) 854-2800<br>Fax – (305) 859-8300 |
| Decatur Mall | 1801 Beltline Rd SW<br>Decatur, AL 35601<br>Phone – (256) 350-0453<br>Fax – (256) 350-0599 |
| Del Monte Center | 1410 Del Monte Center<br>Monterey, CA 93940<br>Phone – (831) 373-2705<br>Fax – (831) 373-8675 |
| Desert Ridge Marketplace | 21001 N. Tatum Blvd.<br>Suite 36-1155<br>Phoenix, AZ 85050<br>Phone – (480) 513-7586<br>Fax – (480) 563-1829 |

| Location | Address and Contact Information |
|---|---|
| DeVargas Center | 564 North Guadalupe Street<br>Santa Fe, NM 87501<br>Phone – (505) 982-2655<br>Fax – (505) 988-5227 |
| District at Green Valley Ranch, The | 2225 Village Walk Drive<br>Suite 171<br>Henderson, NV 89052<br>Phone – (702) 564-8595<br>Fax – (702) 270-9249 |
| District at Howell Mill | 1801 Howell Mill Road NW<br>Atlanta, GA 30318 |
| District at Tustin Legacy, The | 2437 Park Avenue<br>Tustin, CA 92782<br>Phone – (714) 259-9090<br>Fax – (714) 259-9091 |
| Dolphin Mall | 11401 NW 12th Street<br>Miami, FL 33172<br>Phone – (305) 599-3000<br>Fax – (305) 436-9000 |
| Downtown Dadeland | 7283 SW 90th Way<br>Management Office<br>Miami, FL 33156<br>Phone – (305) 670-9964<br>Fax – (305) 670-5179 |
| Downtown Development Authority | 301 Clematis Street<br>Suite 200<br>West Palm Beach, FL 33401 |
| East Town Mall | 2350 East Mason Street<br>Green Bay, WI 54302<br>Phone – (920) 468-8500<br>Fax – (920) 468-8889 |
| Eastland Center | 18000 Vernier Road<br>Harper Woods, MI 48225<br>Phone – (313) 371-1501<br>Fax – (313) 371-3511 |
| Eastpoint Mall | 7839 Eastpoint Mall<br>Baltimore, MD 21224<br>Phone – (410) 284-0934 |

| Location | Address and Contact Information |
|---|---|
|  | Fax -- (410) 284-3766 |
| Elverta Crossing | 8013 Elverta Road<br>Antelope, CA 95843 |
| Enclave, The | 400 Enclave Circle<br>Costa Mesa, CA 92626<br>Phone – (714) 662-7070<br>Fax – (714) 662-7075 |
| EpiCentre | 2010 E. Trade Street<br>Suite C-446B<br>Charlotte, NC 28202 |
| Fair Oaks | 11750 Fair Oaks<br>Fairfax, VA 22033<br>Phone – (703) 359-8302<br>Fax – (703) 591-6548 |
| Fairlane Town Center | 18900 Michigan Avenue<br>Dearborn, MI 48126<br>Phone – (313) 593-1370<br>Fax – (313) 593-0572 |
| Faneuil Hall | 4 South Market Building<br>Boston, MA 02109<br>Phone – (617) 523-1300<br>Fax – (617) 523-1779 |
| Fashion Island | 401 Newport Center Drive<br>Suite A-150<br>Newport Beach, CA 92660<br>Phone – (949) 720-3300<br>Fax – (949) 720-3350 |
| Fifth & Alton | 560 Lenox Ave<br>Miami Beach, FL 33139<br>Phone – (305) 854-2800<br>Fax – (305) 859-8300 |
| Findlay Village Mall | 1800 Tiffin Avenue<br>Findlay, OH 45840<br>Phone – (419) 422-8732<br>Fax – (419) 422-2683 |
| Five Points Mall | 1129 North Baldwin Avenue |

| Location | Address and Contact Information |
|---|---|
|  | Marion, IN 46952 |
| Flagler Landing | 325 Clematis Street<br>Suite 202<br>West Palm Beach, FL 33401 |
| Fort Craig Medical Centers | 900 S Main Street<br>Corona, CA 92882 |
| Frederick Towne Mall | U.S. Route 40 West<br>Frederick, MD 21702<br>Phone – (301) 662-9300<br>Fax – (301) 662-9339 |
| Front Range Village | 2720 Council Tree Avenue<br>Suite 160<br>Fort Collins, CO 80525<br>Phone – (970) 226-9050<br>Fax – (970) 226-8750 |
| Galleria at Crystal Run | 1 Galleria Drive<br>Suite 142<br>Middletown, NY 10941<br>Fax – (315) 422-2717 |
| Galleria at Fort Lauderdale | 2414 E. Sunrise Blvd.<br>Ft. Lauderdale, FL 33304<br>Phone – (954) 564-1036<br>Fax – (954) 566-9976 |
| Galleria of Mount Lebanon, The | 1500 Washington Road<br>Pittsburgh, PA 15228<br>Phone – (412) 561-4000<br>Fax – (412) 561-6486 |
| Galleria Towers, The | 2700 Post Oak Blvd<br>Suite 200<br>Houston, TX 77056<br>Phone – (713) 621-9010<br>Fax – (713) 621-9035 |
| Gardens on El Paseo, The | 73-545 El Paseo Ave. Bld. E<br>Suite 2500<br>Palm Desert, CA 92260<br>Phone – (760) 862-1990<br>Fax – (760) 862-1884 |

| Location | Address and Contact Information |
|---|---|
| Gateway Village | 28207-28313 Newhall Ranch Road<br>Valencia, CA 91355 |
| Gateway, The | 62 1/2 Rio Grande Street<br>Salt Lake City, UT 84101<br>Phone – (801) 456-2000 |
| Genesee Valley Shopping Center | 3341 S. Linden Road<br>Flint, MI 48507<br>Phone – (810) 732-4006<br>Fax – (810) 732-4343 |
| Glenbrook Square | 4201 Coldwater Blvd<br>Fort Wayne, IN 46805<br>Phone – (260) 483-2119<br>Fax – (260) 483-7756 |
| Glendale Costco | 5850 W. Bell Road<br>Glendale, AZ 85308<br>Phone – (480) 461-0050<br>Fax – (480) 461-1687 |
| Glendale Fashion Center | 249 (F) North Glendale<br>Glendale, CA 91206<br>Phone – (562) 938-1722<br>Fax – (562) 938-1744 |
| Golden Triangle Mall | 2201 S. I - 35 E<br>Denton, TX 76205<br>Phone – (940) 566-6024<br>Fax – (940) 382-1990 |
| Golf Mill Shopping Center | 239 Golf Mill Center<br>Niles, IL 60714<br>Phone – (847) 699-1070<br>Fax – (847) 699-1593 |
| Grand Lakes Marketplace | SE Corner Grand Parkway and Frye Road<br>Katy, TX 77449 |
| Grande Promenade Shopping Center | 230 E. WT Harris Blvd.<br>Charlotte, NC 28202 |
| Great Lakes Crossing Outlets | 4000 Baldwin Road<br>Auburn Hills, MI 48326 |