# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| IPC International Corporation, *et al.*[1] | ) | Cases No. 13-12050 (MFW) |
| | ) | Jointly Administered |
| Debtors. | ) | |

## DISCLOSURE STATEMENT FOR DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION

**POTTER ANDERSON & CORROON LLP**
Jeremy W. Ryan (DE Bar No. 4057)
1313 North Market Street, Sixth Floor
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

*Co-Counsel for the Debtors and Debtors in Possession*

-and-

**PROSKAUER ROSE LLP**
Paul V. Possinger
Brandon W. Levitan
Three First National Plaza
70 West Madison, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

*Counsel for the Debtors and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: IPC International Corporation (2698) ("IPC"); and The Security Network Holdings Corporation (7985) ("SNH"). The address of each of the Debtors is 2111 Waukegan Road, Bannockburn, IL 60015.

**PLEASE REVIEW THIS DOCUMENT FOR IMPORTANT INFORMATION REGARDING:**

> \* **Description of the Debtors**
> \* **Classification and Treatment of Claims and Interests**
> \* **Distribution to Holders of Allowed General Unsecured Claims**
> \* **Implementation and Execution of the Plan**
> \* **Treatment of Contracts and Leases and Procedures to Assert and Resolve Rejection Claims**

**AND IMPORTANT DATES:**

> \* **Date to Determine Record Holders of Claims and Interests**
> \* **Deadline to Submit Ballots**
> \* **Deadline to Object to Plan Confirmation**
> \* **Deadline to Submit Rejection Claims**

**YOUR BALLOT IS ATTACHED TO THE END OF THIS DOCUMENT. PLEASE REVIEW THIS DOCUMENT AND COMPLETE AND RETURN THE BALLOT PER THE INSTRUCTIONS CONTAINED HEREIN.**

1.    **INTRODUCTION.**

1.1    **Purpose of the Disclosure Statement.**

Notice of this disclosure statement (as amended, modified or supplemented, the "Disclosure Statement") is being provided by IPC International Corporation ("IPC") and The Security Network Holdings Corporation ("SNH", and collectively with IPC, the "Debtors") to the Office of the United States Trustee, the Securities and Exchange Commission, the Internal Revenue Service, and to all of the Debtors' known Creditors and stockholders pursuant to section 1125(b) of Title 11 of the United States Code (the "Bankruptcy Code") for the purpose of soliciting acceptances of the Debtors' Joint Plan of Liquidation (the "Plan") [2]. The Plan has been filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and the summaries of the Plan contained herein shall not be relied upon for any purpose other than to make a judgment with respect to, and determine how to vote on, the Plan. A copy of the Plan is attached hereto as **Exhibit A**. **The deadline to object to this Disclosure Statement and/or Confirmation (defined below) of the Plan is [DATE] at 4:00 p.m. (Eastern time).**

THIS DISCLOSURE STATEMENT HAS BEEN CONDITIONALLY APPROVED BY THE BANKRUPTCY COURT AND THE DEBTORS ARE SEEKING FINAL APPROVAL OF THE SUFFICIENCY OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT AT A COMBINED PLAN CONFIRMATION HEARING.  ACCORDINGLY, NO REPRESENTATION CONCERNING THE DEBTORS OR THE VALUE OF THE DEBTORS' ASSETS HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THE DEBTORS ARE NOT RESPONSIBLE FOR ANY INFORMATION, REPRESENTATION OR INDUCEMENT MADE TO OBTAIN YOUR ACCEPTANCE, WHICH IS OTHER THAN, OR INCONSISTENT WITH, INFORMATION CONTAINED HEREIN AND IN THE PLAN.

PLEASE NOTE THAT MUCH OF THE INFORMATION CONTAINED HEREIN HAS BEEN TAKEN, IN WHOLE OR IN PART, FROM INFORMATION CONTAINED IN THE DEBTORS'

---

[2]    Terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

BOOKS AND RECORDS AND PLEADINGS FILED BY THE DEBTORS. STATEMENTS MADE IN THE DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, ALTHOUGH THE DEBTORS HAVE ATTEMPTED TO BE ACCURATE IN ALL MATERIAL RESPECTS, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT ALL OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ERROR. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER RULES GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11. THIS DISCLOSURE STATEMENT HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON ITS ACCURACY.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN ANY OF THE DEBTORS IN THESE CASES.

YOU ARE STRONGLY URGED TO CONSULT WITH YOUR FINANCIAL, LEGAL AND TAX ADVISORS TO UNDERSTAND FULLY THE PLAN AND DISCLOSURE STATEMENT. THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS GIVEN AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT DOES NOT, UNDER ANY CIRCUMSTANCE, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE SUCH DATE. THIS DISCLOSURE STATEMENT IS INTENDED, AMONG OTHER THINGS, TO SUMMARIZE THE PLAN AND MUST BE READ IN CONJUNCTION WITH THE PLAN AND ITS EXHIBITS, IF ANY. IF ANY CONFLICTS EXIST BETWEEN THE PLAN AND DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL.

1.2    **Summary of Claims, Treatment and Estimated Recovery:**

| Class | Type | Status Under Plan | Treatment | Estimated Aggregate Amount in Class ($) | Estimated Recovery of Class (%) |
|---|---|---|---|---|---|
| I | Prepetition Secured Lender Claim | Unimpaired, Deemed to Accept | The Holder of the Allowed Prepetition Secured Lender Claim shall be paid by the Debtors the full amount of such Allowed Secured Claim in Cash on the Effective Date. As of the date hereof, the Prepetition Secured Lender Claim has been paid in full. | $0 | 100% |
| II | Other Allowed Secured Claims | Unimpaired, Deemed to Accept | Each Holder of an Other Allowed Secured Claim shall be paid by the Debtors the full amount of such Allowed Secured Claim in Cash on the Effective Date, or satisfied by return of collateral or other agreement between such Holder and Liquidating Trustee if Allowed after the Effective Date. | $0 | 100% |
| III | Allowed Non-Tax Priority Claims | Unimpaired, Deemed to Accept | Each Holder of an Allowed Priority Claim that has not been satisfied or is not an Assumed Liability shall be paid by the Debtor the full amount of such Allowed Priority Claim in Cash on the Effective Date or on the date on which such Allowed Priority Claim becomes due and payable pursuant to the terms thereof, the agreement upon which such Allowed Priority Claim is based, or any applicable Order of the Bankruptcy Court. As of the date hereof, the Debtors believe that all Allowed Non-Tax Priority Claims have been paid in full pursuant to applicable Court order or from non-debtor assets. | $0 | 100% |
| IV | Allowed General Unsecured Claims | Impaired, Entitled to Vote | The Record Holders of Allowed General Unsecured Claims shall share, on a pro-rata basis, in the net proceeds of assets transferred to the Liquidating Trust after satisfaction of all costs and expenses incurred by the Liquidating Trust in administering the Liquidating Trust Assets, which assets shall include, among other things, any remaining balance in the General Liability Fund after the satisfaction of all claims that would be entitled to payment from the General Liability Fund, pursuant to Section 5.12 of the APA between Purchaser and the Debtors. | $115,000,000 | 1.5 - 3.0% |

4

| V | Inter-company Claims | Impaired, Deemed to Reject | Holders of Claims in this Class will not receive any recovery on their Claims. | $0 | 0% |
| VI | Interests | Impaired, Deemed to Reject | Shareholders of the Debtors will retain no ownership interests in the Debtors under the Plan and such Interests shall be cancelled effective as of the Effective Date. | n/a | 0% |

### 1.3 Confirmation of the Plan.

**1.3.1. Requirements.** The requirements for Confirmation of the Plan are set forth in section 1129 of the Bankruptcy Code.

**1.3.2. Combined Confirmation Hearing.** To confirm the Plan, the Bankruptcy Court must hold the Combined Confirmation Hearing to determine whether the Disclosure Statement contains adequate information in accordance with section 1125 of the Bankruptcy Code and whether the Plan meets the requirements of section 1129 of the Bankruptcy Code. The Bankruptcy Court has set **[DATE]**, at **[TIME]** (Eastern Time), for the Combined Confirmation Hearing.

**1.3.3. Deadline to Object to Disclosure Statement and Confirmation of the Plan.** Any party-in-interest may object to the adequacy of the Disclosure Statement or Confirmation of the Plan and appear at the Confirmation Hearing to pursue such objection. The Court has set **[DATE]**, at 4:00 p.m. (Eastern Time), as the deadline for filing and serving such objections. Objections to Confirmation must be Filed in accordance with the provisions of paragraph [   ] of the Solicitation Procedures Order.

**1.3.4. Effect of Confirmation.** Except as otherwise provided in the Plan or in the Confirmation Order, Confirmation will effect the distribution of the Debtors' remaining assets and the dissolution of the Debtors. Confirmation serves to make the Plan binding upon the Debtors, all Holders of Claims and Interests and other parties-in-interest, regardless of whether they cast a Ballot to accept or reject the Plan.

**1.3.5. Effect of Failure to Confirm the Plan.** If the Plan is not confirmed by the requisite majorities in number and amount required by sections 1126 and 1129(a) of the Bankruptcy Code or if any of the other requirements for confirmation under the Bankruptcy Code are not met, the Debtors' Cases shall immediately be converted to cases under Chapter 7 of the Bankruptcy Code without further action of the Debtors, and the Bankruptcy Court shall enter an Order which shall be submitted to the Bankruptcy Court under certification of counsel. Section 1112(a) of the Bankruptcy Code governs the voluntary conversion from Chapter 11 to Chapter 7 and provides that a debtor may convert a Chapter 11 case to a Chapter 7 case at any time as of right, except in certain circumstances inapplicable here.

### 1.4 Voting on the Plan.

**1.4.1. Impaired Claims or Interests.** Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Impaired Classes that receive a payment or distribution under the Plan may vote on the Plan. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable or contractual rights of the Holders of such Claims or Interests treated in such Class. The Holders of Claims not Impaired by the Plan (Class I — Prepetition Secured Lender Claims, Class II--Other Secured Classes, Class III — Non-Tax Priority Claims, and Unclassified Claims ) are deemed to accept the Plan and do not have the right to vote on the Plan. The Holders of Claims or Interests in any Class which will not receive any payment or distribution or retain any property pursuant to the Plan (Class V — Intercompany Claims and Class VI — Interests) are deemed to reject the Plan and do not have the right to vote.

5

**1.4.2.    Eligibility to Vote on the Plan.**  Unless otherwise ordered by the Bankruptcy Court, only Record Holders of Allowed Class IV Claims may vote on the Plan.

**1.4.3.    Voting Procedure and Ballot Deadline.**  To ensure your vote is counted you must (i) complete the Ballot, (ii) indicate your decision either to accept or reject the Plan in the boxes provided in Item 1 of the Ballot, and (iii) sign and return the Ballot to the address set forth on the Ballot (please note that envelopes and prepaid postage have not been included with the Ballot). **BALLOTS SENT BY FACSIMILE TRANSMISSION ARE NOT ALLOWED AND WILL NOT BE COUNTED.**

Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has ordered that original Ballots for the acceptance or rejection of the Plan must be received by the Balloting Agent on or before **[DATE]**, at 4:00 p.m. (Eastern Time). Please refer to the Solicitation Procedures Order posted on the Noticing Agent Website for further voting procedures and rules.

1.5    **Acceptance of the Plan.**  As a Creditor, your acceptance of the Plan is important. In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Plan, or the Plan must qualify for cramdown of any non-accepting Class pursuant to section 1129(b) of the Bankruptcy Code. At least one impaired Class, excluding the votes of insiders, must actually vote to accept the Plan. **However, please be advised that if no Holder of a Class IV Claim exercises its right to accept or reject the Plan, Class IV shall be deemed to have accepted the Plan.** YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY MAIL THE BALLOT ATTACHED TO THE NOTICE. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.

2.    **THE DEBTORS.**

2.1    **Description of Debtors, Debtors' History, and Debtors' Business.**  IPC is a wholly owned subsidiary of SNH. SNH's principal asset is its equity interest in IPC. SNH is also the sole shareholder of IPC's non-debtor sister corporations, Uniformity, Inc., an Illinois corporation ("Uniformity"), and IPC International Realty Company, LLC, an Illinois limited liability company ("Realty"). In addition, IPC is the sole shareholder of IPC Technologies Inc., an Illinois corporation ("Technologies"). None of these entities has sought relief under the Bankruptcy Code. Uniformity, Realty, and Technologies provided ancillary services or held assets related to the Debtors' business. Uniformity was a public safety uniform and equipment company that provided approximately 99% of the uniforms for IPC's guard force. Realty held the real property used by SNH, IPC, and Uniformity. Technologies provided CCTV installation services. None of these entities continues to operate.

IPC was a leading provider of comprehensive security services and programs to both public and private venues across the United States. IPC's services included uniformed and armed security services, security consulting, K-9 services, and specialty training. IPC was also the leading provider of unarmed security services for shopping centers, and as of the Petition Date, provided security services at approximately 350 shopping center locations. IPC was widely recognized for revolutionizing the shopping center security industry by pioneering every commonly used security program utilized today in America's shopping centers.

As of the Petition Date, the Debtors, along with their non-debtor affiliates Realty, Uniformity, and Technologies, were indebted under the Prepetition Credit Agreement with PrivateBank, as administrative agent for the lenders thereunder. Pursuant to the Prepetition Credit Agreement, PrivateBank made loans to Borrowers, Realty, IPC, Technologies, and Uniformity as follows: (a) a

revolving loan with an outstanding principal balance as of the Petition Date of $6,949,303.73 ("Revolving Loans"); (b) a term loan with an outstanding principal balance as of the Petition Date of $4,373,333.28 ("Mortgage Term Loan"); (c) a term loan with an outstanding principal balance as of the Petition Date of $6,017,836.54 ("ESOP Term Loan"); and (d) letters of credit with an outstanding face amount as of the Petition Date of $2,381,865.00 ("Letters of Credit", together with the Revolving Loans, Mortgage Loan, ESOP Term Loan, Letters of Credit and all accrued and unpaid interest, fees and expenses, collectively referred to as the "Obligations").

As of the Petition Date, the Debtors were also indebted under loans from their individual shareholders, Donald Lantz and Howard Kaplan with an outstanding balance of approximately $1,652,578.36.

The Debtors historically operated a financially sound and profitable business since commencement of operations in 1978. For fiscal year, 2012, the Debtors generated earnings before interest, taxes, depreciation, amortization, and rent (EBITDAR) of $3,191,169.

Since 2008, major players providing security staffing to shopping centers (including IPC) were confronted with compressed margins and decreased deployment as shopping mall owners and operators retrenched slightly in an attempt to counter the broader macroeconomic malaise affecting the U.S., and more specifically, the U.S. consumer. In addition, IPC was impacted due to the funding of its loss-generating UK-based operation which was sold in 2010 (the Debtors estimate that they utilized $6 to $7 million of liquidity during this period to fund their UK operation). As a result of this industry-wide phenomenon and the funding of the UK operation, IPC was faced with tightened liquidity and was forced to look inward and evaluate key aspects of its business. After a thorough review, Company management, along with its advisor, Silverman Consulting Group, LLC, set out on a path to implement a sweeping number of liquidity and profitability-improving strategic initiatives.

A typical contract to provide security staffing services in a shopping center requires that the security provider indemnifies the mall owner/operator for a wide variety of claims. In many instances, even if the security company is not already named in the suit, it is still contractually required to indemnify the owner/operator. These contractual liabilities became a significant problem for the Debtors. Additionally, prior to June 30, 2011, the self-insured retention on the Company's general liability policy was $1,000,000 (i.e., the Company was responsible for the first $1,000,000 of any claim, whether against IPC itself or its customer). For some time prior to June 30, 2011, IPC had tried to lower its SIR but its insurance broker, Marsh, assured the Company that such a policy was not available. In Spring 2011, IPC was able to procure a new general liability policy that lowered the SIR from $1,000,000 per claim to $100,000 per claim, along with a new automobile liability policy that lowered the SIR from $100,000 per claim to $1,000 per claim. This change had a material impact on the Company's free cash flow generation. Based on checks paid for general liability claims in FY2011, the reduction in SIR from $1,000,000 to $100,000 would have saved the company approximately $2.8 million of cash in FY 2011 alone.

A further description of the Debtors' corporate history, their business, their prepetition debt structure and the challenges that led to the commencement of the Cases can be found in the *Declaration of Scott M. Strong, Chief Financial Officer of IPC International Corporation, in Support of Chapter 11 Petitions and First Day Pleadings* (D.I. 3), which was filed on the Petition Date.

2.2    **Debtors' First Day Motions and DIP Loans.** On the Petition Date, the Debtors filed certain motions requesting authority to pay certain prepetition obligations, including: (i) employee obligations (D.I. 5); (ii) insurance obligations (D.I. 10); (iii) tax and regulatory obligations (D.I. 6); (iv) corporate credit and gas cards (D.I. 9); and (v) customer program obligations (D.I. 8) (collectively, the

7

"Prepetition Motions"). On August 13, 2013, the Bankruptcy Court granted the relief sought in the Prepetition Motions on an interim basis, and on September 3, 2013, the Bankruptcy Court granted the relief sought in the Prepetition Motions on a final basis. Additionally, PrivateBank extended secured postpetition financing on a superpriority basis to the Debtors (the "DIP Obligations"). On September 4, 2013, the Bankruptcy Court entered a Final Order (D.I. 148) approving the postpetition financing.

2.3    **Sale of Substantially All of the Debtors' Assets.** On August 10, 2013, the Debtors filed a motion seeking approval of (i) certain bid procedures and (ii) the sale of substantially all of the Debtors' Assets (D.I. 21) (the "Sale Motion") to the Purchaser, or another High Bidder (as defined in the Sale Motion) following an auction.

Pursuant to the order approving the Sale Motion, the Debtors conducted an auction on October 2, 2013, commencing at 10:00 a.m. prevailing central time at the offices of Proskauer Rose LLP, 70 W. Madison Street, Chicago, Illinois and concluding on October 8, 2013 at 9:45 p.m. prevailing eastern time, at the offices of Potter Anderson Corroon LLP, 1313 North Market Street, Wilmington, Delaware for the Debtors' Assets. Two Qualified Bidders (as defined in the Sale Motion), the Purchaser and Allied Security Holdings, LLC, attended and participated in the bidding at the Auction. At the conclusion of the auction on October 8, 2013, the Debtors and PrivateBank determined that the Purchaser's amended bid of $25,400,000, including certain other amendments to the APA, constituted the highest or otherwise best bid for the Debtors' Assets. On October 17, 2013, the Court entered the Sale Order approving the sale of substantially all of the Debtors' Assets to Purchaser and the APA.

The Purchase Price included[3]: (i) substantially all of the Debtors' Assets used in operation of the Debtors' standing guard and patrol business, all as more fully described in Section 2.1 of the APA; (ii) the assumption of specified obligations of IPC under certain contracts with customers of its standing guard and patrol business, as amended pursuant to the APA (including the obligation to establish the General Liability Fund as provided in Section 5.12 of the APA); (iii) assumption of specified liabilities of IPC under certain capital equipment leases and other leases and contracts designated by the Purchaser, all as described in greater detail in Sections 2.1, 2.3 and 2.5 of the APA; and (iv) other than liabilities described under and specifically listed in Section 2.3 of the APA, the Purchaser did not assume any of the Debtors' pre-closing liabilities. After the Closing Date, the Debtors ceased retail operations and began winding up their affairs.

On November 22, 2013, the Debtors and the Purchaser entered into the Second Amendment to APA, filed on December 11, 2013 (D.I. 321-1) (the "Second Amendment"). The Second Amendment created two Purchase Price holdbacks. First, the Second Amendment provided for a $1 million holdback (the "JLL Holdback") from the purchase to protect the Purchaser against the risk of diversion of JLL business away from the Purchaser after the Closing Date to be released to the Debtors in the event they entered into a settlement Kenneth Hamilton, a former officer and director of the Debtors, that included a valid and enforceable noncompete and nonsolicitation covenant with respect to JLL through and including at least the 18 month anniversary of the Closing Date and reasonably acceptable to the Purchaser. After commencing an adversary proceeding against Mr. Hamilton (Adv. Pro. No. 13-51417), the Debtors, the Purchaser and Mr. Hamilton entered into a settlement agreement, approved by order of the Bankruptcy Court on March 7, 2014, which allowed the Debtors to obtain release of the JLL Holdback. *Order: (I) Approving Stipulation Resolving Claims Between The Parties; and (II) Dismissing this Adversary Proceeding* [Adv. D.I. 57].

---

3        The description is intended only as a summary. Please refer to the APA for a more detailed description of its terms and conditions.

The Second Amendment also provided for a holdback in the approximate amount of $1.8 million on account of the Debtors' former customers who had as of the Closing Date failed to sign an amendment to their service agreements with the Purchaser (the "Unsigned Customer Holdback"). The Debtors are entitled to the Unsigned Customer Holdback, or a portion thereof, to the extent such unsigned customers either signed a customer contract amendment with the Purchaser post-Closing Date, or maintained their business with the Purchaser at substantially the same revenue level. The Debtors have obtained the release of approximately $560,000 of the Unsigned Customer Holdback as of the filing of this Disclosure Statement. The Debtors will be entitled to the balance of the Unsigned Customer Holdback on May 25, 2015, the eighteen-month anniversary of the Closing Date.

The Debtors' remaining Assets presently consist of approximately $270,000 in Cash, certain claims against former customers of the Debtors for unpaid accounts receivable, the Debtors' residual interest in the General Liability Fund, the Debtors' rights to recover cash collateral on deposit with two of its former workers' compensation carriers, and the remainder of the Unsigned Customer Holdback. The Debtors believe that the Allowed Class I Claims, Allowed Class II Claims, Allowed Class III Claims, and Allowed Unclassified Claims are either Assumed Liabilities, have been paid by the Debtors in the ordinary course of business, or will be paid by the Debtors prior to the Effective Date. Accordingly, the Debtors anticipate that a substantial amount of the remaining Assets will be available for distribution to the Record Holders of Allowed Class IV Claims on a *pro rata* basis.

3.      **SUMMARY OF THE PLAN.**

3.1      **Purpose of the Plan.**      The Debtors proposed the Plan, in consultation with the Committee, over the alternative of converting the Debtors' bankruptcy cases to Chapter 7 of the Bankruptcy Code because the Debtors believe that: (i) the Plan ensures a more orderly, more timely liquidation and distribution of the Debtors' remaining Assets; (ii) establishes the Liquidating Trust to facilitate the estates' recovery of any value remaining in the Unsigned Customer Holdback and the General Liability Fund for the benefit of the Debtors' unsecured creditors; and (iii) the Plan avoids unnecessary costs to the Debtors' estates which would accrue should the Debtors' bankruptcy cases be converted to Chapter 7 of the Bankruptcy Code. For these reasons, both the Debtors and the Committee are in favor of the Plan.

3.2      **Classification of Claims and Interests under the Plan.**      All Allowed Claims and Interests, except the Allowed Unclassified Claims, are placed in the Classes set forth in Article I of the Plan.      In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims and Priority Tax Claims have not been classified. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

3.3      **Classification and Treatment of Allowed Class IV General Unsecured Claims.**      As set forth in Article I of the Plan, the Record Holders of Class IV Allowed General Unsecured Claims shall share, on a *pro rata* basis, in the proceeds of the Liquidating Trust Assets transferred to the Liquidating Trust as described in Section 2.3 above. The Debtors estimate that the aggregate amount of Allowed Class IV Claims is approximately $115,000,000 and that Holders of such Claims will receive a recovery of 1.5 – 3.0%.

3.4      **Implementation and Execution of the Plan.**

3.4.1.      **Effective Date.**      As set forth in Article II of the Plan, the Plan shall become effective on the date which is the first Business Day on which each condition set forth in Article IV of the

9

Plan has been satisfied or waived as set forth therein. Upon the occurrence of the Effective Date, the Debtors will file and post on the Noticing Agent Website a notice of confirmation and occurrence of the Effective Date. You will not receive further notice of the occurrence of the Effective Date and should monitor the Noticing Agent Website for such notice.

3.4.2.    **Summary of Means of Implementation and Execution of the Plan.** Article II of the Plan sets forth the means by which the Plan shall be implemented and executed, including the establishment of the Liquidating Trust, Distribution, the dissolution of the Debtors, the resignation of the Debtors' directors and officers, and objections to and allowance of Claims for purposes of the Distribution.

3.4.3.    **Appointment of Liquidating Trustee**. As of the Effective Date, the Liquidating Trustee shall be authorized to take all actions consistent with the Plan, the Liquidating Trust Agreement, and applicable law.

3.4.4.    **Funding of the Liquidating Trust.** On the Effective Date, the Debtors shall transfer all Cash of the Estates to the Liquidating Trust Account and those funds shall vest automatically in the Liquidating Trust.

On the Effective Date, all other Liquidating Trust Assets of the Estates, **including**, **without limitation**, all Avoidance Actions and other Claims, and rights of setoff, and interests in any Policy, shall be deemed to be transferred to the Liquidating Trust. The Debtors may, to the extent desirable or helpful, execute any contribution, assignment or other agreement memorializing the transfer of Liquidating Trust Assets to the Liquidating Trust. On and after the Effective Date, the Debtors and the Liquidating Trustee shall take all steps necessary to transfer all Liquidating Trust Assets of the Estates to the Liquidating Trust.

The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for authority to effectuate the transfers and related actions set forth immediately above. The Liquidating Trust Assets will be treated for tax purposes as being transferred by the Estates to the Holders of Allowed Class IV Claims (the "Beneficiaries") pursuant to the Plan in exchange for their Allowed Claims and then by the Holders of Allowed Class IV Claims to the Liquidating Trust in exchange for beneficial interests in the Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the assets to the Liquidating Trust, the Liquidating Trust shall succeed to all of the Debtors' right, title and interest in the Liquidating Trust Assets, and neither the Debtors nor their estates will have any further interest in or with respect to the Liquidating Trust.

3.4.5.    **Rights and Powers of the Liquidating Trustee.** The Liquidating Trustee shall be deemed the Debtors' estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and the rights and powers set forth in the Plan and the Liquidating Trust Agreement, including, without limitation, but subject to the authority of the Bankruptcy Court as set forth in the Liquidating Trust Agreement, the rights to: (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) establish and administer the Liquidating Trust Account and any necessary reserves for Disputed Claims or other Claims; (3) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (4) employ and compensate professionals and other agents, provided, however, that any such compensation shall be made only out of the assets of the Liquidating Trust, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes; (5) conduct examinations in

10

accordance with Bankruptcy Rules 2004 or 7001 *et seq.* or otherwise in accordance with applicable law; (6) prosecute any and all causes of action, including Avoidance Actions, to the extent not otherwise settled or released in accordance with this Plan; (7) file customary quarterly reports with the Bankruptcy Court within forty-five (45) days of the end of the applicable quarterly period and serve copies of such reports on Persons requesting notice thereof; (8) pay quarterly fees when due to the Office of the U.S. Trustee until the earliest to occur of the Chapter 11 Cases being closed, converted or dismissed; and (9) sell, abandon, allow to lapse or otherwise use Policies.

The Plan shall be considered a motion for authority to destroy and/or abandon property of the Debtors' estates. Without further order of the Bankruptcy Court (other than the Confirmation Order), the Liquidating Trustee may: (i) in his sole and absolute discretion, retain or destroy documents, files and records of the Estates; and (ii) abandon property of the Estates that he deems burdensome or of immaterial value to the Estates or the Liquidating Trust.

3.4.6. **Substantive Consolidation.** Because all remaining creditors are creditors of IPC, substantive consolidation is the best, and only, means by which SNH can exit the case other than dismissal or conversion. In this case, conversion of SNH would be pointless as there are no remaining creditors of that debtor. Therefore, as set forth in Section 2.11 of the Plan, for the sole purpose of implementing and executing the Plan only, all Assets of and Claims against the Debtors will be deemed to be substantively consolidated. As a result, Claims filed against multiple Debtors seeking recovery of the same debt shall only receive a single Distribution from the consolidated Debtors' estates to the extent such Claim is an Allowed Claim. Intercompany Claims will be disregarded for both voting and distribution purposes. No Creditors are adversely affected by such consolidation as only the Holders of Allowed Class IV General Unsecured Claims against the operating Debtor, IPC, shall share in the proceeds of assets transferred to the Liquidating Trust.

3.4.7. **General Liability Fund.** As part of the sale of IPC's assets to Purchaser, Purchaser deposited $7,000,000 of the purchase price in a General Liability Fund for the purpose of funding IPC's defense and indemnification obligations to those customers that agreed to sign customer contract amendments with the Purchaser, for any and all claims arising against such customers prior to the closing of the sale of IPC's assets. The General Liability Fund is currently being administered by Peter Kravitz, as trustee. As of the date hereof, Mr. Kravitz has informed IPC that there is approximately $5,000,000 remaining in the General Liability Fund. One of the principal responsibilities of the Liquidating Trustee will be to monitor the use of the remaining assets of the General Liability Fund and ultimately recover any residual sum upon the completion of the defense of all remaining claims against Purchase's customers as they existed on the closing date. The Debtors believe that the Liquidating Trustee, with the assistance and knowledge of the Committee's professionals, will be far more effective at maximizing such residual value than a newly appointed chapter 7 trustee would be. On this basis, and given the substantial amount remaining in the General Liability after even after the passage of 18 months since the closing date, the Debtors believe that the Liquidating Trustee could recover up to 50% of the remaining amount in the fund, or approximately $2,500,000 (although, of course, unknown claims could be asserted by presently unknown tort plaintiffs that could reduce the recovery to zero).

3.4.8. **The Debtors' Abandonment, Disposal and/or Destruction of the Records.** As set forth in Section 2.12 of the Plan, at the direction and discretion of the Liquidating Trustee, the Debtors shall be authorized to abandon all originals and/or copies of documents and business records pursuant to section 554 of the Bankruptcy Code. With the closing of the Debtors' sale and the full wind down of all of the Debtors' operations, the Debtors have identified certain documents, books and records (the "Records") that are outdated, burdensome, and/or of inconsequential value to the Debtors' estates and are not necessary or relevant to: (i) the Debtors' performance of their duties and obligations, (ii) any pending litigation, (iii) the filing of any tax returns, (iv) the resolution of Claims against the Debtors, and (v) any

11

potential causes of action that the Debtors may have. To complete the Debtors' wind down, avoid the incurrence of unnecessary storage costs and facilitate the consolidation and preservation of any pertinent documents, books and records, the Debtors wish to proceed with the abandonment, disposal and/or destruction of the Records.

Section 554 of the Bankruptcy Code provides that, *inter alia,* "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Courts have held that a debtor-in-possession's decision to abandon property of the estate rests on the debtor's business judgment. *See, e.g., In re Cult Awareness Network, Inc.,* 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997). The Debtors have concluded in their business judgment that they no longer need to retain certain documents, *i.e.,* the Records, currently in their possession, custody or control.[4]

3.5     **Executory Contracts and Unexpired Leases.** As stated in Article III of the Plan, the Debtors believe that all executory contracts and unexpired leases of the Debtors were assumed and assigned, or rejected, during the Cases. Accordingly, Article III of the Plan is included out of an abundance of caution and (i) provides that all executory contracts and unexpired leases of the Debtors which are not assumed and assigned, or rejected, prior to the Confirmation Date, if any, shall be deemed rejected and (ii) sets forth procedures for asserting and resolving Rejection Claims, if any.

3.6     **Conditions Precedent to Confirmation and Consummation of the Plan.** Article IV of the Plan sets forth the conditions that must occur prior to both Confirmation of the Plan and the occurrence of the Effective Date. This Article also describes the ability of the Debtors and the Committee to together waive such conditions, as well as the effect of non-occurrence of the conditions to the Effective Date, including the vacation of the Confirmation Order. If the Confirmation Order is vacated pursuant to section 4.4 of the Plan, (i) the Plan shall be null and void in all respects; and (ii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights of the Debtors or any other party in interest.

3.7     **Miscellaneous Provisions.** Article V of the Plan contains several miscellaneous provisions, including: (i) the retention of jurisdiction by the Bankruptcy Court over certain matters following the Confirmation Date; (ii) the Debtors' payment of statutory fees pursuant to 28 U.S.C. § 1930; (iii) the dissolution of the Committee; and (iv) the termination of the Balloting Agent, in its capacity as claims, noticing and balloting agent. **Additionally, section 5.12 of the Plan governs the exculpation and limitation of liability of certain parties with respect to the Cases. Please review this provision carefully.**

3.8     **Final Fee Hearing and Final Decree.**

3.8.1.     **The Professional Fee Claim Bar Date and the Final Fee Hearing.** Article VI of the Plan describes the Professional Fee Claim Bar Date and the Final Fee Hearing. The Debtors will file and post on the Noticing Agent Website a notice of the Professional Fee Claim Bar Date and the Final Fee Hearing. You will not receive further notice of the Professional Fee Claim Bar Date, the Professional

---

[4]     The Debtors shall not be required to comply with applicable local, state and federal statutes, rules and ordinances except to the extent that compliance is necessary to ensure the government's interest in public health and safety. *See generally Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection,* 474 U.S. 494 (1986). Additionally, any action by any local, state or federal agency, department or governmental authority or any other entity to prevent, interfere with, or otherwise hinder the Debtors' abandonment, disposal and/or destruction of the Records shall be enjoined.

Fee Claims or the Final Fee Hearing and should monitor the Noticing Agent Website for such notice.

      3.8.2.  **Entry of the Final Decree and Closing of the Cases.**  As set forth in Article VI of the Plan, subsequent to the Effective Date, the Final Fee Hearing and the Debtors' fulfillment of the standards for the closing of the Cases, Debtors' counsel shall File a proposed form of order under certification of counsel (the "Final Decree Certification") requesting the entry of a Final Decree pursuant to section 350(a) of the Bankruptcy Code. Such Final Decree shall close the Cases, which include: (i) *In re IPC International Corporation* (Case No. 13-2050); and (ii) *In re The Security Network Holdings Corporation* (Case No. 13-12051).  At that time, the Debtors believe that their estates will be fully administered as: (i) the Confirmation Order will be a Final Order; (ii) the Liquidating Trust shall have been established; and (iii) all motions, contested matters and adversary proceedings will be resolved.

      Section 350(a) of the Bankruptcy Code provides that a case shall be closed "after an estate is fully administered and the court has discharged the trustee." 11 U.S.C. § 350(a).  Likewise, Rule 3022 of the Bankruptcy Rules provides that, "after an estate is fully administered in a chapter 11 reorganization, the court . . . shall enter a final decree closing the case."  Fed. R. Bankr. P. 302.  Further, Local Rule 5009-1 provides that, "upon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been substantially consummated provided that all fees under 28 U.S.C. § 1930 have been paid." Del. Bankr. L.R. 5009-1(a).  Based upon the foregoing, the Debtors believe that the Bankruptcy Court's entry of the Final Decree shall be appropriate and necessary subsequent to the Effective Date upon submission of the Final Decree Certification.  *See In re Anne,* 2005 WL 1668396, at *2 (Bankr. D. Del. June 24, 2005) (citations omitted).

4.      **FEASIBILITY.**

    4.1     **Financial Feasibility Analysis.**

      4.1.1.  **Bankruptcy Code Standard.**  The Bankruptcy Code requires that, in order to confirm a plan, the Bankruptcy Court must find that confirmation of such plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor(s) unless contemplated by the plan.

      4.1.2.  **No Need for Further Reorganization of Debtors.**  The Plan provides for the liquidation and distribution of all of the Debtors' Assets. Accordingly, the Debtors believe that all Plan obligations will be satisfied without the need for further reorganization of the Debtors.

5.      **BEST INTERESTS OF CREDITORS AND ALTERNATIVES TO PLAN.**

    5.1     **Chapter 7 Liquidation.**

      5.1.1.  **Bankruptcy Code Standard.**  Notwithstanding acceptance of a plan by the requisite number of creditors in an impaired class, the Bankruptcy Court must still independently determine that such plan provides each member of each impaired class of claims and interests a recovery that has a value at least equal to the value of the recovery that each such Person would receive if the debtor was liquidated under Chapter 7 of the Bankruptcy Code on the effective date of such plan.

      5.1.2.  **Plan is in the Best Interests of Creditors.**  Notwithstanding acceptance of the Plan by a voting Impaired Class, in order to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each Holder of a Claim or Interest in any such Impaired Class which has not voted to accept the Plan. Accordingly, if an Impaired Class does not vote unanimously to accept the Plan, the best interests test requires the Bankruptcy Court to find that the Plan provides to each Holder of

a Claim in such Impaired Class a recovery on account of the Holder's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the recovery that each such Holder would receive if the Debtors were liquidated under Chapter 7.

As set forth in the Liquidation Analysis, attached hereto as **Exhibit C**, the Debtors believe that the Plan satisfies the best interests test, because, among other things, the recoveries expected to be available to Holders of Allowed Claims under the Plan will be greater than the recoveries expected to be available in a Chapter 7 liquidation.

In a typical Chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets for distribution to creditors in accordance with the priorities set forth in the Bankruptcy Code, Generally, secured creditors are paid first from the proceeds of sales of the properties securing their liens. If any assets are remaining in the bankruptcy estate after satisfaction of secured creditors' claims from their collateral, administrative expenses are next to receive payment. Unsecured creditors are paid from any remaining sales proceeds, according to their respective priorities. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims in relationship to the total amount of allowed claims held by all unsecured creditors with the same priority. Finally, equity interest holders receive the balance that remains, if any, after all creditors are paid.

Substantially all of the Debtors' Assets have already been liquidated during the Cases through the sale consummated by the Debtors pursuant to the Sale Order. The Plan effects a liquidation of the Debtors' remaining Assets through the establishment of the Liquidating Trust. Although a Chapter 7 liquidation would have the same ultimate goal, the Debtors believe that the Plan provides the best source of recovery to holders of Allowed Unsecured Claims. Liquidating the Debtors' estates under Chapter 7 would not provide a timely distribution to holders of Unsecured Claims and would likely provide a smaller distribution to Holders of Allowed Unsecured Claims because of the fees and expenses that would be incurred during a Chapter 7 liquidation, including potential added time and expense incurred by the trustee and any retained professionals in familiarizing themselves with the Cases.

Accordingly, the Debtors believe that the Plan is in the best interests of Creditors.

5.2    **Continuation of the Bankruptcy Case.** The Debtors are not a going concern and thus there is no benefit to remaining in Chapter 11 beyond confirmation of the Plan.

5.3    **Alternative Plan(s).** The Debtors do not believe that there are any alternative plans. The Debtors believe that the Plan, as described herein, enables Holders of Claims to realize the greatest possible value under the circumstances, and that, compared to any alternative plan, the Plan has the greatest chance to be confirmed and consummated.

6.    **RISK FACTORS.**

Holders of Claims who are entitled to vote on the Plan should read and carefully consider the following factors, as well as the other information set forth in this Disclosure Statement and the Plan, before deciding whether to vote to accept or reject the Plan.

6.1    **Certain Bankruptcy Considerations.** Even if the Voting Class votes to accept the Plan, and the requirements for "cramdown" are met with respect to any Impaired Class deemed to have rejected the Plan, the Court may exercise substantial discretion and may choose not to confirm the Plan. Section 1129 of the Bankruptcy Code requires, among other things, that the value of distributions to dissenting Holders of Claims or Interests may not be less than the value such Holders would receive if the Debtors

14

were liquidated under Chapter 7 of the Bankruptcy Code.  Although the Debtors believe that the Plan will meet such requirement, there can be no assurance that the Court will reach the same conclusion.

6.2   **Claims Estimation.**  There can be no assurance that the estimated amount of Claims set forth in the Plan is correct, and the actual allowed amounts of Claims may differ from the estimates. Any value given as to the Claims against and the Assets of the Debtors is based upon an estimation of such value.

7.   **TAX CONSEQUENCES OF THE PLAN.**

THE DEBTORS HAVE NOT REQUESTED A RULING FROM THE IRS OR AN OPINION OF COUNSEL WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN. THUS, NO ASSURANCE CAN BE GIVEN AS TO THE TAX CONSEQUENCES OF THE PLAN. EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISOR FOR THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

8.   **CONCLUSION.**

It is important that you exercise your right to vote on the Plan. It is the Debtors' belief and recommendation that the Plan fairly and equitably provides for the treatment of all Claims against and Interests in the Debtors.


IN WITNESS WHEREOF, the Debtors have executed this Plan this 28th day of April, 2015

IPC INTERNATIONAL CORPORATION and
THE SECURITY NETWORK HOLDINGS
CORPORATION

By: /s/Howard Kaplan _____
      Name: Howard Kaplan
      Title: President and Sole Director

PAC 1187928v.2

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| IPC International Corporation, *et al.*[1] | ) | Cases No. 13-12050 (MFW) |
|  | ) | Jointly Administered |
| Debtors. | ) |  |

## FIRST AMENDED JOINT PLAN OF LIQUIDATION OF IPC INTERNATIONAL CORPORATION AND THE SECURITY NETWORK HOLDINGS CORPORATION

**POTTER ANDERSON & CORROON LLP**
Jeremy W. Ryan (DE Bar No. 4057)
1313 North Market Street, Sixth Floor
Wilmington, DE 19801
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192

*Co-Counsel for the Debtors and Debtors in Possession*

-and-

**PROSKAUER ROSE LLP**
Paul V. Possinger
Brandon W. Levitan
Three First National Plaza
70 West Madison, Suite 3800
Chicago, Illinois  60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

*Counsel for the Debtors and Debtors in Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are:  IPC International Corporation (2698); and The Security Network Holdings Corporation (7985).  The address of each of the Debtors is 2111 Waukegan Road, Bannockburn, IL 60015.

The above captioned debtors and debtors-in-possession (together, the "Debtors") hereby file their First Amended Joint Plan of Liquidation of IPC International Corporation and the Security Network Holdings Corporation. **PLEASE REVIEW THIS DOCUMENT CAREFULLY AND CONSULT WITH YOUR LEGAL AND TAX ADVISORS AS APPROPRIATE.**

## Definitions of Terms Utilized in the Plan.

Unless the context otherwise requires or a term is defined within the Plan itself or in the Disclosure Statement for Debtors' Joint Plan of Liquidation (the "<u>Disclosure Statement</u>"), the following terms shall have the respective meanings set forth below, except as expressly provided otherwise.

**Administrative Claim:** Any cost or expense of administration of the Cases allowed by the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code, excluding Professional Fee Claims.

**Allowed Claim:** Any Claim (i)(a) for which a proof of claim was timely Filed with the Bankruptcy Court by the Bar Date; or (b) that is listed in the Schedules and not listed as disputed, contingent or unliquidated as to amount, and, in either case, as to which no objection to the allowance thereof has been Filed by the Claim Objection Deadline; or (ii) which has otherwise been allowed by a Final Order; or (iv) Claims estimated under Section 502(c). Unless otherwise specified in the Plan, an "Allowed Claim" shall not include: (i) untimely Filed Claims or Administrative Claims, (ii) interest on the principal amount of the Allowed Claim from and after the Petition Date, (iii) any punitive damages, or (iv) Claims which are Assumed Liabilities.

**Allowed Class . . . Claim:** An Allowed Claim in the designated Class.

**APA:** That certain Asset Purchase Agreement between the Debtors and Purchaser, dated August 9, 2013, as subsequently amended from time to time.

**Assets:** Any and all right, title, and interest of any of the Debtors in and to property of whatever type or nature.

**Assumed Liabilities:** Certain liabilities of the Debtors assumed by the Purchaser pursuant to the Sale Order and the APA.

**Avoidance Actions:** Any and all actions, proceedings, accounts, controversies, agreements, promises, claims, and rights of each Debtor and its estate ("<u>Causes of Action</u>") to avoid or recover a transfer of property of any of the Debtors' estates or an interest of any of the Debtors in property, including, without limitation, actions arising under sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal or common law, including fraudulent transfers, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date, except those Avoidance Actions previously waived by the Debtors pursuant to any Final Order or purchased by the Purchaser pursuant to the Sale Order.

**Balloting Agent:** Kurtzman Carson Consultants, LLC, or such other entity determined by the Debtors in consultation with the Committee.

**Bankruptcy Code:** Title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, if such amendments are made applicable to the Cases.

**Bankruptcy Court:** The United States Bankruptcy Court for the District of Delaware, or in the event such court ceases to exercise jurisdiction over any Case, such court or adjunct thereof that exercises

jurisdiction over such Case in lieu of the United States Bankruptcy Court for the District of Delaware.

**Bankruptcy Rules:**  The Federal Rules of Bankruptcy Procedure enacted pursuant to 28 U.S.C. § 2075, as they have been or may hereafter be amended.

**Bar Date:**  The date(s) by which a proof of claim or request for payment of Administrative Claim must be Filed pursuant to the Revised Order Establishing the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof (D.I. 258). Specifically, December 16, 2013 (as to all pre-petition creditors other than Governmental Units) or February 7, 2014 (as to Governmental Units).

**Business Day:**  Any day except a Saturday, Sunday or any day on which commercial banks in the State of Delaware are authorized or required by applicable law to close.

**Case:**  With respect to each Debtor, the Chapter 11 case initiated by such Debtor's Filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code (collectively, the "Cases").  The Cases are being jointly administered in the Bankruptcy Court as Bankruptcy Case No. 13-12050 pursuant to the Order Directing Joint Administration of Chapter 11 Cases (D.I. 35), entered by the Bankruptcy Court on August 13, 2013.

**Cash:**  Legal tender of the United States of America and equivalents thereof.

**Claim:**  A claim, as defined in section 101(5) of the Bankruptcy Code, against one of the Debtors (or all or some of them) whether or not asserted and whether or not such claim becomes an Allowed Claim.

**Claim Objection Deadline:**  means the date that is sixty (60) days from the Effective Date.

**Class:**  A category of Claims or Interests designated pursuant to the Plan.

**Class . . . Claim/Interest:**  The specific Class into which Claims or Interests are classified pursuant to the Plan.

**Closing Date:**  November 25, 2013, the date on which the Debtors closed on the sale of substantially all of the Assets pursuant to the Sale Order.

**Combined Confirmation Hearing:**  Collectively, the hearing or hearings held by the Bankruptcy Court on the adequacy of this Disclosure Statement and Confirmation of the Plan, as such hearing or hearings may be continued from time to time.

**Committee:**  The official committee of unsecured creditors of the Debtors appointed by the United States Trustee in the Cases pursuant to section 1102 of the Bankruptcy Code as its composition may be changed from time to time by addition, resignation or removal of its members.

**Confirmation:**  Entry by the Bankruptcy Court of the Confirmation Order.

**Confirmation Date:**  The date upon which the Confirmation Order is entered by the Bankruptcy Court.

**Confirmation Order:**  The Order of the Bankruptcy Court confirming the Plan.

**Creditor:**  a Holder of a Claim.

**Debtor:**    Individually, IPC International Corporation and The Security Network Holdings Corporation, each of which is a Debtor in its Case.

**Disallowed:**  A Claim or any portion thereof that is not an Allowed Claim.

**Disputed Claim:**  Any Claim, (i) proof of which has been Filed and to which an objection to the allowance thereof has been Filed prior to the Claim Objection Deadline and such objection has not been either (a) determined by a Final Order or (b) resolved under a settlement approved by Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019; (ii) which was scheduled as contingent, unliquidated or disputed on the Debtors' Schedules; or (iii) which has not been otherwise allowed by the Bankruptcy Court.

**Distribution:**    Any distribution of the Liquidating Trust's Cash to the Record Holders of Allowed Claims in Class IV, in accordance with the terms of the Plan and the Liquidating Trust Agreement.

**Effective Date:**  The date upon which the Plan becomes effective in accordance with its terms.

**File, Filed or Filing:**  File, filed or filing with the Bankruptcy Court or its authorized designee in the Cases.

**Final Decree:**  The Order entered pursuant to section 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Cases.

**Final Order:**  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such order, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

**General Unsecured Claim:**  Any Claim against a Debtor that is not a Secured Claim, an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Professional Fee Claim, an Intercompany Claim, or an Interest.

**General Liability Fund:**  The fund established for the benefit of certain of the Debtors' former customers pursuant to Section 5.12 of the APA.

**Holder:**  The Person that is the owner of record of a Claim or Interest, as applicable.

**Impaired:**  With respect to a Class of Claims or Interests, any Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**Intercompany Claim:**  Any Claim by a Debtor against another Debtor.

**Interest:** Either (i) the legal, equitable, contractual or other rights of any Person with respect to the preferred or common stock, or any other equity interest in any of the Debtors, including any other interest in or right to convert into such equity interest or (ii) the legal, equitable, contractual or other right of any Person to acquire or receive any of the foregoing.

**Liquidating Trust:** The Entity described in the Plan that will, as of the Effective Date, succeed to all of the Cash, accounts and other remaining Assets of the Estates subject to the terms of Plan and the Liquidating Trust Agreement.

**Liquidating Trust Account:** An account of the Liquidating Trust that will hold all Cash of the Liquidating Trust.

**Liquidating Trust Agreement:** means that certain agreement establishing and delineating the terms and conditions of the Liquidating Trust in the form attached hereto as Exhibit B.

**Liquidating Trust Assets:** All Assets held by the Debtors as of the Effective Date, including, without limitation, all Cash, Avoidance Actions and other Claims, and rights of setoff, and interests in any Policy, which shall be transferred to and deemed to vest in the Liquidating Trust on the Effective Date.

**Liquidating Trustee:** means [          ], not individually, but solely as the trustee of the Liquidating Trust, or any of his successors and assigns.

**Local Rules:** The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

**Non-Tax Priority Claim:** Any Claim entitled to priority under section 507 of the Bankruptcy Code other than an Unclassified Claim.

**Noticing Agent Website:** http://www.kccllc.net/ipc.

**Order:** An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Case or the docket of any other court of competent jurisdiction.

**Person:** a person as defined in section 101(41) of the Bankruptcy Code.

**Petition Date:** August 9, 2013, the date on which the Debtors Filed their respective petitions for relief in the Bankruptcy Court.

**Plan:** The Debtors' Joint Plan of Liquidation, as the same may hereafter be amended or modified.

**Prepetition Credit Agreement:** That certain Credit Agreement dated as of August 31, 2009, as amended, supplemented or otherwise modified, by and among, on the one hand, The Security Network Holdings Corp., IPC International Corporation, Uniformity, Inc., IPC International Realty Company, LLC, and IPC Technologies Inc., as the borrowers, and, on the other hand, PrivateBank as administrative agent, syndication agent and documentation agent for the lenders, and as the sole lender.

**Prepetition Secured Lender Claim:** Means the Allowed Class I Claim of PrivateBank under the Prepetition Credit Agreement.

**Priority Claim:** A Claim that is entitled to priority under section 507(a) of the Bankruptcy Code, other than an Administrative Claim, a Professional Fee Claim or a Priority Tax Claim.

**Priority Tax Claim:** A Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**PrivateBank:** The PrivateBank and Trust Company.

**Professional:** Any professional employed in the Cases pursuant to sections 327, 328 or 1103 of the Bankruptcy Code or any Professional or other Person seeking compensation or reimbursement of expenses in connection with the Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

**Professional Fee Claim:** A Claim of a Professional for compensation or reimbursement of costs and expenses relating to services performed from the Petition Date to the Effective Date.

**Professional Fee Claim Bar Date:** The date that is twenty-one (21) days after the Effective Date.

**Purchaser:** Universal Protection Services, LLC

**Record Date:** The Record Date shall be the date that the Plan is Filed.

**Record Holder:** The Holder of a Claim or Interest as of the Record Date.

**Sale Order:** The Order (A) Authorizing the Sale of Assets Free of Liens, Claims, Encumbrances, and Interests and (B) Authorizing and Approving the Assumption of Executory Contracts and Unexpired Leases in Connection with such Sale (D.I. 260), entered by the Bankruptcy Court on October 17, 2013.

**Scheduled Claim:** Any claim set forth on the Schedules.

**Schedules:** With respect to any Debtor, the Schedules of Assets and Liabilities Filed by such Debtor, as such Schedules may be amended from time to in accordance with Bankruptcy Rule 1009.

**Secured Claim:** Either (i) a Claim that is secured by a lien on property in which the Debtors have an interest, which lien is valid, perfected and enforceable under applicable law or pursuant to a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of a Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, all as determined pursuant to section 506(a) of the Bankruptcy Code; or (ii) a Claim which is Allowed under the Plan as a Secured Claim.

**Solicitation Procedures Order:** that certain Order of the Bankruptcy Court: (i) setting a

combined hearing on the adequacy of this Disclosure Statement and Plan Confirmation; (ii) approving the form and manner of notice of the Combined Confirmation Hearing; (iii) approving procedures for the solicitation and tabulation of votes to accept or reject the Plan; and (iv) approving a deadline and procedures for objecting to the Disclosure Statement and Plan (D.I. [   ] ).

**Unclassified Claims:**  Claims that, pursuant to section 1123(a)(1) of the Bankruptcy Code, shall not be placed into a Class. Unclassified Claims include Administrative Claims, Professional Fee Claims and Priority Tax Claims.

**Unimpaired:**  With respect to a Class of Claims or Interests, any Class that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

**United States Trustee:**  The Office of the United States Trustee for Region 3.

**Voting Class(es):**  Class IV, which is Impaired and entitled to vote on the Plan.

## Article I
## TREATMENT AND CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

| Class | Type | Status Under Plan | Treatment | Estimated Aggregate Amount in Class ($) | Estimated Recovery of Class (%) |
|-------|------|-------------------|-----------|------------------------------------------|----------------------------------|
| I | Prepetition Secured Lender Claim | Unimpaired, Deemed to Accept | The Holder of the Allowed Prepetition Secured Lender Claim shall be paid by the Debtors the full amount of such Allowed Secured Claim in Cash on the Effective Date. As of the date hereof, the Prepetition Secured Lender Claim has been paid in full. | $0 | 100% |
| II | Other Allowed Secured Claims | Unimpaired, Deemed to Accept | Each Holder of an Other Allowed Secured Claim shall be paid by the Debtors the full amount of such Allowed Secured Claim in Cash on the Effective Date, or satisfied by return of collateral or other agreement between such Holder and Liquidating Trustee if Allowed after the Effective Date. | $0 | 100% |
| III | Allowed Non-Tax Priority Claims | Unimpaired, Deemed to Accept | Each Holder of an Allowed Priority Claim that has not been satisfied or is not an Assumed Liability shall be paid by the Debtor the full amount of such Allowed Priority Claim in Cash on the Effective Date or on the date on which such Allowed Priority Claim becomes due and payable pursuant to the terms thereof, the agreement upon which such Allowed Priority Claim is based, or any applicable Order of the Bankruptcy Court. As of the date hereof, the Debtors believe that all Allowed Non-Tax Priority Claims have been paid in full pursuant to applicable Court order or from non-debtor assets. | $0 | 100% |

| Class | Type | Status Under Plan | Treatment | Estimated Aggregate Amount in Class ($) | Estimated Recovery of Class (%) |
|-------|------|-------------------|-----------|----------------------------------------|--------------------------------|
| IV | Allowed General Unsecured Claims | Impaired, Entitled to Vote | The Record Holders of Allowed General Unsecured Claims shall share, on a pro-rata basis, in the net proceeds of assets transferred to the Liquidating Trust after satisfaction of all costs and expenses incurred by the Liquidating Trust in administering the Liquidating Trust Assets, which assets shall include, among other things, any remaining balance in the General Liability Fund after the satisfaction of all claims that would be entitled to payment from the General Liability Fund, pursuant to Section 5.12 of the APA between Purchaser and the Debtors. | $115,000.00 | 1.5-3.0% |
| V | Inter-company Claims | Impaired, Deemed to Reject | Holders of Claims in this Class will not receive any recovery on their Claims. | $0 | 0% |
| VI | Interests | Impaired, Deemed to Reject | Shareholders of the Debtors will retain no ownership interests in the Debtors under the Plan and such Interests shall be cancelled effective as of the Effective Date. | n/a | 0% |

1.1     **Allowed Unclassified Claims.** Each Holder of an Allowed Unclassified Claim that has not been satisfied previously or is not an Assumed Liability shall be paid by the Debtor the full amount of such Allowed Unclassified Claim, in Cash on or before the Effective Date or on the date on which such Allowed Unclassified Claim becomes due and payable pursuant to the terms thereof, the agreement upon which such Allowed Unclassified Claim is based, or any applicable Order of the Bankruptcy Court.

1.2     **Special Provision Governing Claims.** Nothing under this Plan shall affect the Debtors' rights and defenses in respect of any Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against such Claims.

1.3     **Cancellation of Claims and Interests.** Except as otherwise set forth in this Plan, and except for purposes of evidencing a right to the Distribution, on the Effective Date, all agreements and other documents evidencing the Claims or rights of any Creditor against the Debtors, including all notes, guarantees, mortgages, and all Interests shall be cancelled.

## Article II
## IMPLEMENTATION AND EXECUTION OF THE PLAN

2.1     **Effective Date.** The Plan shall become effective on the date which is the first Business Day on which each condition set forth in Article IV of the Plan has been satisfied or waived by the Debtors and the Committee as set forth therein.

2.2     **Implementation of the Plan.** The Plan will be implemented through the establishment of the Liquidating Trust pursuant to the execution of a Liquidating Trust Agreement in substantially the form attached to the Disclosure Statement as **Exhibit B**.

2.3     **Formation of the Liquidating Trust.** On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purposes of, among other things: (a) resolving all Disputed Claims, and (b) making all Distributions to the beneficiaries provided for under

the Plan. The Liquidating Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Article 301.7701-4(d).

2.4     **Appointment of Liquidating Trustee**. As of the Effective Date, the Liquidating Trustee shall be authorized to take all actions consistent with the Plan, the Liquidating Trust Agreement, and applicable law.

2.5     **Funding of the Liquidating Trust.** On the Effective Date, the Debtors shall transfer all Cash of the Estates to the Liquidating Trust Account and those funds shall vest automatically in the Liquidating Trust.

On the Effective Date, all other Liquidating Trust Assets of the Estates, **including**, **without limitation**, all Avoidance Actions and other Claims, and rights of setoff, and interests in any Policy, shall be deemed to be transferred to the Liquidating Trust. The Debtors may, to the extent desirable or helpful, execute any contribution, assignment or other agreement memorializing the transfer of Liquidating Trust Assets to the Liquidating Trust. On and after the Effective Date, the Debtors and the Liquidating Trustee shall take all steps necessary to transfer all Liquidating Trust Assets of the Estates to the Liquidating Trust.

The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for authority to effectuate the transfers and related actions set forth immediately above. The Liquidating Trust Assets will be treated for tax purposes as being transferred by the Estates to the Holders of Allowed Class IV Claims (the "Beneficiaries") pursuant to the Plan in exchange for their Allowed Claims and then by the Holders of Allowed Class IV Claims to the Liquidating Trust in exchange for beneficial interests in the Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the assets to the Liquidating Trust, the Liquidating Trust shall succeed to all of the Debtors' right, title and interest in the Liquidating Trust and neither the Debtors nor the Estates will have any further interest in or with respect to the Liquidating Trust.

2.6     **Rights and Powers of the Liquidating Trustee.** The Liquidating Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and the rights and powers set forth in the Plan and the Liquidating Trust Agreement, including, without limitation, but subject to the authority of the Bankruptcy Court as set forth in the Liquidating Trust Agreement, the rights to: (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) establish and administer the Liquidating Trust Account and any necessary reserves for Disputed Claims or other Claims; (3) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (4) employ and compensate professionals and other agents, provided, however, that any such compensation shall be made only out of the assets of the Liquidating Trust, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes; (5) conduct examinations in accordance with Bankruptcy Rules 2004 or 7001 *et seq.* or otherwise in accordance with applicable law; (6) prosecute any and all causes of action, including Avoidance Actions, to the extent not otherwise settled or released in accordance with this Plan; (7) file customary quarterly reports with the Bankruptcy Court within forty-five (45) days of the end of the applicable quarterly period and serve copies of such reports on Persons requesting notice thereof; (8) pay quarterly fees when due to the Office of the U.S. Trustee until the earliest to occur of the Chapter 11 Cases being closed, converted or dismissed; and (9) sell, abandon, allow to lapse or otherwise use Policies.

The Plan shall be considered a motion for authority to destroy and/or abandon property of the Estates. Without further order of the Bankruptcy Court (other than the Confirmation Order), the Liquidating Trustee may: (i) in his sole and absolute discretion, retain or destroy documents, files and records of the Estates; and (ii) abandon property of the Estates that he deems burdensome or of immaterial value to the Estates or the Liquidating Trust.

2.7    **Fees and Expenses of the Liquidating Trust.**  Liquidating Trust Expenses incurred on or after the Effective Date may be paid by the Liquidating Trustee from the Liquidating Trust in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

2.8    **Term of Injunctions or Stays.**  Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

2.9    **Dissolution of the Debtors.**   On the Effective Date or as soon thereafter as is reasonably practicable, the affairs of the Debtors may be wound up and the Debtors may be dissolved at any time without the need for any further action or approval; provided, however, that the entry of the Final Decree in these Cases shall effect such dissolution of all remaining Debtors to the extent permissible under applicable law. Further, any charter of the Debtors shall include a provision prohibiting the issuance of nonvoting equity securities and providing, as to any classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any equity securities have preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

2.10    **Directors and Officers.**  Howard Kaplan is currently the sole member of the board of directors and sole officer of each of the Debtors. Mr. Kaplan will serve in such capacities until the Effective Date, at which time he shall be deemed to have resigned all such positions with the Debtors and the Liquidating Trustee shall become the sole representative of the Estates.

2.11    **Substantive Consolidation**.  For the purposes of the Cases and the Plan only, all Assets of and Claims against the Debtors will be deemed to be substantively consolidated. As a result, Claims filed against multiple Debtors seeking recovery of the same debt shall only receive a single Distribution from the consolidated Debtors' estates to the extent such Claim is an Allowed Claim. Claims of Debtors against other Debtors will be disregarded for both voting and distribution purposes.

2.12    **Records.**  Pursuant to section 554 of the Bankruptcy Code, and at the direction and discretion of the Liquidating Trustee, the Debtors shall be authorized to abandon all originals and/or copies of documents and business records.

2.13    **Effectuating Documents.**  The officers and directors of each Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such other actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

2.14    **Objections to Claims.**  Except as provided herein and in section 3.2 of the Plan, any objection to the allowance of a Claim not Filed by the Claim Objection Deadline shall be deemed waived, and the Claim shall be an Allowed Claim in the amount set forth on the proof of claim Filed by the Holder of such Claim. Notwithstanding anything to the contrary in the Plan, neither the Debtors nor, after the Effective Date, the Liquidating Trustee shall be required to make a distribution on any Disputed Claim

until such Disputed Claim becomes Allowed or Disallowed in full or in part, either by (i) agreement between counsel to the Committee and the Record Holder of the Disputed Claim or (ii) by Final Order.

2.15    **No Discharge.**  For the avoidance of doubt, in accordance with section 1141(d)(3) this Plan does not provide for the discharge of the Debtors.

### Article III
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

3.1    **Background.**  The Debtors believe that all executory contracts and unexpired leases of the Debtors were assumed and assigned, or rejected or otherwise terminated or expired, during the pendency of the Cases. Article III of the Plan is included out of an abundance of caution.

3.2    **Executory Contracts and Unexpired Leases.**  All executory contracts and unexpired leases of the Debtors which are not assumed and assigned, or rejected, prior to the Effective Date shall be deemed rejected. Any Creditor asserting a claim for monetary damages as a result of the rejection of an executory contract or unexpired lease shall file a proof of claim substantially in the form of Official Form 10 with the clerk of the Bankruptcy Court (a "Rejection Claim"), and serve it upon Debtors' counsel and the Committee's counsel by overnight mail within thirty (30) days following the Effective Date.

3.3    **Rejection Claims**.  If no Rejection Claims are filed pursuant to section 3.2 of the Plan, such Claims, if any, shall be forever disallowed and barred. If one or more Rejection Claims are filed pursuant to section 3.2 of the Plan, notwithstanding section 2.9 of the Plan, the Committee may File one or more objections to any Rejection Claims Filed pursuant to section 3.2 of the Plan, and serve it upon the claimant, the claimant's counsel, if any, and Debtors' counsel by overnight mail within sixty days (60) days following the Effective Date. If a Rejection Claim is determined to be Allowed, the date of such determination shall be deemed to be the Record Date and the Holder of the Claim on the date of such determination shall be deemed to be the Record Holder of such Claim. If a Rejection Claim becomes Allowed, in full or in part, such Claim shall be a Class III Claim to the extent such Claim becomes Allowed and the Record Holder of such Claim shall receive a Distribution as set forth in sections 2.2 and 2.3 of the Plan.

### Article IV
### CONDITIONS PRECEDENT TO CONFIRMATION
### AND CONSUMMATION OF THE PLAN

4.1    **Conditions to Confirmation.**  Entry of a Confirmation Order by the Bankruptcy Court that is in form and substance reasonably satisfactory to the Debtors and the Committee shall be a condition precedent to confirmation of the Plan, unless duly waived in accordance with section 4.3 of the Plan.

4.2    **Conditions to the Effective Date.**  The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to section 4.3 of the Plan: (i) the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtors and the Committee; (ii) the Confirmation Order shall have become a Final Order; (iii) the Debtors and Liquidating Trustee shall have executed the Liquidating Trust Agreement; and (iv) all remaining Cash has been transferred into the Liquidating Trust Account.

4.3    **Waiver of Conditions to Confirmation or the Effective Date.**  The conditions to Confirmation and the conditions to the Effective Date set forth in sections 4.1 and 4.2 of the Plan may be waived in whole or part in writing by the Debtors and the Committee at any time without further Order.

4.4    **Effect of Nonoccurrence of Conditions to the Effective Date.**  If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with sections 4.1, 4.2, and 4.3 of the Plan, then upon motion by the Debtors made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion.  If the Confirmation Order is vacated pursuant to this section 4.4, (i) the Plan shall be null and void in all respects; and (ii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights of the Debtors or any other party in interest.

**Article V**
**MISCELLANEOUS PROVISIONS**

5.1    **Binding Effect of the Plan.**  The provisions of the Plan shall be binding upon all parties to the Plan and inure to the benefit of the Debtors' estates and their respective predecessors, successors, assigns, agents, officers and directors. The terms of the Plan shall be enforceable against the Debtors, their Creditors and all parties-in-interest.

5.2    **Retention of Jurisdiction.**  Following the Confirmation Date and the Effective Date, the Bankruptcy Court shall retain jurisdiction over the provisions of this Plan including those related to Disputed Claims, Rejection Claims, and Professional Fee Claims, and over all disputes and litigation that are pending on the Confirmation Date, and any controversies that may arise hereafter, which would affect the Debtors' or the Liquidating Trustee's ability to carry out the Plan, until all such disputes and litigation shall be concluded and the Plan shall be fully consummated. Further, the Bankruptcy Court shall retain jurisdiction over the Distribution and the Returned Distribution and any related issues which may arise.

5.3    **Reservation of Rights.**  The right of the Office of the United States Trustee to object to claims, including any administrative claims, is specifically reserved.

5.4    **Governing Law**.  Except as mandated by the Bankruptcy Code or Bankruptcy Rules, as applicable, the rights and obligations arising under the Plan shall be governed by, construed and enforced in accordance with the laws of the State of Delaware.

5.5    **Headings.**  The headings of articles, paragraphs, and subparagraphs of the Plan are inserted for convenience only and shall not affect the interpretation of any provision of the Plan.

5.6    **Time.**  Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day that is not a Business Day, then the time for the occurrence or happening of said event shall be extended to the next day that is a Business Day.

5.7    **Severability.**  Should any provision of the Plan be determined to be unenforceable after the Effective Date such determination shall in no way limit or affect the enforceability and operative effect of any and all of the other provisions of the Plan.

5.8    **Revocation.**  The Debtors reserve the right to revoke and withdraw the Plan prior to the entry of a Confirmation Order with the consent of the Committee.  If the Debtors revoke or withdraw the Plan, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or

release of any Claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

5.9    **Plan Controls.**  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence. In the event of any inconsistency between any provision of any of the foregoing documents, and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

5.10    **Statutory Fees.**  The Debtors shall pay all fees payable pursuant to 28 U.S.C. § 1930 in accordance with the terms of that statute. Specifically, all quarterly fees shall be paid in full on the Effective Date and thereafter until these cases are closed, dismissed or converted.

5.11    **Dissolution of the Committee.**  On the Effective Date, the Committee shall be dissolved and their members shall be deemed released of any continuing duties, responsibilities and obligations in connection with the Cases or the Plan and its implementation, and the retention and employment of the Committee's attorneys, accountants and other agents shall terminate.

5.12    **Claims Agent.**  The Balloting Agent, in its capacity as claims, noticing and balloting agent shall be relieved of such duties on the date of the entry of the Final Decree or upon written notice by the Debtors.

5.13    **Exculpation and Limitation of Liability.  The Debtors, the Committee, the members of the Committee, solely in their capacity as such, any of such parties' respective current and/or post-Petition Date and pre-Effective Date members, officers, directors, or employees, the professionals that the Court authorized the Debtors and the Committee to retain in these cases, and any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Cases, the negotiation and Filing of this Plan, the Filing of the Cases, the settlement of Claims or renegotiation of executory contracts and leases, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their willful misconduct or gross negligence (as determined by Final Order of a court of competent jurisdiction) or any obligations that they have under or in connection with this Plan or the transactions contemplated in this Plan, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.**

**Article VI**
**FINAL FEE HEARING AND FINAL DECREE**

6.1    **The Professional Fee Claim Bar Date.**  Any and all applications for the final allowance of Professional Fee Claims shall be Filed and served upon counsel to the Debtors, counsel to the Committee, counsel to the Purchaser, the United States Trustee, and all Persons on the Debtors' Bankruptcy Rule 2002 service list on or before the Professional Fee Claim Bar Date.

6.2    **Final Fee Hearing.**  A hearing on final allowance of Professional Fee Claims (the "Final Fee Hearing") shall be held as soon as practicable after the Professional Fee Claim Bar Date. Debtors' counsel shall File a notice of the Final Fee Hearing. Such notice shall be posted on the Noticing Agent Website, and served upon counsel for the Committee, counsel for the Purchaser, all Professionals, the United States Trustee and all parties on the Debtors' Bankruptcy Rule 2002 service list.

6.3     **Final Decree.**  Subsequent to the Effective Date, any Distribution, and the Final Fee Hearing, Debtors' counsel shall a motion requesting the entry of the Final Decree.  At least two weeks before the hearing on any such motion, the Debtors shall file a final report.

**Article VII**
**REQUEST FOR CONFIRMATION**

7.1     **Request for Confirmation.**  The Debtors request confirmation of this Plan in accordance with section 1129(a) and/or section 1129(b) of the Bankruptcy Code.

IN WITNESS WHEREOF, the Proponents have executed this Plan this 28th day of April, 2015

IPC INTERNATIONAL CORPORATION and
THE SECURITY NETWORK HOLDINGS
CORPORATION

By: /s/Howard Kaplan
      Name: Howard Kaplan
      Title: President and Sole Director

# EXHIBIT B

# EXHIBIT C

**IPC International Corporation**
Case Number: 13-12050 (MFW)
Jointly Administered
Liquidation Analysis

| | Balance | Chapter 7 Liquidation Analysis | | | | Plan Recovery Analysis | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Range of Recovery (%) | | Range of Recovery ($) | | Range of Recovery (%) | | Range of Recovery ($) | |
| | | Low | High | Low | High | Low | High | Low | High |
| **Assets** | | | | | | | | | |
| Cash - Operating Account | $ 267,427.68 | 100% | 100% | $ 267,427.68 | $ 267,427.68 | 100% | 100% | $ 267,427.68 | $ 267,427.68 |
| Outstanding A/R | | | | | | | | | |
| Balance w/ Collector | 279,651.70 | 50% | 80% | 139,825.85 | 223,721.36 | 50% | 80% | 139,825.85 | 223,721.36 |
| City Place Settlemen (in process) (1) | 165,000.00 | 100% | 100% | 165,000.00 | 165,000.00 | 100% | 100% | 165,000.00 | 165,000.00 |
| Total Outstanding A/R | 444,651.70 | 69% | 87% | 304,825.85 | 388,721.36 | 69% | 87% | 304,825.85 | 388,721.36 |
| Customer Retention Escrow | 1,170,000.00 | 40% | 60% | 468,000.00 | 702,000.00 | 75% | 100% | 877,500.00 | 1,170,000.00 |
| Workers Comp. Collateral Deposits (Travelers Ins.) | 300,000.00 | 0% | 50% | - | 150,000.00 | 60% | 100% | 180,000.00 | 300,000.00 |
| General Liability Fund (2) | 5,000,000.00 | 0% | 25% | - | 1,250,000.00 | 0% | 50% | - | 2,500,000.00 |
| **Total Estimated Estate Assets** | 7,182,079.38 | 14% | 38% | 1,040,253.53 | 2,758,149.04 | 23% | 64% | 1,629,753.53 | 4,626,149.04 |
| **Expenses** | | | | | | | | | |
| Professional Fees | | | | | | | | | |
| Silverman Consulting | 50,389.90 | 100% | 100% | 50,389.90 | 50,389.90 | 100% | 100% | 50,389.90 | 50,389.90 |
| Potter Anderson & Corroon | 50,000.00 | 100% | 100% | 50,000.00 | 50,000.00 | 100% | 100% | 50,000.00 | 50,000.00 |
| Proskauer Rose | 125,000.00 | 100% | 100% | 125,000.00 | 125,000.00 | 100% | 100% | 125,000.00 | 125,000.00 |
| Pachulski Stang | 298,670.08 | 100% | 100% | 298,670.08 | 298,670.08 | 100% | 100% | 298,670.08 | 298,670.08 |
| Glass Ratner | 61,554.94 | 100% | 100% | 61,554.94 | 61,554.94 | 100% | 100% | 61,554.94 | 61,554.94 |
| Chapter 7 Trustee (3) | 235,000.00 | 100% | 100% | 235,000.00 | 235,000.00 | 0% | 0% | - | - |
| Liquidation Trust Administration | 200,000.00 | 0% | 0% | - | - | 100% | 100% | 200,000.00 | 200,000.00 |
| Other Ch 11 Administrative Expenses | 40,000.00 | 100% | 100% | 40,000.00 | 40,000.00 | 100% | 100% | 40,000.00 | 40,000.00 |
| **Total Estimated Estate Expenses** | 1,060,614.92 | | | 860,614.92 | 860,614.92 | | | 825,614.92 | 825,614.92 |
| **Net Liquidation Value of Estate** | 6,121,464.46 | | | 179,638.61 | 1,897,534.12 | | | 804,138.61 | 3,800,534.12 |

[1] A settlement was recently reached for $165,000 to be paid over twelve months starting in June, 2015. The settlement is still being documented but will include credit enhancement to secure against a default in payment.

[2] Reflects the estimated remaining balance in the General Liability fund as of May 20, 2015 per the GL Fund Trustee.

[3] Includes 11 U.S.C. 326 fees and professional fees.